**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SCRIPSAMERICA, INC.,[1] | Case No. 16-11991 (LSS) |
| Debtor. | **Hearing Date:  November 3, 2016 at 1:30 P.M. ET**<br>**Obj. Deadline:  October 24, 2016 at 4:00 P.M. ET** |

**DEBTOR'S APPLICATION TO EMPLOY AND RETAIN EQUITY PARTNERS HG
LLC AS INVESTMENT BANKER, *NUNC PRO TUNC* TO SEPTEMBER 19, 2016 AND
RELATED REQUEST FOR WAIVER OF CERTAIN INFORMATION-KEEPING
REQUIREMENTS OF LOCAL RULE 2016-2**

ScripsAmerica, LLC, debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby applies (the "Application") to this Court for approval of its employment and retention of Equity Partners HG LLC ("EP") as investment banker, *nunc pro tunc* to September 19, 2016.  In support of the Application, the Debtor submits the Declaration of Kenneth W. Mann (the "Mann Declaration") attached hereto as **Exhibit A** and respectfully states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue of this proceeding and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief sought herein are sections 327(a), 328(a)

---

[1] The last four digits of the Debtor's federal tax identification number are 8594.  The location of the Debtor's corporate headquarters is 1094 Main Avenue, Suite A, Clifton, NJ  07011.

and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1.

## INTRODUCTION/BACKGROUND

3.      On September 7, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.      The Debtor is continuing in possession of its assets and is operating its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors has not been appointed to date in the case.  No examiner or trustee has been requested or appointed in the case.

5.      The background of the Debtor and the events leading to the filing of the petition for relief are set forth more fully in the *Declaration of Brian Ettinger in Support of Chapter 11 Petition and Initial Filings* (the "Ettinger Declaration"), which is incorporated herein by reference.

## RELIEF REQUESTED

6.      The Debtor seeks authority, pursuant to sections 327(a) and 328 of the Bankruptcy Code, to retain and employ EP as its investment banker, *nunc pro tunc* to September 19, 2016.

## GROUNDS/BASIS FOR RELIEF REQUESTED

7.      Section 327(a) of the Bankruptcy Code provides as follows:

> [e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

8.      The Debtor seeks to employ EP as a professional in these cases to assist its efforts to sell the Debtor's assets.  As is set forth more fully in the Mann Declaration, EP has informed

the Debtor that it: (i) is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and (ii) does not hold or represent interests adverse to the estate.

9.     EP is an enterprise specializing in turnarounds, consulting, refinancing, sales as going concerns, the purchase of chattels and real property, and the liquidation of assets of financially troubled companies.  Over the past 25 years, EP's professionals have provided such services to over 300 financially troubled companies, including more than 120 entities seeking chapter 11 protection in over 50 districts.  EP has substantial experience in advertising and marketing for the purposes of locating investors and joint venture partners, selling companies as "going concerns," and disposing and refinancing of major properties (including properties and related establishments owned or leased by debtors involved in bankruptcy proceedings).

10.     EP's professionals have substantial experience in the sale of assets and businesses on a going-concern basis in the District of Delaware and in other jurisdictions.  The Debtor has made careful and diligent inquiry into the qualifications and competence of EP and believes that EP, because of its ability, integrity and professional experience, is capable of providing the services required by the Debtor in connection with the sale of its assets.

11.     The Agreement (the "Agreement") between EP and the Debtor is attached hereto as **Exhibit B**.  The Agreement is subject to approval of the Application.  Pursuant to section 328(a) of the Bankruptcy Code, the retention set forth herein shall be on the terms and conditions set forth in the Agreement.

12.     The Debtor specifically notes that, through this Application, it is seeking approval of an indemnity term in connection with the proposed engagement of EP which has been modified by the standard "Planet Hollywood" language in the proposed form of order.

13.    The Debtor believes that the employment of EP upon the terms set forth herein and in the Agreement is in the best interest of the Debtor, its creditors and the Debtor's estate.

14.    EP has already commenced rendering services in these cases.  The services that have been rendered, or which may be rendered by EP include, without limitation:

(a)    Inspect the Debtor's assets (the "Assets") to determine their physical condition;

(b)    Prepare a program which may include marketing the assets through newspapers, magazines, journals, letters, fliers, signs, telephone solicitation, the internet and/or such other methods as EP may deem appropriate;

(c)    Prepare advertising letters, fliers and/or similar sales materials, which would include information regarding the Assets;

(d)    Endeavor to locate parties who may have an interest in becoming a joint venture partner, investing in, acquiring, or refinancing the Debtor's business or the Assets;

(e)    Circulate materials to interested parties regarding the Assets, after completing confidentiality documents;

(f)    Respond, provide information to, communicate and negotiate with and obtain offers from interested parties and make recommendations to Debtors as to whether or not a particular offer should be accepted;

(g)    Communicate regularly with Debtor in connection with the status of EP's efforts with respect to the disposition of the Assets.  This communication shall include a weekly written report to all parties-in-interest;

(h)    If requested by the Debtor, negotiate with various stakeholders of the Debtor, including but not limited to, secured and unsecured creditors and equity shareholders, in regards to the possible financial restructuring of the existing claims of the creditors and/or equity stakeholders of the Debtor.

(i)    Recommend to Debtor the proper method of handling any specific problems encountered with respect to the marketing or disposition of the Assets; and

(j)    Perform related services necessary to maximize the proceeds to be realized for the Assets.

15.     As set forth in the Agreement, EP shall be entitled to the following payment for fees and costs:

(a)     In the case of an equity investment or sale, paid in cash at settlement of any investment and/or sale of assets closed and funded, or upon confirmation of a reorganization plan, for any offers received under the terms of this Agreement and the fee for its services shall be the greater of $75,000 or an amount calculated as follows: 8% of the first $3,000,000 (three million dollars) of Gross Value, and 5% of any Gross Value in excess of $3,000,000 (three million dollars), or

(b)     In the case of a restructuring, paid in cash upon approval of the restructuring and/or plan of reorganization, and shall be the greater of $75,000 or an amount calculated under sections 5 and 6(a) herein, or

(c)     In the case of refinancing, paid upon settlement, and shall be the greater of $75,000 or 3% of the Gross Value.   In the case of refinancing, for purposes of calculating Gross Value, the total amount of the available financing committed to will be used, whether or not the Debtor chooses to draw down the entire amount available.

(d)     In the case of a joint venture or merger, upon consummation, and shall be the greater of $75,000 or or an amount calculated under sections 5 and 6(a) herein.

(e)     Equity Partners shall be entitled to its fee even if a buyer purchases the Assets, or a claim directly from a secured creditor.

(f)     Equity Partners shall be entitled to receive its fee from any purchase, refinance, equity investment, joint venture or restructuring completed within 12 months by/with a prospect identified during the term of this Agreement.

(g)     The fee to Equity Partners shall be paid in cash at settlement, and such payment shall be a condition of, the closing of any transaction.

(h)     If there is no transaction, for any reason, including but not limited to:  No offer is accepted, the case is converted to a Chapter 7, or the case is dismissed, a "no sale" fee of $30,000 is due and payable immediately upon the earlier of conversion, dismissal, rejection of bids, or the end of the Term.

16.     EP shall also be entitled to an advance payment of marketing expenses up to a limit of $17,000.  Any additional expenses over the $17,000 limit will be borne by EP.

17.     The Debtor believes that the retention of EP upon the terms and conditions set forth herein and in the Agreement is in the best interests of the Debtor, its estate and creditors, and such retention will maximize the net proceeds received.

### WAIVER OF CERTAIN INFORMATION-KEEPING REQUIREMENTS

18.     Due to the nature of EP's engagement, the Debtor believes that relief for EP from certain information-keeping requirements imposed by the Local Rules of this Court is necessary and appropriate.  In accordance with the terms of its retention, EP will receive a percentage fee based upon the sale price.  Furthermore, the reimbursement of marketing expenses incurred by EP is limited to $17,000.

19.     The Debtor anticipates that EP will be compensated from the proceeds of a closing on the sale of Debtor's assets based upon the formula set forth in the Agreement and recited herein. The Debtor's ability to pay EP at closing is an important and negotiated provision of the Agreement.  Accordingly, the Debtor respectfully requests that this Court allow the Debtor to pay compensation/reimbursement due to EP at closing, subject to this Court's review of such compensation/reimbursement via a noticed final fee application that complies with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court.  Further, given that EP is essentially acting as a fixed-fee broker and is being paid in a manner akin to a real estate broker, the Debtor also requests that EP be excused from keeping time records in connection with the engagement.

### NOTICE

20.     Notice of this Application has been provided to: (i) the Office of the United States Trustee; (ii) the Debtor's twenty (20) largest unsecured creditors on a consolidated basis; and (iii) all parties who have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002.  In

light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

WHEREFORE, the Debtor respectfully requests that this Court approve the Application, authorize the Debtor to retain and employ EP as provided in the Application and the Order attached hereto, and grant such other relief consistent with the Application as is appropriate.

Dated:  October 6, 2016
        Wilmington, Delaware

CIARDI CIARDI & ASTIN

*/s/ Joseph J. McMahon, Jr.*
Daniel K. Astin (No. 4068)
John D. McLaughlin, Jr. (No. 4123)
Joseph J. McMahon, Jr. (No. 4819)
1204 N. King Street
Wilmington, Delaware 19801
(302) 658-1100 telephone
(302) 658-1300 facsimile
jmcmahon@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
One Commerce Square, Suite 3500
2005 Market Street
Philadelphia, PA 19103
(215) 557-3550 telephone
(215) 557-3551 facsimile
aciardi@ciardilaw.com
nnigrelli@ciardilaw.com

*Proposed Attorneys for the Debtor and*
*  Debtor in Possession*