IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SCRIPSAMERICA, INC.,[1] | Case No. 16-11991 (LSS) |
| Debtor. | Hearing Date: December 6, 2016 at 11:30 A.M. ET<br>Obj. Deadline: November 21, 2016 at 4:00 P.M. ET |

**DEBTOR'S MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 105(a)
AND 1102 DIRECTING THE DISBANDMENT OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OR, ALTERNATIVELY,
THE REMOVAL OF IRONRIDGE GLOBAL PARTNERS, LLC AND
<u>ROBERT SCHNEIDERMAN FROM THE COMMITTEE</u>**

ScripsAmerica, Inc., the above-captioned debtor and debtor in possession (the "<u>Debtor</u>" or "<u>Scrips</u>"), by and through its undersigned counsel, hereby moves (the "<u>Motion</u>") for entry of an order under sections 105(a) and 1102 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>") directing the disbandment of the Official Committee of Unsecured Creditors or, alternatively, the removal of Ironridge Global Partners, LLC and Robert Schneiderman from the Committee. In support of the Motion, the Debtor avers:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The predicates for the relief requested are sections 105(a) and 1102 of the

---

[1] The last four digits of the Debtor's federal tax identification number are 8594. The location of the Debtor's corporate headquarters is 1094 Main Avenue, Suite A, Clifton, NJ 07011.

Bankruptcy Code.

## INTRODUCTION

3.      On September 7, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned chapter 11 case.  The Debtor continues to possess its assets and operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      No trustee or examiner has been appointed in the Debtor's case.

5.      On November 3, 2016, the Acting United States Trustee for Region 3 (the "U.S. Trustee") filed a notice of appointment of an official committee of unsecured creditors (the "Committee") in the above-captioned case [Docket No. 71].  The Committee consists of two members:  Ironridge Global Partners, LLC and Robert Schneiderman ("Schneiderman").

6.      The Debtor responded to the Committee's appointment by sending the U.S. Trustee's office a letter the evening of November 3, 2016 detailing the reasons why the Committee should be disbanded.  A copy of the letter is attached as **Exhibit A**.

## BACKGROUND

7.      In November 2013, Scrips entered into an agreement with Ironridge Global IV, Ltd. ("Ironridge") whereby Scrips issued 8,690,000 shares of common stock to Ironridge in settlement for bona fide claims owed to Scrips' creditors (the "Claim Amount"). The shares issued to Ironridge were unrestricted securities and exempt from registration under Section 3(a)(10) of the Securities Act of 1933, as amended. Under the terms of the transaction, the number of shares issuable to Ironridge was subject to an adjustment based on the trading price of Scrips' common shares such that the value of the shares is sufficient to cover the Claim Amount, a 10% agent fee

amount, and Ironridge's reasonable legal fees and expenses, which were determined to be $766,238.

8. On February 10, 2014, Ironridge made a request for, and Scrips issued, an additional 1,615,550 shares of Scrips' common stock as a result of the adjustment provisions contained in the stipulation (the "Stipulation") in the order issued by the California state court. Scrips expensed these additional shares in December 2013, valued at $210,022, and on February 22, 2014 Scrips issued 1,615,550 shares of common stock to Ironridge.

9. On April 4, 2014, Ironridge requested an additional 1,646,008 common shares. Scrips declined to issue these additional shares because Ironridge had already received approximately 10,305,550 common shares with a market value of approximately $1,300,000 in satisfaction of $766,238.

10. On May 6, 2014, Ironridge submitted an *ex parte* application to a California state court to compel the issuance of the 1,646,008 common shares, and the California state court entered an order compelling Scrips to issue the additional shares. The order also prohibits Scrips from issuing or transferring new shares to third parties before issuing these shares. Scrips filed a notice of appeal from the California state court's order which automatically stayed the order. The matter is pending.

11. Scrips accrued the potential issuance of the shares to Ironridge during the year ended December 31, 2014. In October 2015, to stop a contempt action, Scrips requested that the 1,646,008 shares be issued, and such shares were ultimately issued on January 22, 2016. The shares were not accepted by Ironridge until March 17, 2016.

12. Scrips pursued an appeal, and reversal, of the California state court order and are in litigation in California and New Jersey.

13. On October 29, 2015, Ironridge, in California, requested the issuance of an additional 87,000,000 shares under the formula set forth in the Stipulation.[2]

14. In New Jersey, Ironridge brought an action against Olde Monmouth, Scrips' transfer agent, to force it to issue shares or pay damages resulting from their refusal to issue the shares requested by Ironridge. Scrips intervened and contested jurisdiction in New Jersey.

15. In January 2016, Scrips was ordered by a Federal court in California to pay for Ironridge's legal fees and, on February 22, 2016, Scrips paid same in the amount of $269,365. The Court instructed both parties to work out a mutually-agreeable settlement. Scrips believes that it has a valid defense to the issuance of the 87,000,000 shares sought by Ironridge based upon usury laws and also violations of the California business code for unconscionable actions since Ironridge paid $766,238 of debt obligations and received a return of approximately $1,300,000. However, due to expensive costs and uncertainty in litigation, Scrips believed it was in its best interest to settle the matter.

16. On February 1, 2016, based upon its financial condition at the time, Scrips proposed the following settlement agreement to Ironridge to fully resolve all litigation and any and all claims, causes of action or potential causes of action between the parties, principals, affiliates and Scrips' transfer agent, Olde Monmouth Transfer Company:

- Scrips will make a $400,000 payment at the time the settlement agreement is fully executed and all cases are dismissed that were brought by Ironridge.

- Scrips will issue a non-interest bearing note to Ironridge in the amount of $1 million, to be paid over a ten-month period in installments of $100,000 per month, starting the month after settlement agreement and lawsuits brought by Ironridge are dismissed. This payment is in lieu of any shares to be issued to Ironridge.

- The parties will dismiss all pending litigation with prejudice, including the Los Angeles Superior Court action, the Los Angeles federal court action, the New Jersey action and the

---

[2] The court awarded Ironridge attorney's fees in connection with this action. Scrips appealed the award.

      New York action. Ironridge would release any and all claims to the LNK funding ($160,000).

- The parties shall execute general releases in favor of each other and their respective officers, directors, affiliates and related parties excluding only Scrips' obligation to pay the note specified in paragraph 2, above.

17.    Ironridge, through its attorney, notified Scrips' attorney of acceptance of this settlement on February 2, 2016 stating "Ironridge accepts this Proposal", but subsequent to signing of the final agreement, Ironridge's principal reneged on the acceptance.  Scrips recorded an expense of $1,400,000 to the condensed consolidated statement of operations for the three months ended March 31, 2015 for the expected settlement amount.

18.    A hearing was held on May 17th in California state on a motion filed by Scrips to enforce the settlement. At the same time, the court heard two (2) motions filed by Ironridge, one for the allowance of Ironridge's counsel fees and the other to hold the Company's board in contempt for failure to issue 87 million shares of its common stock to Ironridge. The order to issue the 87 million shares is, however, on appeal and the order is stayed under California law. At the same time, the court heard a motion by Scrips' former Chief Executive Officer, Schneiderman, to remove his name from an injunction prohibiting the issuance or transfer of his Scrips shares on the grounds that he is no longer an affiliate.  At that hearing held on May 17, 2016, the Court ordered Scrips to file a supplemental brief in support of its motion by June 1 and ordered any parties that wished to respond to Scrips' brief to do so by June 17. The Court also scheduled a status conference for June 2 to set a hearing date on Scrips' motion and the other parties' pending motions, as well as to discuss the status of mediation.

19.    The Ironridge litigation stems from a 2013 financing transaction entered into with Ironridge by the Scrips' then Chief Executive Officer, Robert Schneiderman, without prior approval of the Board of Directors. Despite the allegations of Ironridge's wrong-doing made by

Scrips in the litigation, (which has cost the Company in excess of $1 million dollars in attorney's fees and costs, court costs, disbursements and other costs) Mr. Schneiderman filed an Affidavit in California state court absolving Ironridge from any wrongdoing. Ironridge contemporaneously joined in a Stipulation not only to release Mr. Schneiderman from the prohibitions of a prior court injunction which Ironridge had obtained, but also generally released him.

20. On July 25, 2016, the California state court ruled that the court lacked authority to rule on Scrips' Motion to enforce the settlement and denied this Motion without prejudice and also denied Robert Schneiderman's motion. The court granted Ironridge's motion for attorney's fees and ordered Scrips to pay $300,000 or, alternatively, to post an appeal bond by September 8, 2016 and file an appeal by September 30, 2016. The Debtor filed the petition which initiated the above-captioned case on the Petition Date – one day before it was required to post the bond in the California litigation.

21. On February 16, 2016, Schneiderman initiated a breach of contract action against Scrips in the Superior Court for the State of Delaware (No. N16C-02-130). Discovery was proceeding in connection with that action at the time the Debtor's bankruptcy petition was filed. Scrips filed an answer and counterclaim against Schneiderman for his actions in violation of the management reorganization agreement, tortuous interference and fraudulent conduct.

22. Additionally, within the last week Schneiderman expressed interest in bidding on the Debtor's assets and, on or about November 3, 2016, executed a non-disclosure agreement in connection with the sale process. The executed non-disclosure agreement is attached to Exhibit A to this Motion.

**GROUNDS/BASIS FOR RELIEF**

23. This Court is authorized pursuant to section 105(d) of the Bankruptcy Code to vacate the appointment of the Creditors' Committee. Section 105(d)(2) of the Bankruptcy Code provides that the bankruptcy court may:

> issue an order … prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically.

24. Bankruptcy courts have found that section 105(d) of the Bankruptcy Code provides the authority to disband an official committee of unsecured creditors where circumstances warrant. *See In re Pacific Ave., LLC*, 467 B.R. 868, 870 (Bankr. W.D.N.C. 2012) ("The court believes that Section 105(d) [of the Bankruptcy Code] gives it the authority to disband a creditors' committee and that the circumstances of this case merit such action for several reasons: The Committee is no longer necessary to protect the interests of its constituency; the administrative expense of the Committee is not justified; and the Committee has appeared to be counter-productive to the process of this case.").

25. Simply put, the Committee should not have been formed because a committee consisting of less than three members cannot properly function. Additionally, the Committee (as presently constituted) is incapable of carrying out its fiduciary obligations to general unsecured creditors.

26. First, with respect to the size of the Committee, the statute indicates that an official committee shall "ordinarily" consist of seven members. Section 3-4.3.1 of the United States Trustee Program Policy and Practices Manual (Chapter 11 Case Administration), addressing the size of official committees, provides:

>Although section 1102(b)(1) suggests a committee should "ordinarily" consist of seven members, it is certainly not a statutory or Program requirement. Rather, a committee of only three members is often adequately representative. Rarely, a large and complex case may warrant a committee with more than seven members, but larger committees can be unwieldy and increase costs to the estate. It is not at all unusual to have committees of three or five members.

What *is* unheard of (and certainly unusual), however, is an official committee consisting of two members. In fact, the "Committee Information Sheet" sent with the questionnaire to general unsecured creditors in the Debtor's case states that the formation of a Committee would require *at least* three (3) creditors:

>**Purpose of Unsecured Creditors' Committees**. To increase participation in the chapter 11 proceeding, section 1102 of the Bankruptcy Code requires that the United States Trustee appoint a committee of unsecured creditors (the "Committee") as soon as practicable after the order for relief has been entered. The Committee ordinarily consists of the persons, willing to serve, who hold the seven (7) largest unsecured claims of the kinds represented on such committee. The debtor has filed a list indicating that your claim may be among the largest unsecured claims against the debtor, and for that reason, you may be eligible to serve on the Committee. **There must be at least three (3) unsecured creditors willing to serve in order to form a Committee.** (Emphasis in last sentence added).

A copy of the Committee Information Sheet is attached as **Exhibit B**.

27. Second, the Committee members that were appointed – Ironridge, a substantial holder of the Debtor's equity that was (and is) hell-bent on destroying the Debtor's business via litigation, and Schneiderman, the Debtor's former Chief Executive Officer (i) who is the target of estate claims and causes of action stemming from, *inter alia*, his role in the events at issue in the Ironridge litigation and (ii) who signed a non-disclosure agreement in connection with the Debtor's pending sale process – are decidedly unfit to serve the interests of general unsecured creditors as a whole.

28. Section 1102(a)(4) gives the Court discretion to order the U.S. Trustee to change the makeup of any committee upon a request made by a party in interest. Specifically,

that section states that, "[o]n request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors ...." *Id.* § 1102(a)(4). Such a request is made by motion and initiates a contested matter. *See* FED. BANKR. R. 2020 ("A proceeding to contest any act or failure to act by the United States trustee is governed by Rule 9014.").[3]

29. "[C]reditors appointed to the creditors' committee have a fiduciary obligation to act in the interests of the members whom they represent ...." *In re Nationwide Sports Dist., Inc.*, 227 B.R. 455, 463 (Bankr. E.D. Pa. 1998) (quoting *In re Haskell-Dawes, Inc.*, 188 B.R. 515, 522 (Bankr. E.D. Pa. 1995)). When the status of a committee member changes to the point that it can no longer fulfill the fiduciary duty, that member should be removed from the committee. *See In re America West Airlines*, 142 B.R. 901, 903 (Bankr. D. Ariz. 1992) (finding that the interests of a creditor who went from an unsecured creditor to a secured creditor have changed so drastically that he now has "an entirely different perspective than any other member of the official unsecured creditor committee" and was correctly removed from the committee by the U.S. Trustee).

30. The interests of Ironridge and Schneiderman are not aligned with the interests of general unsecured creditors of the Debtor's estate. Ironridge is a substantial equity security holder whose litigious approach threatens to both deplete the estate and dilute general

---

[3] Additionally, the Court has discretion to reconstitute the Committee under section 105(a). See *In re Matter of Columbia Gas Sys., Inc.*, 133 B.R. 174, 175 (Bankr. D. Del. 1991) (preceding the enactment of section 1102(a)(4), but holding that a court may review committee appointment decisions "under an abuse of discretion standard, and may order necessary or appropriate relief pursuant to 11 U.S.C. § 105(a)" ); *see also* 11 U.S.C. §105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code].").

unsecured creditor recoveries. Schneiderman is an equity security holder, a former insider (the Debtor's Chief Executive Officer), a central figure in the Debtor's pre-petition slide into bankruptcy, and a potential purchaser who has formally expressed interest in bidding on the Debtor's assets. Neither are qualified to serve in a fiduciary capacity.

## **NOTICE**

31. Notice of this Motion has been provided to (a) the Office of the United States Trustee and (b) those parties requesting notice pursuant to Bankruptcy Rule 2002 in this case. In light of the nature of relief requested herein, the Debtor submits that no other or further notice is required.

WHEREFORE the Debtor respectfully requests entry of an order directing the disbandment of the Committee or, alternatively, the removal of Ironridge Global Partners, LLC and Schneiderman from the Committee.

Dated: November 4, 2016
      Wilmington, Delaware

CIARDI CIARDI & ASTIN

*/s/ John D. McLaughlin, Jr.*
Daniel K. Astin (No. 4068)
John D. McLaughlin, Jr. (No. 4123)
Joseph J. McMahon, Jr. (No. 4819)
1204 N. King Street
Wilmington, Delaware 19801
(302) 658-1100 telephone
(302) 658-1300 facsimile
jmclaughlin@ciardilaw.com
jmcmahon@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
One Commerce Square, Suite 3500
2005 Market Street
Philadelphia, PA 19103
(215) 557-3550 telephone
(215) 557-3551 facsimile
aciardi@ciardilaw.com
nnigrelli@ciardilaw.com

*Attorneys for the Debtor and*
 *Debtor in Possession*