IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>SCRIPSAMERICA, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 16-11991 (LSS)<br><br>Related D.I.: 75, 80, and 81<br>Hearing Date: TBD<br>Obj. Deadline: TBD |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF PROTECTIVE ORDER QUASHING NOTICES OF DEPOSITION RELATING TO MOTION TO DISBAND THE COMMITTEE**

The Official Committee of Unsecured Creditors (the "**Committee**") of ScripsAmerica, Inc. (the "**Debtor**"), by and through its proposed undersigned counsel, hereby moves (the "**Motion**") pursuant Rules 26 and 30 of the Federal Rules of Civil Procedure (the "**Federal Rules**"), Rules 7026, 7030 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 7026-1 and 7030-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**") for entry of an order quashing the Debtor's (A) *Notice of Deposition of Robert Schneiderman* [D.I. 80] (the "**Schneiderman Notice of Deposition**"); and (B) *Notice of Deposition of Ironridge Global Partners, LLC* [D.I. 81] (the "**Ironridge Notice of Deposition**," and together with the Schneiderman Notice of Deposition the "**Notices of Deposition**"), copies of which are annexed hereto as **Exhibit A** and **Exhibit B**, respectively. In support of this Motion, the Committee respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 8594. The location of the Debtor's corporate headquarters is 1094 Main Ave., Suite A, Clifton, NJ 07011.

{BAY:02980155v4}

## PRELIMINARY STATEMENT

The *Debtor's Motion for Order Pursuant to 11 U.S.C. §[§] 105(a) and 1102 Directing the Disbandment of the Official Committee of Unsecured Creditors or, alternatively, the Removal of Ironridge Global Partners, LLC and Robert Schneiderman from the Committee* [D.I. 75] (the "**Motion to Disband**") and the timing of the Notices of Deposition are designed to intimate the members of the duly-appointed Committee (which is fulfilling its independent fiduciary role as a watchdog over this case) for purposes of discouraging the Committee's participation in this chapter 11 case. The Debtor has not provided the Committee with any explanation (let alone a *credible* explanation) as to how the depositions of Robert Schneiderman ("**Schneiderman**") or a representative of Ironridge Global Partners, LLC ("**Ironridge**") could possibly be relevant to the Motion to Disband. As such, the Committee believes that the Debtors are trying to harass the members of the Committee by "sending them a message," the purpose of which is to discourage their active participation in this case. Such a purpose is improper and, accordingly, the Committee objects to what it believes is an effort by the Debtor to harass or punish individual Committee members for simply carrying out their duties as members of the Committee.

The Debtor's stated purpose in seeking to depose Schneiderman and a representative of Ironridge is to discover information which is not only irrelevant to the Motion to Disband, but which is protected by both the attorney-client privilege and the work-product doctrine. Because the discovery requested by the Debtor has no legitimate connection to the issues raised by its Motion to Disband, is privileged from discovery, and is sought solely to harass and prejudice the Committee members, the Committee respectfully requests that this Court bar the Debtor from proceeding with discovery.

While the Debtor maintains the need for discovery from the Committee members, the Committee was only recently formed on November 3, 2016 [D.I. 71].  Although on November 14, 2016 the Committee began its investigation of the Debtor when it propounded informal discovery from the Debtor, currently the Committee has no relevant information with respect to the Motion to Disband.  Moreover, each member of the Committee is represented by separate counsel.  As proposed counsel for the Committee, Bayard, P.A. ("**Bayard**") has repeatedly explained the fiduciary duties of a committee to each Committee member.  It is well understood that the Committee is acting for the benefit of all unsecured creditors.  As such, the Committee's goal in this case is to assess the scope of the Debtor's estate, monitor its financial affairs and locate and marshal the Debtor's assets in an efficient manner while avoiding months of litigation over its existence, as the Debtor seems intent on doing.

As all of the information needed to decide the Debtor's Motion to Disband is already self-evident or matters of record, on November 15, 2016, the Committee informed the Debtor that it has no intention of calling a fact witness at the hearing to testify in support of its motion, and instead will rely upon legal argument and the ample record of this Chapter 11 case.  *See* **Exhibit C** hereto.  Under these circumstances—where the facts on which discovery is sought are known to the Debtor and of record, and where the Committee has explained that it does not intend to call a witness—forcing the Committee to designate persons to give depositions is unnecessary and unduly burdensome.[2]

---

[2] The Committee reserves its rights to cross-examine, depose and/or call at the hearing any witness that the Debtor may call or depose in connection with the Motion to Disband.

Because the Notices of Deposition are also improper and objectionable, the Notices of Deposition should be quashed.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of this proceeding and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal predicates for the relief requested herein are Federal Rules 26 and 30, Bankruptcy Rules 7026, 7030 and 9014, and Local Bankruptcy Rules 7026-1 and 7030-1.

## BACKGROUND

3. On September 7, 2016, the Debtor filed a petition with this Court under chapter 11 of The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").

4. On November 3, 2016 the Office of the United States Trustee (the "**U.S. Trustee**") appointed the Committee, comprised of Ironridge and Schneiderman. One day later, on November 4, 2016, the Debtor filed the Motion to Disband, seeking to disband the Committee or, alternatively, the removal of Schneiderman and Ironridge from the Committee.

5. On November 14, 2016, the Debtor filed its Notices of Deposition in connection with its Motion to Disband. The Schneiderman Notice of Deposition demands that the Committee produce Mr. Schneiderman for deposition on December 1, 2016 at 10:00 a.m. in *Philadelphia, PA*. Additionally, the Ironridge Notice of Deposition demands that the Committee produce a representative of Ironridge for deposition on

December 2, 2016 at 10:00 a.m. in *Philadelphia, PA*.  The Ironridge Notice of Deposition demands that the Ironridge representative testify as to his knowledge and information relating to the Committee member's "fitness and/or qualification(s) to serve on the Committee, including (i) its claims against, and interests in, the Debtor; (ii) its connections with other parties in interest in the Debtor's bankruptcy case; and (iii) any other discoverable matter pertaining to Ironridge's status as a Committee member." *See* **Exhibit B** at ¶ 2.

6. On November 15, 2016, the Committee's counsel advised counsel for the Debtor that the Committee did not intend to present a witness at the hearing on the Motion to Disband.  On November 16, 2016, counsel for the parties conferred about the Debtor's Notices of Deposition.  In response to Debtor's counsel's renewed demand for the depositions outlined in the Notices of Deposition, the Committee's counsel notified Debtor's counsel that the Committee would file this Motion and notice it for the scheduled December 6, 2016 hearing on the Motion to Disband.

**RELIEF REQUESTED**

7. By this Motion, the Committee seeks an order of this Court quashing the Debtor's Notices of Deposition and otherwise limiting the discovery sought by the Debtor, as explained below.

8. Federal Rule 26(c)(1), for good cause, empowers the courts to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *See* FED. R. CIV. P. 26(c)(1); *see also* FED. R. CIV. P. 30(d) (allowing a deponent or party during a deposition to move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party).  Under Federal Rule 26, the Court may,

for instance, forbid or otherwise limit disclosures or discovery. *See* FED. R. CIV. P. 26(c)(1)(A), (C).

9. Moreover, Federal Rule 26(b)(2) empowers the Court, on its own initiative or pursuant to a motion for a protective order filed under Rule 26(c), to limit discovery if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*See* FED. R. CIV. P. 26(b)(2)(C).

10. Pursuant to Federal Rule 26(c), the Court is empowered to enter a protective order "for good cause" to protect a party from "undue burden or expense," including an order "specifying terms, including time and place." FED. R. CIV. P. 26(c)(1); FED. R. BANKR. P. 7026.

11. Further, Federal Rule 26(b)(1) provides that "Any material covered by a properly asserted privilege [is] necessarily . . . protected from discovery . . . pursuant to Rule 26(b)(1)." *See* FED. R. CIV. P. 26(b)(1); *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000) (*citing* FED. R. CIV. P. 26(b)(1) (providing that "parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action.") (emphasis added). It is well-established that confidential communications between third-party agents for an attorney and the attorney, or the attorney's client, are protected by the attorney-client privilege. *See Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1446 & n.24 (D. Del. 1989). This rule was first recognized in the seminal case *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961), in which the Second Circuit held that an accountant's

communications with an attorney and his client are protected by the attorney-client privilege where "the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *Id.* at 921-22 (reasoning that "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others") (internal quotation marks omitted).

12. The rule established by *Kovel* has been universally embraced by the courts, including courts in the Third Circuit. *See, e.g., United States v. Antolini,* 271 Fed. Appx. 268, 270 n.1 (3d Cir. 2008) ("[W]here the client, or the client's attorney, retains an accountant for the purpose of obtaining or providing legal advice, the *attorney-client* privilege may attach."); *Willemijn*, 707 F. Supp. at 1446 & n.24 ("applying *Kovel* rationale to patent agent); *United States v. Alvarez*, 519 F.2d 1036, 1045-46 (3d Cir. 1975) (citing *Kovel* with approval); *see also In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) ("material transmitted to accountants may fall under the attorney-client privilege if the accountant is acting as an agent of an attorney for the purpose of assisting with the provision of legal advice.").

13. Local Bankruptcy Rule 7030-1 similarly contemplates permitting a party to seek to quash a deposition upon written application to the Court. *See* DEL. BANKR. L.R. 7030-1(c). The timely filing of such a motion excuses a party (and counsel to such party) from having to appear for the deposition until the Court has resolved the motion. *See id.*

## BASIS FOR RELIEF

14. The Committee submits that good cause exists for the Court to grant the relief requested herein. More specifically, the Committee is entitled to a protective order

quashing the Notices of Deposition and otherwise limiting the discovery sought by the Debtor, as follows:

15. *First*, other than cross-examining or calling any witnesses who may be offered by the Debtor in opposition to the Motion to Disband, the Committee does not intend to call any witnesses at the hearing (if any) on the Debtor's Motion to Disband.

16. *Second*, as demonstrated by the Debtor's identification of the topics for deposition, the expedited depositions demanded by the Debtor are unnecessary and unduly burdensome.  Among other things, the Debtor's unnecessary and unduly-burdensome topics for the Ironridge deposition include: "fitness and/or qualification(s) to serve on the Committee, including (i) its claims against, and interests in, the Debtor; (ii) its connections with other parties in interest in the Debtor's bankruptcy case; and (iii) any other discoverable matter pertaining to Ironridge's status as a Committee member." *See* Exhibit B at ¶ 2.  The Debtor and the U.S. Trustee are best positioned to know this information.  Demanding expedited depositions of the Committee personnel to testify as to "fitness and/or qualification(s) to serve on the Committee" on its face is unnecessary. There is no reason to require the Committee's personnel to undergo depositions under these circumstances.

17. *Third*, because the Debtor generally seeks to inquire into factual matters beyond the scope of the Motion to Disband (which is based solely on legal, not factual, arguments) and which includes the Debtor's broad discovery requests "for any other discoverable matter pertaining to Ironridge's status as a Committee member," **Exhibit B** at ¶ 2, the burden to the Committee outweighs any benefit to the Debtor.

{BAY:02980155v4}

- 8 -

18.     With respect to the Motion to Disband, the Debtor will benefit little (if at all) from the proposed depositions. In essence, the Debtor seeks additional factual information about each Committee member's "claims against, and interests in, the Debtor" and "its connections with other parties in interest in the Debtor's bankruptcy case." **Exhibit B** at ¶ 2. And, while it is obvious that the Debtor will suffer little prejudice, the same cannot be said of the Committee. The factual information sought by the Debtor is already in their possession or in the evidentiary record. Therefore, a deposition will have minimal, if any, value and the fees and costs associated with the Debtor's expedited depositions would be unnecessary. Moreover, the Committee submits that the Debtor will suffer little, if any, prejudice if such depositions are denied.

19.     *Fourth*, the discovery sought by the Debtor is cumulative and duplicative, in that on the *List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (the "**Top 20 List**") submitted with the Debtor's petition form, Schneiderman is listed as the fifth, sixth, and seventh largest holder of unsecured claims against the Debtor's estate. Ironridge is not listed on the Top 20 List, but as the Debtor readily admits in the Motion to Disband and its Schedules (as defined below), Ironridge holds unsecured claims against the estate. Additionally, on October 7, 2016, the Debtor filed its Statement of Financial Affairs [D.I. 38] ("**SOFA**") and Schedules of Assets and Liabilities [D.I. 37] (collectively, the "**Schedules**"). Schneiderman and Ironridge are both listed on Schedule E/F as nonpriority unsecured creditors. As a result, the discovery sought is cumulative and duplicative.

20.     *Fifth*, should the Court determine not to strike the Notices of Deposition, the Court should enter a protective order requiring any deposition noticed of

Schneiderman or a representative of Ironridge by the Debtor be conducted in *Wilmington, Delaware*, not Philadelphia.  In determining whether another location for the deposition is appropriate, courts have considered (1) the location of counsel for both parties; (2) the size of the corporation and the regularity with which its executives travel; (3) the availability of the forum court to resolve discovery disputes; and (4) the nature of the claim and the relationship of the parties.  *Borromeo v. Household Finance Corporation III (In re Borromeo)*, 2012 WL 3780540, at *2 (Bankr. D. Neb. Aug. 31, 2012).  *See also Spike, LLC v. McCardle (In re McCardle)*, 2013 WL 1344722, at *2 (Bankr. E.D. Wis. Apr. 2, 2013) (noting the factors in determining where to conduct a deposition as cost, convenience, and litigation efficiency) (citing *Buzzeo v. Board of Educ.*, 178 F.R.D. 390, 392 (E.D.N.Y 1998).  The Debtor chose to file its chapter 11 case in this district; it should be required to take depositions in this district too.

21.     *Sixth*, applying *Kovel* to this case, the Notices of Deposition must be quashed because, as the Debtor admits, it seeks to depose John Kirkland ("**Kirkland**"), as a representative of Ironridge, as to "any other discoverable matter pertaining to Ironridge's status as a Committee member," which is protected by both the attorney-client privilege and the work-product doctrine.  By seeking to probe the members of the Committee as to their "status as a Committee member" would necessarily intrude on the confidential communications between Bayard, the Committee's financial consultant EisnerAmper Business Advisory & Restructuring Services ("**EisnerAmper**") and/or Messrs. Schneiderman and Kirkland regarding the actual or contemplated litigation that will occur in this case.  In order to provide advice to Messrs. Schneiderman and Kirkland and the Committee on the legal and tactical issues raised by the Committee's opposition

to the Debtor' Motion to Disband, Bayard has requested EisnerAmper's assistance in analyzing the relevant underlying data and in providing opinions on the value of the Debtor's assets. The Debtor cannot dispute that under the governing legal standards, EisnerAmper's independent opinions on these issues were and are crucial to Bayard's ability to render legal advice to the Committee. Only with EisnerAmper's assistance can Bayard give Messrs. Schneiderman and Kirkland at the Committee legal advice on whether there is a "sound business purpose" for the Debtor's proposed sale as is necessary to obtain this Court's approval under section 363 of the Bankruptcy Code. *See, e.g., In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)). Similarly, without EisnerAmper's opinion on the value of the Debtor's assets, Bayard cannot formulate an opinion on whether the sale proposed by the Debtor would be a valid exercise of the fiduciary duties owed by the Debtor to the creditors under governing Third Circuit Law. *See In re Hechinger Inv. Co. of Delaware*, 274 B.R. 71, 89 (D. Del. 2002) (*citing Geyer v. Ingersoll Pubs. Co.*, 621 A.2d 784, 787 (Del. Ch.1992)).

22. By seeking to depose Messrs. Schneiderman and Kirkland, the Committee also necessarily seeks license to probe confidential communications between Bayard, Messrs. Schneiderman and Kirkland about any contemplated settlements with the Debtor and/or the Committee. Indeed, it is black letter law in this Circuit that:

> An attorney's evaluation of a proposed settlement is at the core of the legal services an attorney provides to a client in the course of litigation. The fact that non-legal considerations are included within the attorney's legal analysis of the costs and benefits of the settlement does not alter this fundamental conclusion. The attorney-client privilege attaches to communications made 'as part of an ongoing and joint effort to set up a common defense strategy between a defendant and an attorney who was responsible for coordinating a common defense position.'

*Georgine v. Amchem Prods., Inc.*, No. 93-0215, 1994 WL 502475 at * 2 (E.D. Pa. Sept. 2, 1994) (quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir. 1985). Relying on the information and opinions provided by EisnerAmper and the Committee, Bayard has engaged, and continues to engage, in discussions relating to the settlement of the Debtor's Motion to Disband and the Committee's opposition to it. EisnerAmper's opinions, together with Messrs. Schneiderman and Kirkland's involvement in such communications, were "highly useful" and indeed "necessary" in enabling Bayard to furnish legal advice and in formulating tactical positions. *Kovel*, 296 F.2d at 922. Because the Committee's demanded depositions would seek to discover precisely such communications, the Notices of Deposition should be quashed..

23. *Seventh*, the work-product doctrine codified by Rule 26(b)(3) of the Federal Rules of Civil Procedure protects from discovery materials "prepared in anticipation of litigation." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). Just as with the attorney-client privilege, the work-product protection extends to materials prepared by "an attorney's agent, if that agent acts at the attorney's direction in creating such documents." *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998); *see* Fed. R. Civ. P. 26(b)(3). Indeed, courts have expressly recognized that work-product protection extends to financial analyses prepared by accountants to assist attorneys in preparation for anticipated litigation. *See, e.g., United States v. Lockheed Martin Corp.*, 995 F. Supp. 1460, 1465 (M.D. Fla. 1998) (work-product doctrine protects reports and memoranda drafted by auditor to advise attorney on anticipated litigation); *In re Grand Jury Proceedings (McCoy)*, 601 F.2d 162,

168-71 (5th Cir. 1979) (work-product doctrine protects analysis of a broker's financial transactions prepared by an accountant for the broker's lawyer).

24.     As already explained, the Debtor's demands for the depositions of Messrs. Schneiderman and Kirkland necessarily seek license to probe communications between EisnerAmper, the Committee and/or Bayard regarding the legal issues of this case. Such communications which were self-evidently generated in "anticipation of litigation," *Westinghouse*, 951 F.2d at 1428, lie at the heart of the work-product doctrine. Indeed, the "opinion" work-product which the Committee has expressly admitted seeking is entitled to the highest possible protection. *See* FED. R. CIV. P. 26(b)(3) (in applying the work-product doctrine, "the court *shall protect* against disclosure of the *mental impressions, conclusions, opinions*, or legal theories" of the attorney's representative) (emphasis added); *R.C.A. v. Data General Corp.*, C.A. No. 84-270-JJF, 1986 WL 15693 *10 (D. Del. July 2, 1986) ("opinion work product protection does extend to agents of a party other than his attorney") (citations omitted).

25.     Similarly improper under the work-product doctrine is the Debtor's apparent attempt to use the demanded depositions to inquire about communications made to assist Bayard in settlement discussions regarding the Motion to Disband. Again, "[a]n attorney's evaluation of a proposed settlement is at the core" of legal representation, and the "fact that non-legal considerations are included within the attorney's legal analysis of the costs and benefits of the settlement does not alter this fundamental conclusion." *Georgine*, 1994 WL 502475 at *2. Were this Court to allow depositions regarding the communications between Bayard, the Committee, Schneiderman and Kirkland would be placed in the awkward position of having its settlement posture including its range of

acceptable outcomes exposed to scrutiny by the Committee and the Debtor.  The work-product doctrine is designed precisely to avoid such a result.  *See In re Grand Jury (Impounded)*, 138 F.3d at 981 (the work-product doctrine is designed to enable attorneys and their representatives "to prepare cases without fear that their work product will be used against their clients") (internal quotation omitted).

26.     In sum, the Debtor asks this Court to permit discovery into the thought processes and opinions of Bayard's financial advisor, EisnerAmper, as well as of Messrs. Schneiderman and Kirkland who solicited and received the legal advice given by Bayard.  Not even the most liberal of discovery theories can justify such an unwarranted intrusion into the files and the mental impressions of an attorney and its chosen financial analyst.  *See id.* (*citing Hickman v. Taylor*, 329 U.S. 495 (1947)).

27.     Accordingly, the Notices of Deposition should be quashed.

## NOTICE

28.     Notice of this Motion shall be given to (i) counsel for the Debtor, (ii) the Office of the United States Trustee, and (iii) all parties who have requested notice and service of papers pursuant to Rule 2002.  The Committee submits that, under the circumstances, no other or further notice is required.

## CERTIFICATION

29.     In accordance with Federal Rule 26 and Local Bankruptcy Rule 7026-1(d), the Committee's counsel certifies that counsel has made a reasonable effort to confer in good faith to resolve the issues raised in the Motion without success.  After receiving copies of the Notices of Deposition, Bayard, as proposed counsel for the Committee, contacted counsel for the Debtor by letter.  *See* **Exhibit C** hereto.  Bayard explained that neither Schneiderman nor a representative of Ironridge would be called as

a fact or expert witness in this case and thus there was no basis for deposing them under the Federal Rules of Civil Procedure. On November 16, 2016, Bayard met with counsel for the Debtor and, again, requested that the Debtor withdraw the Notices of Deposition. As of the date of this Motion, the Committee received no response to its request that the Debtor immediately withdrawal the Notices of Deposition.

30.  Pursuant to Local Bankruptcy Rule 7030-l(c), upon the filing of this Motion "neither the objecting party, witness, nor any attorney is required to appear at a deposition to which [such] motion is directed until the motion is resolved." *See* Del. Bankr. L.R. 7030-1(c). Accordingly, the Committee is not obligated to comply with the Notices of Deposition pending the resolution of this Motion.

[*Remainder of Page Intentionally Left Blank*]

**CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: November 16, 2016
      Wilmington, Delaware        BAYARD, P.A.

*/s/ Evan T. Miller*
Scott D. Cousins (No. 3079)
Justin R. Alberto (No. 5126)
Evan T. Miller (No. 5364)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
Phone: (302) 655-5000
Facsimile: (302) 658-6395
Email: scousins@bayardlaw.com
       jalberto@bayardlaw.com
       emiller@bayardlaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of ScripsAmerica, Inc.*