NOTE:  DOCUMENT HAS NOT BEEN APPROVED BY BANKRUPTCY COURT;
DOCUMENT SUBJECT TO BANKRUPTCY COURT APPROVAL

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| SCRIPSAMERICA, INC.,[1] | Case No. 16-11991 (LSS) |
| Debtor. | |

### DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE DEBTOR AND DEBTOR IN POSSESSION

Dated: January 16, 2017
        Wilmington, Delaware

CIARDI CIARDI & ASTIN

*/s/ Joseph J. McMahon, Jr.*
Daniel K. Astin (No. 4068)
John D. McLaughlin, Jr. (No. 4123)
Joseph J. McMahon, Jr. (No. 4819)
1204 N. King Street
Wilmington, Delaware 19801
(302) 658-1100 telephone
(302) 658-1300 facsimile
jmcmahon@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Nicole M. Nigrelli, Esquire
One Commerce Square, Suite 3500
2005 Market Street
Philadelphia, PA 19103
(215) 557-3550 telephone
(215) 557-3551 facsimile
aciardi@ciardilaw.com
nnigrelli@ciardilaw.com

*Attorneys for the Debtor and
 Debtor in Possession*

---

[1]      The last four digits of the Debtor's federal tax identification number are 8594.  At the time the above-captioned case was initiated, the location of the Debtor's corporate headquarters was 1094 Main Ave., Suite A, Clifton, NJ 07011.

## **EXHIBITS**

Exhibit A        Ettinger Declaration in Support of Initial Filings

Exhibit B        Schneiderman Complaint

Exhibit C        LNK Complaint

Exhibit D        Liquidation Analysis

Exhibit E        List of Executory Contracts and Unexpired Leases to be Assumed

Exhibit F        Liquidating Trust Agreement

NOTE:  DOCUMENT HAS NOT BEEN APPROVED BY BANKRUPTCY COURT;
DOCUMENT SUBJECT TO BANKRUPTCY COURT APPROVAL

# ARTICLE I:
# INTRODUCTION

ScripsAmerica, Inc. hereby proposes this combined Disclosure Statement and Plan pursuant to sections 1125 and 1129 of the Bankruptcy Code.  ScripsAmerica, Inc., debtor and debtor in possession,[2] is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

In connection with the Debtor's efforts to sell its assets, on November 3, 2016 the Bankruptcy Court entered its Order (A) Approving Procedures in Connection with Sale of Debtor's Assets; (B) Approving Form of Asset Purchase Agreement; (C) Scheduling Auction and Hearing to Consider Approval of Sale; (D) Approving Form and Manner of Notice Thereof; and (E) Granting Related Relief dated November 3, 2016 [D.I. 73] (the "**Debtor's Bid Procedures Order**").  The Debtor's Bid Procedures Order provided the procedures by which the Debtor's broker HEP would solicit interests in bids with respect to a Proposed Sale.  In accordance with the Debtor's Bid Procedures Order, HEP began a marketing process (the "**Debtor's Marketing Process**") designed to elicit the highest or otherwise best offer for the Debtor's assets.  The Debtor is proceeding with the Plan that provides for the dissolution and wind-up of the affairs of the Debtor, and the transfer of any remaining Estate Assets to the Liquidating Trust.

The Plan constitutes a liquidating chapter 11 plan for the Debtor.  The Plan provides for the creation of a Liquidating Trust that will administer and liquidate all remaining property of the Debtor.  On the Effective Date, the Liquidating Trust will be funded by:  (a) the balance of any proceeds from the Proposed Sale or Restructuring Transaction, *plus* (b) any proceeds from any insurance policies (including, but not limited to, all insurance policies for directors, members, trustees, and officers liability maintained or held by the Debtor at any time on or prior to the Effective Date) obtained prior to the Effective Date, *plus* (c) proceeds of any litigation *plus* (d) any other proceeds or funds marshalled by the Debtor (including but not limited to funds held by any court) *plus* (e) any Remaining Assets, *less* amounts required in connection with payment of all allowed administrative expenses of the Debtor's Estate, including allowed professional fees incurred prior to the Effective Date.  The proceeds from these Remaining Assets will then be distributed to creditors.

The Plan also provides for Distributions to certain Holders of Administrative Claims and Priority Claims and to other Claim Holders and Interest Holders and the funding of the Liquidating Trust.  The Plan further provides for the termination of all Equity Interests in the Debtor, the dissolution and wind-up of the affairs of the Debtor, and the transfer of any remaining Estate Assets to the Liquidating Trust.  The Debtor will be dissolved under applicable law as soon as practicable upon the closing of the Chapter 11 Case.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article

---

[2]    All capitalized terms not defined in this introduction shall have the same meanings set forth in Article I of the Combined Disclosure Statement and Plan.

XVII.C. of the Plan, the Debtor expressly reserves the right to alter, amend or modify the Plan, one or more times, before its substantial consummation.

THIS PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

**THE DEBTOR HAS CONCLUDED THAT THE PLAN IS IN THE BEST INTERESTS OF GENERAL UNSECURED CREDITORS AND URGES SUCH CREDITORS TO VOTE IN FAVOR OF THE PLAN.**

## ARTICLE II:
## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined, including those capitalized terms used in the preceding Introduction, shall have the meanings ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. To the extent that there is an inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the definition set forth herein shall control. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender

shall include the masculine.  In addition to the foregoing, any defined terms used in the Exhibits shall have the meaning ascribed to them in either the applicable Exhibit or in Article I of this Plan.

"**503(b)(9) Claim**" means any Claim against the Debtor for the value of goods sold to the Debtor in the ordinary course of business and received by the Debtor within twenty (20) days before the Petition Date.

"**Actions**" means any and all Causes of Action (other than those which are (i) released or dismissed as part of and pursuant to the Plan, (ii) settled by order of the court prior to the Effective Date, (iii) fixed and liquidated through the claims adjudication process prior to the Effective Date, or (iii) pending approval pursuant to Rule 9019 prior to or on the Effective Date) which have been or may be made or asserted by or against the Debtor, a trustee, debtor-in-possession, the Estate or other appropriate party in interest, including, but not limited to, potential avoidance actions under sections 502(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code or under state or federal statutes and common law, including, without limitation, fraudulent transfer laws (whether or not litigation is commenced to prosecute such Causes of Action) and including all counterclaims, potential counterclaims, rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction), and any other direct or indirect claim or Cause of Action of any kind whatsoever, whenever and wherever arising or asserted.

"**Administrative Claim**" means a Claim for costs and expenses of administration of this Chapter 11 Case allowed under sections 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to:  (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and operating the businesses of the Debtor (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by governmental units for taxes (including Claims in respect of taxes that accrued after the Petition Date, but excluding Claims in respect of taxes that accrued on or before the Petition Date unless such taxes are entitled to be treated as administrative claims under the Bankruptcy Code); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under sections 328, 330, 331, 363 or 503(b) of the Bankruptcy Code to the extent incurred on or prior to the Effective Date; (c) all fees and charges assessed against the Debtor's Estate under section 1930, chapter 123 of title 28 of the United States Code; (d) any 503(b)(9) Claims; and (e) any Claims that have been designated "administrative claims" or "superpriority claims" (including the superpriority claims contemplated by the DIP Orders hereof) by order of the Bankruptcy Court.

"**Administrative Claims Bar Date**" means the date that falls on the forty-fifth (45th) day following the Effective Date, by which date Holders of Administrative Claims shall file with the Distribution Agent and serve on the Debtor requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code and the Bankruptcy Rules.

"**Affiliate**" means "affiliate" as defined in section 101(2) of the Bankruptcy Code.

"**Allowed**" means, with respect to any Claim (including any Administrative Claim) or portion thereof (to the extent such Claim is not Disputed or Disallowed) or any Equity Interest, (a)

any Claim, proof which (i) was Filed with the Bankruptcy Court or its duly appointed Distribution Agent, (ii) was deemed filed pursuant to section 1111(a) of the Bankruptcy Code, or (iii) by a Final Order, was not required to be Filed; (b) any Claim or Equity Interest that has been, or hereafter is, listed in the Schedules as liquidated in an amount other than zero or unknown and which is not Disputed or contingent (or as to which the applicable Proof Claim has been withdrawn or Disallowed); (c) any Claim or Equity Interest which has been allowed (whether in whole or in part) by a Final Order (but only to the extent so allowed), and, in the case of (a) above, as to which no objection to the allowance thereof, or action to subordinate, avoid, classify, reclassify, expunge, estimate or otherwise limit recovery with respect thereto, has been Filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order; (d) any Claim or Equity Interest allowed under or pursuant to the terms of the Plan; (e) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code which has been allowed in accordance with section 503(h) of the Bankruptcy Code; (f) a Claim in respect of an Executory Contract or Unexpired Lease that either (1) is not a Disputed Claim or (2) has been allowed by a Final Order, in either case only if a Proof Claim has been Filed or has otherwise been deemed Filed under applicable law; or (g) which is a Professional Fee Claim for which a fee award amount has been approved by order of the Bankruptcy Court; provided, however, that Claims or Equity Interests allowed solely for the purpose of voting to accept or reject the Combined Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

"**Avoidance Actions**" means any and all Causes of Action and the proceeds thereof (other than those that are released or dismissed as part of and pursuant to the Plan or that were sold to the Purchaser in connection with the Restructuring Transaction) which a trustee, debtor-in-possession, the Estate or other appropriate party in interest may assert under sections 502(d), 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws (whether or not litigation is commenced to prosecute such Causes of Action) and including the Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted.

"**Ballot**" means any ballot (including any beneficial ballot) distributed with the Disclosure Statement for purposes of voting to accept or reject the Plan.

"**Bankruptcy Case**" means the chapter 11 case entitled *In re: ScripsAmerica, Inc.*, Case No. 16-11991 (LSS), and commenced on September 7, 2016 when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

"**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all amendments and modifications thereto that are subsequently made applicable to this Chapter 11 Case.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over this Chapter 11 Case or any aspect thereof.

"**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code, (iii) the applicable Local Rules of Bankruptcy Practice and Procedure for the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to this Chapter 11 Case or proceedings therein, as the case may be.

"**Bar Date**" means a date that is established pursuant to an Order of the Bankruptcy Court as to any Claim that is not an Administrative Claim or a Claim asserted by a Governmental Unit by which date Holders of General Unsecured Claims shall file with the Distribution Agent and serve on the Liquidating Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code and the Bankruptcy Rules.

"**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Wilmington, Delaware.

"**Cash or $**" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

"**Causes of Action**" means any and all actions, causes of action, claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based on whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Case, including through the Effective Date.

"**Chapter 11 Case**" means the chapter 11 case entitled *In re: ScripsAmerica, Inc.*, Case No. 16-11991 (LSS), and commenced on September 7, 2016 when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

"**Claim**" or "**Claims**" means a claim or claims against the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

"**Claims Objection Deadline**" means the date that is one hundred and eighty (180) days after the Effective Date or such later date as may be extended by order of the Bankruptcy Court by the filing of a motion on notice to only the Bankruptcy Rule 2002 service list.

"**Claims Register**" means the official register of Claims maintained by the Distribution Agent.

"**Class**" means a category of Holders of Claims or Equity Interests pursuant to section 1122(a) of the Bankruptcy Code, as described in Articles II and III of the Plan.

"**Confirmation**" means the entry of the Confirmation Order on the docket of this Chapter 11 Case, subject to all conditions specified having been (a) satisfied, or (b) waived.

"**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of this Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

"**Creditor**" means any Holder of a Claim against any Debtor or its Estate.

"**Plan**" means this combined disclosure statement and chapter 11 plan of liquidation including, without limitation, all exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time.

"**Committee**" means the former official committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code pursuant to that certain *Notice of Appointment of Committee of Unsecured Creditors* filed by the U.S. Trustee on November 3, 2016 [Docket No. 71] and later disbanded by the U.S. Trustee by notice dated January 11, 2017 [Docket No. 143].

"**Cure**" means the Distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease, pursuant to Bankruptcy Code section 365(b), in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

"**D&O Policy**" means all insurance policies for directors, members, trustees, and officers liability maintained or held by the Debtor at any time on or prior to the Effective Date.

"**Debtor**" means ScripsAmerica, Inc., as debtor and debtor-in-possession.

"**Deficiency Claim**" means any portion of a Claim to the extent (i) the value of the holder's Claim in the applicable Estate's interest in the property securing such Claim is less than the amount of the Claim or (ii) the amount of a Claim subject to setoff is less than the Allowed Amount of the Claim, each as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code.

"**Disallowed**" means, with respect to any Claim, Equity Interest or portion thereof, any Claim against or Equity Interest in the Debtor which:  (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the applicable Debtor, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a Proof Claim has not been Filed or deemed Filed or Allowed or deemed Allowed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law in a liquidated non-contingent amount; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof Claim; (vi) is evidenced by a Proof Claim which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such Proof Claim was not properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; (viii) where the holder of a Claim or Equity Interest is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; or (ix) is for reimbursement or contribution that is contingent as of the time of allowance or disallowance of such Claim or Equity Interest.  In each case, a Disallowed Claim or Equity Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

"**Disputed**" means with respect to any Claim or any portion thereof (a) as to which the Debtor or any other party in interest, has Filed an objection by the Claims Objection Deadline, and such objection has not been withdrawn or overruled by a Final Order; (b) that is listed on the Debtor's Schedules as disputed (unless and to the extent such Claim has been deemed Allowed or deemed Allowed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law); or (c) a tort claim.

"**Disputed Claim Amount**" means (a) if a liquidated amount is set forth in a Proof Claim relating to a Disputed Claim, (i) the liquidated amount or any portion thereof set forth in the Proof Claim relating to the Disputed Claim; (ii) an amount agreed to by the Liquidating Trustee and the Holder of such Disputed Claim; or (iii) if a request for estimation is Filed by any party, the amount at which such Disputed Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in a Proof Claim relating to a Disputed Claim, (i) an amount agreed to by the Liquidating Trustee and the Holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim; or (c) zero, if the Disputed Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof Claim was Filed, or deemed to have been Filed, as applicable, and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court.

"**Distribution**" means any Distribution pursuant to the Plan to the Holders of Allowed Claims or Equity Interests.

"**Distribution Agent**" means the Liquidating Trustee or the agent of the Liquidating Trustee responsible for making all Distributions under the Plan.

"**Distribution Date**" means the date on which a Distribution is made pursuant to this Plan.

"**Distribution Record Date**" means (i) the Confirmation Date as to the Holders of Allowed Administrative Claims entitled to Distributions pursuant to the Plan and (ii) any such date established by the Liquidating Trustee as to Holders of Secured Claims, Holders of Other Priority Claims and Holders of General Unsecured Claims.

"**Distribution Reserve Account**" means an account established by the Liquidating Trustee on or prior to the initial Distribution Date.  The Liquidating Trustee shall deposit into the Distribution Reserve Account on each Distribution Date, pending resolution of Disputed Claims, that portion of Liquidating Trust Assets that would otherwise be distributable in respect of such Disputed Claims, if such Disputed Claims had then constituted Allowed Claims entitled to receive Liquidating Trust Assets.  The amount of such deposits made by the Liquidating Trustee into the Distribution Reserve Account on any Distribution Date shall be in an amount as approved by the Liquidating Trustee.

"**Effective Date**" means the first Business Day following the date on which all conditions to confirmation set forth in Article XV.A. of the Combined Disclosure Statement and Plan have been satisfied or, if capable of being duly and expressly waived, as provided in Section Article XV.D. of the Combined Disclosure Statement and Plan, any conditions to the occurrence of confirmation set forth in the Combined Disclosure Statement and Plan has been satisfied or waived.

"**EisnerAmper**" means EisnerAmper LLP in its capacity as the Committee's advisor.

"**Entity**" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

"**Equity Interests**" means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in the Debtor including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor, membership interests, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

"**Estate**" means the estate of the Debtor created by section 541 of the Bankruptcy Code upon the commencement of this Chapter 11 Case on the Petition Date.

"**Exculpated Parties**" mean, collectively, each of the following parties in their respective capacities as such: (a) the Debtor, and its officers, directors, and employees as it relates to their post-petition conduct; (b) the Committee, and (c) each member of the Committee (solely in their capacity as members of the Committee and not in their individual capacities), (d) the Liquidating

Trustee, (e) the Distribution Agent, and (f) the respective professionals of the Debtor and the Committee whose retentions were authorized by order of the Bankruptcy Court.

"**Executory Contract**" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"**File, Filed or Filing**" means, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

"**Final Order**" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, re-argument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending or (ii) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken or granted; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

"**General Unsecured Claim**" means an unsecured Claim against a Debtor, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease, but excluding any Administrative Claims, Priority Tax Claims, and Other Priority Claims.

"**General Bar Date**" means April 15, 2017 at 5:00 p.m. Pacific Time, as stated in the Notice of Deadlines for Filing Proofs of Claim, Including Claims Under Section 503(b)(9) of the Bankruptcy Code, Against Debtor [Docket No. 134], filed January 9, 2017.

"**Governmental Unit**" means all governmental units, which shall include all entities defined in section 101(27) of the Bankruptcy Code, including such entities that hold a Claim arising from prepetition tax years or periods or prepetition transactions to which a Debtor was a party.

"**HEP**" means Equity Partners HG LLC in its capacity as the Debtor's advisor.

"**Holder**" or "**Holders**" means the legal or beneficial holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

"**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Impaired Class**" means a Class or Claims or Equity Interests that are Impaired.

"**Initial Distribution Date**" means the date on which the Debtor or the Liquidating Trustee, as applicable, make initial distributions to Holders of Allowed Claims pursuant to the Plan.

"**Intercompany Claim**" means any Claim by the Debtor against a Non-Debtor Affiliate.

"**Lien**" means, with respect to any asset or property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise:  (a) any and all mortgages or hypothecation to secure payment of a debt or performance of an obligation, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of general unsecured creditors; provided, however, that a lien that has or may be avoided pursuant to any Avoidance Action shall not constitute a lien hereunder.

"**Liquidating Trust**" means the ScripsAmerica Liquidating Trust to be established on the Effective Date in accordance with the Plan and to effectuate a wind down, dissolution and liquidation of the Debtor's Estate following the Effective Date, as set forth in the Plan.

"**Liquidating Trust Agreement**" means the agreement to be executed as of the Effective Date establishing the Liquidating Trust pursuant to the Plan in substantially the form attached as Exhibit F to the Plan.

"**Liquidating Trust Assets**" means:  (a) the Liquidating Trust Funding Amount; (b) all rights to investigate, prosecute and defend any Remaining Actions, through final judgment and all appeals, not otherwise settled or compromised by the Liquidating Trustee (whether through the claims adjudication process, alternative dispute resolution, or otherwise); (c) any Remaining Assets; (d) any and all proceeds of any Remaining Actions; (e) the Debtor's rights under the Restructuring Transaction, including all rights of recovery under the Restructuring Transaction and any ancillary agreements among the Debtor and any Purchaser or Purchasers; and (f) any Privileged Documents.  For the avoidance of doubt, the Liquidating Trust Assets shall not include any assets purchased in connection with a Potential Sale.

"**Liquidating Trust Funding Amount**" means the funding on the Effective Date of the Liquidating Trust in the amount of the Cash held by the Estate after taking into account Distributions made on the Effective Date total sum of (a) the balance of any proceeds from the Proposed Sale or Restructuring Transaction, *plus* (b) any proceeds from any insurance policies (including, but not limited to, all insurance policies for directors, members, trustees, and officers liability maintained or held by the Debtor at any time on or prior to the Effective Date) obtained prior to the Effective Date, *plus* (c) proceeds of any litigation *plus* (d) any other proceeds or funds marshalled by the Debtor with the Committee's cooperation (including but not limited to funds held by any court) *less* (e) amounts required in connection with payment of all allowed administrative expenses of the Debtor's Estate, including allowed professional fees incurred prior to the Effective Date.

"**Liquidating Trust Protected Parties**" means the Liquidating Trust, the Liquidating Trustee, each of their members, designees, agents, professionals, employees, managers, partners, actuaries, financial advisors, and attorneys.

"**Liquidating Trustee**" means George L. Miller.

"**Motion for Protective Order**" means the Motion of the Official Committee of Unsecured Creditors for Entry of Protective Order Quashing Notices of Deposition Relating to Motion to Disband the Committee dated November 16, 2016 [D.I. 84].

"**Motion to Disband/Remove**" means the Debtor's Motion for Order Pursuant to 11 U.S.C. §[§] 105(a) and 1102 Directing the Disbandment of the Official Committee of Unsecured Creditors or, alternatively, the Removal of Ironridge Global Partners, LLC and Robert Schneiderman from the Committee dated November 4, 2016 [D.I. 75].

"**Non-Debtor Affiliates**" means Lakeside Pharmacy of Alabama, Inc., Pharmacy Administration, Inc. and P.I.M.D. International LLC.

"**Objection to the Motion to Disband/Remove**" means the Objection of the Official Committee of Unsecured Creditors to Debtor's Motion for Order Pursuant to 11 U.S.C. §[§] 105(a) and 1102 Directing the Disbandment of the Official Committee of Unsecured Creditors or, Alternatively, the Removal of Ironridge Global Partners, LLC and Robert Schneiderman from the Committee dated November 21, 2016 [D.I. 94].

"**Order(s)**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any case or the docket of any other court of competent jurisdiction.

"**Other Priority Claims**" means any and all Allowed Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim.

"**Secured Claim**" means a Claim that is secured by a Lien which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which the Estate has an interest, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code; to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Debtor or the Liquidating Trustee, as applicable, and the Holder of such Claim. If the amount of any Claim exceeds the value of the Holder's interest in the Estate's interest in property or the amount subject to setoff, it shall be treated as a General Unsecured Claim.

"**Person**" shall have the meaning provided in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means September 7, 2016, the date on which the Debtor Filed its petition for relief commencing this Chapter 11 Case.

"**Plan**" means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with its terms and the Bankruptcy Code or the Bankruptcy Rules.

"**Plan Proponent**" means the Committee.

"**Plan Restructuring Documents**" means documentation necessary to consummate the Combined Disclosure Statement and Plan and the transactions contemplated therein.

"**Priority Tax Claim**" means any and all Claims of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"**Privileged Documents**" means all documents and communications maintained by the Debtor subject to attorney-client, work product, or common interest privilege claims.

"**Professional**" means any professional employed in this Chapter 11 Case pursuant to sections 327, 328, 1103, 105(a), 363(c) of the Bankruptcy Code or other order of the Bankruptcy Court.

"**Professional Fee Claim**" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred after the Petition Date and on or before the Effective Date under sections 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

"**Proof of Claim**" means a proof of claim Filed with the Bankruptcy Court or the Distribution Agent in this Chapter 11 Case.

"**Proposed Sale**" means the proposed sale of substantially all of the Debtor's assets or equity interests in its Non-Debtor Affiliates whether in accordance with the Debtor's Bid Procedures Order or pursuant to the Plan.

"**Pro Rata Share**" means with respect to any Distribution to a Class under the Combined Disclosure Statement and Plan, the ratio (expressed as a percentage) of the amount of an Allowed Claim or Equity Interest in such Class to the aggregate amount of all Allowed Claims or Equity Interests plus the Disputed Claim Amount of all Disputed Claims or the amount of Equity Interests that are Disputed in the same Class; provided that, Priority Tax Claims and Other Priority Tax Claims shall be aggregated for the purposes of calculating the Distribution to Holders of Priority Tax Claims and Holders of Other Priority Claim; provided further, that to the extent any Disputed Claims or Equity Interests are not Allowed by the Bankruptcy Court in whole or in part, the Pro Rata Share of all Allowed Claims or Equity Interests in such Class shall be adjusted to take into account the Disputed Claim Amount or the amount of Equity Interests that are Disputed (or portion thereof) associated with the Disputed Claim or Equity Interest that was not Allowed.

"**Remaining Actions**" means all Actions and claims which have not been previously settled and approved (or pending approval) by the Bankruptcy Court prior to the Effective Date (excluding claims which are being released pursuant to the Combined Disclosure Statement and Plan) on behalf of and against the Debtor.

"**Remaining Assets**" means all of the right, title and interest of the Debtor in and to property of the Debtor's Estate existing on the Effective Date including: (i) the Liquidating Trust Funding Amount; (ii) all Sale Proceeds; (iii) all Remaining Actions; (iv) all insurance policies and proceeds thereof, including without limitation the Debtor's liability insurance policies for directors, members, trustees and officers; (v) all tax refunds, Net Operating Losses (as that term is defined in the United States Tax Code), reimbursements, credits or other refunds or returns to which the Debtor may be entitled; and (vi) all other assets of the Debtor or of the Estate existing on the Effective Date after giving effect to all Distributions required to be made as of or prior to the Effective Date, including all books, records and files of the Debtor and of the Estate, in all forms, including electronic and hard copy.

"**Restructuring Transaction**" means any transaction or series of transactions that constitute a recapitalization or restructuring of a majority of the equity and/or other indebtedness, obligations or liabilities of the Debtor, which recapitalization or restructuring is effected pursuant to the Combined Disclosure Statement and Plan.

"**Sale Motion**" means the Debtor's Motion for an Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 6004 (I)(A) Approving Procedures in Connection with Sale of Debtor's Assets; (B) Approving Form of Asset Purchase Agreement; (C) Scheduling Auction and Hearing to Consider Approval of Sale; (D) Approving Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II)(A) Authorizing Sale of Such Assets Purchase to Asset Purchase Agreement, Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (B) Granting Related Relief dated October 14, 2016 [D.I. 44].

"**Sale Order**" means any order or orders in connection with the Sale Motion.

"**Schedules**" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

"**Unclaimed Distribution**" means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

"**Unexpired Lease**" means a lease of non-residential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"**Unimpaired**" means Claims in an Unimpaired Class.

"**Unimpaired Class**" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

"**Unsecured Claim**" means any Claim against the Debtor (but not a Secured Claim, an Administrative Claim or a Tax and Other Priority Claim), including, but not limited to: (a) any Claim arising from the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code, and (b) any Deficiency Claim.

"**Unclaimed Distribution Deadline**" means ninety (90) days from the date the Liquidating Trustee makes a Distribution of Cash or other property under the Combined Disclosure Statement and Plan to a holder of an Allowed Claim.

"**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

"**U.S. Trustee Fee Claims**" means fees arising under 28 U.S.C. § 1930(a)(6) with respect to this Chapter 11 Case.

"**Voting Deadline**" means the date and time by which all Ballots to accept or reject the Combined Disclosure Statement and Plan must be received in order to be counted, as set forth by the Solicitation Procedures Order.


# ARTICLE III:
## BACKGROUND AND DISCLOSURES

On the Petition Date, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code and, since that date, has operated as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

A.    **General Background, Prepetition Capital Structure, and Events Leading to the Debtor's Chapter 11 Case**

The general background, prepetition capital structure, and events leading to the Debtor's chapter 11 case are detailed in the Declaration of Brian Ettinger in Support of the Debtor's Initial Filings [D.I. 3; filed 9/7/16], which is attached as Exhibit A.

B.    **Pending Litigation and Potential Claims/Causes of Action**

The Debtor was party to pending litigation on the Petition Date, which is summarized in its Statement of Financial Affairs filed in the Bankruptcy Case [D.I. 38; filed 10/17/16].

Additionally, on November 18, 2016, the Debtor (i) initiated a civil action against Robert Schneiderman in the United States District Court for the Eastern District of Pennsylvania (Civil Action No. 16-cv-6081-PD), asserting two separate counts for breach of fiduciary duty and a third claim for a declaration that any release asserted by Schneiderman in his favor is invalid. Schneiderman filed a motion to dismiss the complaint or, alternatively, a motion to transfer venue of the case to Delaware. The Debtor has opposed the relief requested by Schneiderman and, as of the date this Disclosure Statement was filed, the motion to dismiss had not been ruled upon by the Court. A copy of the complaint in the Schneiderman action is attached as Exhibit B.

Further, on December 23, 2016, the Debtor filed the complaint which initiated an adversary proceeding against Ironridge Global IV, Ltd., LNK International, Inc. and the Suffolk County Comptroller [Adv. Pro. No. 16-51960 (LSS)], asserting claims for turnover against all Defendants

and, separately, breach of contract and unjust enrichment against Ironridge Global IV, Ltd. related to $160,519.82 which the Debtor believes is owed to it.

The Debtor has notified two of its insurers (National Union Fire Insurance Company of Pittsburgh, PA and James River Ins. Co.) regarding claims under its directors and officers and commercial general liability insurance policies, respectively. The claim(s) under the directors and officers liability insurance policy relate(s) to, *inter alia*, (i) the federal investigation of Main Avenue, (ii) the Ironridge litigation, and (iii) the Debtor's bankruptcy. The claim(s) under the Debtor's commercial general liability insurance policy relate(s) to the litigation initiated pre-petition by, *inter alia*, Ironridge Global Partners, LLC, Ironridge Global IV, Ltd. and John Kirkland in the United States District Court for the Central District of California in 2016. The foregoing events are described in detail in the Ettinger declaration attached as Exhibit A.

Finally, the Debtor is presently investigating other, potential claims and causes of action against third parties and reserves the right to assert further claims and causes of action if it determines that prosecution of same is warranted.

## C.    The Chapter 11 Case

The following is a brief description of certain material events that have occurred during this Chapter 11 Case.

### 1.    Bid Procedures Order

On November 3, 2016, this Court entered the Bid Procedures Order. Pursuant to the Bid Procedures Order, a sale objection deadline is set for January 18, 2017, the sale auction for January 24, 2017 and the sale confirmation hearing for January 25, 2017.

### 2.    Appointment of Committee; Disbandment of Committee.

On November 3, 2016, the United States Trustee appointed the Committee [D.I. 71]. The members of the Committee are as follows:  (a) Ironridge Global Partners, LLC; and (b) Robert Schneiderman.

To assist the Committee in carrying out its duties, the Committee selected Bayard, P.A. as its counsel. Further, the Committee selected EisnerAmper as its financial advisor. The Court entered Orders retaining both firms on December 15, 2016 [D.I. 115 and 118].

On January 11, 2017, the United States Trustee disbanded the Committee [D.I. 143].

### 3.    Motion to Disband/Remove

On November 4, 2016, the Debtor filed its Motion to Disband/Remove [D.I. 75].

### 4.    Claims Process and Bar Date

(a)    Section 341(a) Meeting of Creditors

– 15 –

On October 17, 2016, the United States Trustee presided over the section 341(a) meeting of creditors in the Chapter 11 Case.

> (b)    Schedules and Statements

The Debtor filed with the Bankruptcy Court their Schedules on October 7, 2016.

> (c)    Bar Date

On January 9, 2017, the Debtor filed the Debtor's Motion for Entry of an Order Establishing Bar Dates for Filing Claims, Including Claims Under Section 503(b)(9) of the Bankruptcy Code (the "**Bar Date Motion**") [D.I. 134], seeking entry of an Order establishing the General Bar Date, the Governmental Unit Bar Date, the Amended Schedules Bar Date and the Rejection Bar Date. [The Bankruptcy Court entered the Bar Date Order, which granted the relief requested in the Bar Date Motion, on February INSERT, 2017 [D.I. INSERT].]

## D.    The Liquidating Trust Agreement

Following the November 22, 2016 hearing in connection the Committee's Motion for Protective Order, however, settlement discussions between the Debtor and the Committee regarding the overall direction of the case began in earnest. The arm's length negotiations continued as throughout December 2016 the Debtor and the Committee exchanged drafts of a settlement agreement. Although the settlement agreement was not executed by the parties and the Committee was eventually disbanded, this Combined Disclosure Statement and Plan embodies certain of its principal terms.

> (a)    **The Plan**. The Plan provides for the creation of the Liquidating Trust on the Effective Date. The Debtor has the sole discretion to select the Liquidating Trustee. On the Effective Date, the Debtor will fund the Liquidating Trust in the total sum of (a) the balance of any proceeds from the Proposed Sale or Restructuring Transaction, *plus* (b) any proceeds from any insurance policies (including, but not limited to, all insurance policies for directors, members, trustees, and officers liability maintained or held by the Debtor at any time on or prior to the Effective Date) obtained prior to the Effective Date, *plus* (c) proceeds of any litigation *plus* (d) any other proceeds or funds marshalled by the Debtor (including but not limited to funds held by any court) *plus* (e) any Remaining Assets, *less* amounts required in connection with payment of all allowed administrative expenses of the Debtor's Estate, including allowed professional fees incurred prior to the Effective Date. Such net proceeds shall be indefeasibly paid to the Liquidating Trust on the Effective Date and shall be used to pay the fees of the Liquidating Trustee, the expenses of the Liquidating Trust and to fund distributions in accordance with the priority scheme under the Bankruptcy Code.

> (b)    **Rights with Respect to Actions**. The Plan provides for the assignment by the Debtor to the Liquidating Trust free and clear of all liens, claims and encumbrances, effective as of the Effective Date of (i) all rights to investigate, prosecute and defend any Remaining Actions, through final judgment and all appeals, not otherwise settled or compromised by the Liquidating Trustee (whether through the claims adjudication process, alternative dispute resolution, or otherwise); (ii) any and all proceeds of any Remaining

Actions; and (iii) any Remaining Assets.  On or after the Effective Date, the Liquidating Trustee shall have the authority to file objections to any claims or equity interests not previously settled, and the exclusive authority to settle, compromise, withdraw, prosecute, defend or litigate all Remaining Actions.  The rights of the Debtor, if any, on the Effective Date under any insurance policies (including, but not limited to, all insurance policies for directors, members, trustees, and officers' liability maintained or held by the Debtor at any time on or prior to the Effective Date) and the proceeds thereof (whether obtained or marshalled prior to the Effective Date) shall vest in the Liquidating Trustee as of the Effective Date.  On and after the Effective Date, the Liquidating Trustee shall pursue any Remaining Actions in his or her sole discretion without consultation or interference from the Debtor.  The Liquidating Trustee shall be a successor-in-interest to the Debtor in respect of the foregoing remaining Actions, assignments and authority, and in connection therewith shall be the holder of the Debtor's attorney-client privilege.  The Liquidating Trustee shall neither have any authority or standing to seek to reverse, overturn or challenge any settlements on insurance policies, litigation and claims entered into by the Debtor and approved by the Bankruptcy Court prior to the Effective Date.  The Debtor shall transfer any and all documents, information and communications maintained by the Debtor in any way relating to all possible Remaining Actions, and no documents, information or communications shall be withheld based upon any attorney-client, work product, or common-interest privilege claims.

(c)    **Distributions**.  Recoveries for any distribution(s) to allowed creditor claims will be limited to the assets of the Liquidating Trust, all in accordance with the priority scheme under the Bankruptcy Code; but such shall not limit or impair recoveries by creditors from any non-debtor person or entity.  Each holder of an allowed general unsecured claim shall receive in full, final and complete satisfaction, settlement, release, and discharge of its allowed claims, its *pro rata* share of any Remaining Assets of the Liquidating Trust after providing for the payment of all the Liquidating Trust expenses.

## E.    Certain Federal Income Tax Consequences

The following discussion summarizes certain United States ("**U.S.**") federal income tax consequences of the Plan to certain Holders of Claims.  The analysis contained herein is based upon the Internal Revenue Code of 1986, as amended (the "**Tax Code**"), the Treasury regulations promulgated thereunder (the "**Regulations**"), judicial decisions, and published administrative rulings and pronouncements of the Internal Revenue Service ("**IRS**") as in effect on the date hereof.  Legislative, judicial, or administrative changes or interpretations hereafter enacted or promulgated could alter or modify the analysis and conclusions set forth below.  Any such changes or interpretations may be retroactive and could affect significantly the federal income tax consequences discussed below.  The federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  This summary does not generally address state, local, or non-U.S. tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign taxpayers, broker dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, and investors in pass-through entities).  Accordingly, the following summary of certain federal income tax consequences

is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a Holder of a Claim.

THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER.  MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN MAY BE UNCERTAIN DUE TO THE LACK OF DIRECTLY APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE LAW.  NO RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE IRS WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED WITH RESPECT THERETO.  THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED.  THERE CAN BE NO ASSURANCE THAT THE IRS WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED.  ACCORDINGLY, EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN, OR OTHER TAX CONSEQUENCES OF THE PLAN.

**TO ENSURE COMPLIANCE WITH INTERNAL REVENUE SERVICE CIRCULAR 230, YOU ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER UNDER THE TAX CODE; (B) ANY SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE SOLICITATION OF VOTES IN FAVOR OF THE COMBINED DISCLOSURE STATEMENT AND PLAN; AND (C) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### 1.    FEDERAL INCOME TAX CONSEQUENCES TO THE DEBTOR

(a)    Sale of the Debtor's Assets

The sales of substantially all of the Debtor's Assets (each, a "**Sale**" and collectively, the "**Sales**") in the Chapter 11 Case are a taxable transaction.  Thus, the Debtor must recognize any gain or loss realized on the Sales.  To determine the amount of gain or loss realized on any Sale, the total consideration (net of selling expenses) received in such Sale must be allocated among the Assets sold in accordance with their relative fair market values.  The gain or loss realized with respect to each asset is then determined separately by subtracting the selling Debtor's tax basis in such asset from the amount of consideration received for such asset.  To the extent that the Debtor recognizes a net gain from the Sale, such gain may be offset either by (i) net operating losses ("**NOLs**") that accrue during the taxable year of the Sale, (ii) the Debtor's existing NOLs from prior taxable years, or (iii) capital loss carryforwards from prior years.  The Debtor's ability to use certain losses (including loss carryforwards) to offset taxable gains and income may be subject to certain limitations under the consolidated return rules and section 382 of the Tax Code. Accordingly, the amount of gain or loss arising from the Sales may be subject to adjustment in subsequent years in the event contingent payments are made in connection with any Sale.

(b)    Cancellation of Indebtedness and Reduction of Tax Attributes.

As a result of the consummation of the Combined Disclosure Statement and Plan, certain indebtedness of the Debtor will be deemed to be discharged for U.S. federal income tax purposes. Generally, gross income includes the amount of any such cancellation of indebtedness ("**COD**") income. The amount of the COD income generally equals the amount by which the indebtedness discharged (reduced by any unamortized discount) exceeds any consideration given in exchange therefor, subject to certain statutory or judicial exceptions that can apply to limit the amount of COD income (such as where the payment of the cancelled debt would have given rise to a tax deduction). Because the Debtor is in a chapter 11 bankruptcy proceeding, however, the Debtor will not be required to recognize COD income. Instead, the Debtor will be required to reduce certain tax attributes to the extent of unrecognized COD income. The order and manner prescribed for the reduction of the Debtor's tax attributes is set forth in section 108(b)(2) of the Tax Code. The tax attributes of the Debtor subject to reduction include NOLs, NOL carryforwards, capital losses and loss carryovers, certain tax credits, and, subject to certain limitations, the income tax basis of Debtor's property (including stock of subsidiaries). Since the Sales have already occurred, and the Debtor anticipates the distribution of the proceeds or any remaining Assets to the Liquidation Trust before the end of the Debtor's current taxable year, there will be no tax attributes to reduce, because, pursuant to section 108(b)(4) of the Tax Code, attribute reduction is made after there is a determination of the tax imposed for the year of the discharge of indebtedness.

## 2.    FEDERAL INCOME TAXATION OF THE LIQUIDATION TRUST

(a)    Classification of the Liquidating Trust

Upon the occurrence of the Effective Date, the Debtor's Assets will be transferred to the Liquidating Trust to be established pursuant to the Combined Disclosure Statement and Plan. The Debtor intends that (i) the Liquidating Trust qualify as a "liquidating trust," as defined in Regulation section 301.7701-4(d), and (ii) the Liquidating Trust be treated as a "grantor trust" with the Liquidation Trust Beneficiaries treated as the grantors of the Liquidating Trust.

The following discussion assumes that the Liquidating Trust will be characterized as a grantor trust for federal income tax purposes. The Debtor does not intend to request any advance ruling from the IRS regarding the tax characterization of the Liquidating Trust as a liquidating trust. Additionally, no opinion of counsel has been requested concerning the tax status of the Liquidating Trust as a grantor trust. As a result, there can be no assurance that the IRS will treat the Liquidating Trust as a grantor trust. If the IRS were to successfully challenge such classification, the federal income tax consequences to the Liquidating Trust, the Liquidating Trust Beneficiaries, and the Debtor could be materially different than is discussed herein (including the potential for an entity level tax on any income of the Liquidating Trust and adverse tax effects to the Holders of Claims).

(b)    General Tax Reporting by the Liquidating Trust and Liquidating Trust Beneficiaries

The Plan requires all parties (including the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) to treat the transfer of Assets by the Debtor to the Liquidating Trust, for U.S. federal income tax purposes, as a transfer of such Assets directly to the Liquidating

– 19 –

Trust Beneficiaries, followed by the transfer of such Assets by the Liquidating Trust Beneficiaries to the Liquidating Trust.  The Plan also requires the Debtor, the Liquidating Trustee, and the Liquidating Trust Beneficiaries to treat the Liquidating Trust as a grantor trust of which the Liquidating Trust Beneficiaries are the owners and grantors.  As a consequence, the Liquidating Trust Beneficiaries (and any subsequent transferees of beneficial interests in the Liquidating Trust) will be treated for U.S. federal income tax purposes as the direct owners of a specified undivided interest in the Assets of the Liquidating Trust (which Assets will have a tax basis equal to their fair market value on the date transferred to the Liquidating Trust).

The U.S. federal income tax reporting obligation of a Liquidating Trust Beneficiary is not dependent upon the Liquidating Trust distributing any Cash or other proceeds.  The Combined Disclosure Statement and Plan provides that the Liquidating Trust will allocate items of income, gain, loss, expense, and other tax items to the Liquidating Trust Beneficiaries in accordance with their relative beneficial interest in the Liquidating Trust.  Therefore, a Liquidating Trust Beneficiary may incur an income tax liability with respect to its allocable share of the income of the Liquidating Trust whether or not the Liquidating Trust has made any concurrent Distribution of Cash or other Assets to the Liquidating Trust Beneficiary.

The Plan requires the Liquidating Trustee of the Liquidation Trust to file tax returns for the Liquidating Trust as a "grantor trust" pursuant to Regulation section 1.671-4(a).  The Liquidating Trust is expected to send each Liquidating Trust Beneficiary a separate statement setting forth the Liquidating Trust Beneficiary's share of items of income, gain, loss, deduction, and credit, and such Liquidating Trust Beneficiary will be responsible for any reporting requirements with respect to the allocated amounts and the payment of any taxes that result from such allocations.

LIQUIDATING TRUST BENEFICIARIES ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE APPROPRIATE FEDERAL INCOME TAX REPORTING OF ALLOCATIONS FROM THE LIQUIDATING TRUSTS.

### 3.    FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS OF CLAIMS

(a)    In General

The federal income tax consequences of the Plan to a Holder of a Claim will depend upon several factors, including, but not limited to: (i) whether the Holder's Claim (or a portion thereof) constitutes a Claim for principal or interest; (ii) the origin of the Holder's Claim; (iii) the type of consideration received by the Holder in exchange for the Claim; (iv) whether the Holder is a resident of the U.S. for tax purposes (or falls into any of the special classes of taxpayers excluded from this discussion as noted above); (v) whether the Holder reports income on an accrual or cash basis method; (vi) whether the Holder has taken a bad debt deduction or worthless security deduction with respect to the Holder's Claim; and (vii) whether the Holder received Distributions under the Combined Disclosure Statement and Plan in more than one taxable year.

Generally, a Holder of a Claim will recognize gain or loss equal to the difference between the "amount realized" by such Holder in exchange for the Holder's Claim and such Holder's adjusted tax basis in the Claim.  The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under the Combined Disclosure Statement and

Plan in respect of a Holder's Claim, including, in the case of the Liquidating Trust Beneficiaries, the fair market value of each Liquidating Trust Beneficiary's proportionate share of the Assets transferred to the Liquidation Trust on the behalf of and for the benefit of such Holder (to the extent that such cash or other property is not allocable to any portion of the Claim representing accrued but unpaid interest (see discussion below)).  The tax basis of a Holder in a Claim will generally be equal to the Holder's cost therefore.  The holding period of a Liquidating Trust Beneficiary in its proportionate share of the Assets held by the Liquidating Trust will begin on the day following the deemed Distribution of Assets to the Holder.

The character of any recognized gain or loss (*i.e.*, as ordinary income or as short-term or long-term capital gain or loss) will depend upon the status of the Holder, the nature of the Claim in the Holder's hands, the purpose and circumstances of the Claim's acquisition, the Holder's holding period of the Claim, and the extent to which the Holder of the Claim previously claimed a deduction for the worthlessness of all or a portion of the Claim.  If the Claim is a capital asset in the Holder's hands, any gain or loss realized will generally be characterized as capital gain or loss and will constitute long-term capital gain or loss if the Holder has held such Claim for more than one year.  There are limitations on the deduction of capital losses by both corporate and non-corporate taxpayers.

HOLDERS ARE STRONGLY ADVISED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIMS AND RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR CLAIMS.

(b)     Allocation of Consideration to Accrued Interest

A portion of the consideration received by a Holder of a Claim in satisfaction of that Claim pursuant to the Plan may be allocated to the portion of such Claim (if any) that represents accrued but unpaid interest.  If any portion of the Distribution is required to be allocated to accrued interest, such portion would be taxable to the Holder as interest income, except to the extent the Holder has previously reported such interest as income.  A Holder will generally recognize a loss to the extent that any accrued interest was previously included in the Holder's gross income and is not paid in full.

Pursuant to the Plan, all Distributions in respect of any Claim will be allocated first to the principal amount of such Claim, as determined for U.S. federal income tax purposes, and then, to the extent the consideration exceeds such amount, to any portion of such Claim representing accrued but unpaid interest.  However, there is no assurance that the IRS will respect such allocation for U.S. federal income tax purposes.

In the event that a portion of the consideration received by a Holder of a Claim represents accrued but unpaid interest, only the balance of the Distribution would be considered received by the Holder in respect of the principal amount of the Claim.  Such an allocation would reduce the amount of the gain, or increase the amount of loss, realized by the Holder with respect to the Claim. If any such loss were a capital loss, it would not offset any amount of the Distribution that was treated as ordinary interest income (except, in the case of individuals, to the limited extent that capital losses may be deducted against ordinary income).

To the extent that any portion of the Distribution is treated as interest, Holders may be required to provide certain tax information in order to avoid the withholding of taxes.

(c)    Market Discount

A Holder that acquires a debt instrument at a market discount generally is required to treat any gain realized on the disposition of the instrument as ordinary income to the extent of accrued market discount not previously included in gross income by the Holder.

(d)    Information Reporting and Backup Withholding

The Debtor and the Liquidating Trustee, as well as their respective paying agents, may be obligated to furnish information to the IRS regarding the consideration paid to Holders (other than corporations and other exempt Holders of Claims) pursuant to the Plan.

A Holder of an Allowed Claim may be subject to backup withholding with respect to any "reportable" payments received pursuant to the Plan unless (i) such Holder falls within certain exempt categories and, when required, demonstrates its eligibility for such exemption or (ii) provides a correct taxpayer identification number, certifies as to no loss of exemption from backup withholding, and otherwise complies with the applicable requirements of the backup withholding rules. A Holder who does not provide a correct taxpayer identification number may be subject to penalties imposed by the IRS. Amounts withheld under the backup withholding rules may be credited against a Holder's tax liability, and a Holder may obtain a refund of any excess amounts withheld under the backup holding rules by timely filing the appropriate claim for refund with the IRS.

### 4.    RESERVATION OF RIGHTS

The foregoing discussion is subject to change (possibly substantially) based on subsequent changes to the Plan or subsequent events. The Debtor and its advisors reserve the right to modify, revise, or supplement this discussion and other tax related sections of the Plan and Disclosure Statement in accordance with the terms of the Combined Disclosure Statement and Plan and the Bankruptcy Code.

**THE FOREGOING DISCUSSION OF CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS IS FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. ACCORDINGLY, EACH HOLDER SHOULD CONSULT ITS TAX ADVISOR WITH RESPECT TO THE TAX CONSEQUENCES OF THE PLAN DESCRIBED HEREIN AND THE APPLICATION OF FEDERAL, STATE, LOCAL, AND FOREIGN TAX LAWS. NEITHER THE DEBTOR NOR ITS PROFESSIONALS SHALL HAVE ANY LIABILITY TO ANY PERSON OR HOLDER ARISING FROM OR RELATED TO THE U.S. FEDERAL, STATE, LOCAL, OR FOREIGN TAX CONSEQUENCES OF THE PLAN OR THE FOREGOING DISCUSSION.**

### F.    Alternative Plan

If the Plan is not confirmed, the Debtor or any other eligible party in interest could attempt to formulate a different plan. However, the additional costs, all of which would constitute Administrative Claims may be so significant that one or more parties in interest could request that

the Chapter 11 Case be converted to cases under chapter 7.  Accordingly, the Debtor believes that the Plan enables creditors to realize the best return under the circumstances.

### G.    Best Interests Test and Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an impaired Claim or Equity Interest either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  A hypothetical chapter 7 liquidation analysis is attached to this Plan as Exhibit D.  The value of any Distributions if the Debtor's Chapter 11 Case were converted to cases under Chapter 7 of the Bankruptcy Code would be less than the value of Distributions under the Plan for a variety of reasons.  First, and most importantly, conversion of the Chapter 11 Case to a chapter 7 case would eviscerate the distribution framework proposed in this Plan, pursuant to which, *inter alia*, (i) Distributions to Holders of Allowed Claims will be made from the Additional Estate Cash that would otherwise be payable to the Purchaser, and (ii) Avoidance Actions against Creditors will not be pursued.  Second, conversion of the Chapter 11 Case to chapter 7 cases would require the appointment of a chapter 7 trustee, and in turn, such chapter 7 trustee's likely retention of new professionals.  The "learning curve" that the trustee and new professionals would be faced with comes with potentially additional costs to the Estate and with a delay compared to the time of Distributions under the Plan (and prosecution of Causes of Action).  Third, a chapter 7 trustee would be entitled to statutory fees relating to the Distributions of the already monetized assets made to creditors.  Accordingly, a portion of the cash currently available for Distribution to Holders of Claims, including unsecured creditors, would instead be paid to the chapter 7 trustee.

As a result, the Plan Proponent believes that the Estate would have fewer funds to be distributed in a hypothetical chapter 7 liquidation than they would if the Plan is confirmed, and therefore Holders of Claims in all impaired Classes will recover less than in the hypothetical chapter 7 cases.

Moreover, without the structure of the Plan, and the settlements contained therein, all of the Creditors with Claims of lower priority than secured Claims would likely receive a diminished recovery on account of their Claims.  Accordingly, the Plan Proponent believes that the "best interests" test of Bankruptcy Code section 1129 is satisfied.

### H.    Estimated Effective Date and Date of Distributions

The Debtor estimates that the Effective Date will occur on the date that the Confirmation Order is entered, which is expected to be INSERT, 2017.  The Debtor cannot provide an estimate regarding the date by which tall Distributions to the Holders of Allowed Claims will be completed, as such date is contingent upon the direction of pending and yet-to-be-filed litigation.

### ARTICLE IV:
### SUMMARY OF DEBTOR'S ASSETS; SUMMARY OF
### TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES

## A.    Summary of Assets

The following chart provides a summary of the Debtor's assets and the estimated value of such assets:

| Asset | Estimated Value |
|---|---|
| Cash | $[0.00] |
| Remaining Assets | Unknown |

## B.    Summary of Treatment of Claims and Equity Interests and Estimated Recoveries

The following chart provides a summary of treatment of each Class of Claims and Equity Interests (other than Administrative Claims, Priority Tax Claims and Intercompany Claims) and an estimate of the recoveries of each Class.[3]  The treatment provided in this chart is for informational purposes only and is qualified in its entirety by Article VII of the Plan.

| Class | Estimated Allowed Claims | Treatment / Voting Status | Estimated Recovery to Holders of Allowed Claims[4] |
|---|---|---|---|
| Class 1—Secured Claims | $0 | Unimpaired / Deemed to Accept | 100% |
| Class 2—Other Priority Claims | $xx,xxx.xx | Unimpaired / Deemed to Accept | 100% |
| Class 3—General Unsecured Claims | $xx,xxx.xx | Impaired / Entitled to Vote | 0.x% to x.0% |
| Class 4—Equity Interests | N/A | Impaired / Deemed to Reject | 0% |

## ARTICLE V:
## CONFIRMATION AND VOTING PROCEDURES

---

[3]    These amounts represent estimated Allowed Claims, and do not represent amounts actually asserted by Creditors in proofs of claim or otherwise.  The Debtor has not completed its analysis of Claims in the Chapter 11 Case and objections to such Claims have not been fully litigated.  Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time.  Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.

[4]    The estimated percentage recovery is based upon, among other things, an estimate of the Allowed Claims in the Chapter 11 Case.  As set forth in footnote 3 above, the actual amount of the Allowed Claims may be greater or lower than estimated.  Thus, the actual recoveries may be higher or lower than projected depending upon, among other things, the amounts and priorities of Claims that are actually Allowed by the Bankruptcy Court.

## A.      Confirmation Procedure

### 1.      Confirmation Hearing

On ==INSERT==, 2017, the Bankruptcy Court entered an Order [Docket No. __] (the "**Approval and Procedures Order**") approving the Disclosure Statement for solicitation purposes only and authorizing the Debtor to solicit the Plan.  The Confirmation Hearing has been scheduled for ==INSERT==, 2017 at 2:00 p.m. (ET) at the Bankruptcy Court, 824 North Market Street, 6th Floor, Courtroom 3, Wilmington, Delaware 19801 to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.  The Confirmation Hearing may be adjourned from time to time by the Debtor without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by Filing a notice with the Bankruptcy Court.

### 2.      Procedure for Objections

Any objection to final approval of the Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and/or confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served on (a) counsel to the Debtor, (i) Ciardi Ciardi & Astin, 1204 N. King Street, Wilmington, DE 19801, Attn: Daniel K. Astin; and (ii) Ciardi Ciardi & Astin, One Commerce Square, 2005 Market Street, Suite 3500, Philadelphia, PA 19103, Attn: Albert A. Ciardi III; and (b) the United States Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, DE 19801, Attn: Richard Schepacarter, by no later than **==INSERT==, 2017 at 4:00 p.m. (ET).  Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.**

### 3.      Requirements for Confirmation

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code.  Among other requirements, the Plan (i) must be accepted by all impaired Classes of Claims and Equity Interests or, if rejected by an impaired Class, the Plan must not "discriminate unfairly" against and be "fair and equitable" with respect to such Class; and (ii) must be feasible.  The Bankruptcy Court must also find that:

a.      the Plan has classified Claims and Equity Interests in a permissible manner;

b.      the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

c.      the Plan has been proposed in good faith.

### 4.      Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code requires the Plan to place a Claim or Equity Interest in a particular Class only if such Claim or Equity Interest is substantially similar to the other Claims or Equity Interests in such class.  The Plan creates separate Classes to deal respectively with secured Claims, unsecured Claims and Equity Interests.  The Plan Proponent believes that the Plan's classifications place substantially similar Claims or Equity Interests in the same Class and thus, meet the requirements of section 1122 of the Bankruptcy Code.

– 25 –

5.      **Impaired Claims or Equity Interests**

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes impaired by the Plan and receiving a payment or Distribution under the Plan may vote on the Plan. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be impaired if the Plan alters the legal, equitable or contractual rights of the Holders of such Claims or Equity Interests treated in such Class.  The Holders of Claims not impaired by the Combined Disclosure Statement and Plan are deemed to accept the Plan and do not have the right to vote on the Combined Disclosure Statement and Plan.  The Holders of Claims or Equity Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the Plan are deemed to reject the Plan and do not have the right to vote.  Finally, the Holders of Claims or Equity Interests whose Claims or Equity Interests are not classified under the Plan are not entitled to vote on the Plan.

6.      **Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor (unless such liquidation or reorganization is proposed in the Plan). Because the Plan proposes a liquidation of all of the Debtor's assets, for purposes of this test, the Debtor has analyzed the ability of the Liquidating Trustee to meet its obligations under the Plan.  Based on the Debtor's analysis, the Liquidating Trustee will have sufficient assets to accomplish its tasks under the Plan.  Therefore, the Plan Proponent believes that the liquidation pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code.

7.      **Eligibility to Vote on the Combined Disclosure Statement and Plan**

Unless otherwise Ordered by the Bankruptcy Court, only Holders of Allowed Claims in Classes 1 and 4 may vote on the Plan.  Further, subject to the tabulation procedures that were approved by the Conditional Approval and Procedures Order, in order to vote on the Plan, you must hold an Allowed Claim in Classes 1 or 4, or be the Holder of a Claim in either such Class that has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

8.      **Solicitation Notice**

All Holders of Allowed Claims in Class 3 will receive (i) notice of the Confirmation Hearing on the Plan (the "Confirmation Notice") and (ii) a form of ballot.  All other Creditors and parties in interest not entitled to vote on the Plan will only receive a copy of the Confirmation Notice.

9.      **Procedure/Voting Deadlines**

In order for your ballot to count, you must either (1) complete an electronic ballot at [http://www.----] or (2) complete, date, sign and properly mail, courier or personally deliver a paper ballot (please note that envelopes are not included with the ballot) to the Claims and Balloting Agent at the following address: ScripsAmerica's Claims Processing Center, c/o [address].  BALLOTS SENT BY FACSIMILE TRANSMISSION OR E-MAIL ARE NOT ALLOWED AND WILL NOT BE COUNTED.

Ballots must be submitted electronically, or the Claims and Balloting Agent must RECEIVE physically original ballots by mail or overnight delivery, on or before **INSERT**, **2017, at 4:00 p.m. (prevailing Pacific Time)** (the "**Voting Deadline**").  (Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, you may not change your vote once a ballot is submitted electronically or the Claims and Balloting agent receives your original paper ballot.)

Subject to the tabulation procedures approved by the Conditional Approval and Procedures Order, any ballot that is timely and properly submitted electronically or received physically will be counted and will be deemed to be cast as an acceptance, rejection or abstention, as the case may be, of the Plan.

### 10.    Acceptance of the Combined Disclosure Statement and Plan

As a Creditor, your acceptance of the Plan is important. In order for the Plan to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each impaired Class of Claims) must vote to accept the Plan.  At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept the Plan.  The Plan Proponent urges that you vote to accept the Plan.  **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY SUBMIT YOUR BALLOT.  PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

### 11.    Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not contain, as of the date of commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### ARTICLE VI:
### TREATMENT OF UNCLASSIFIED CLAIMS

**A.    Administrative Claims Bar Date**

Requests for payment of Administrative Claims (other than 503(b)(9) Claims, which are subject to the General Bar Date, Professional Claims and the Claims of Governmental Units arising under section 503(b)(1)(B), (C) or (D) of the Bankruptcy Code) must be filed no later than the Administrative Claims Bar Date.   Unless otherwise Ordered by the Court, Holders of Administrative Claims (other than the Holders of 503(b)(9) Claims, Professional Claims and the Claims of Governmental Units arising under section 503(b)(1)(B), (C) or (D) of the Bankruptcy Code) that do not file requests for the allowance and payment thereof on or before the Administrative Claims Bar Date shall forever be barred from asserting such Administrative Claims against the Debtor or its Estate.

**B.    Administrative Claims**

Except to the extent that any Entity entitled to payment of an Allowed Administrative Claim agrees to a different treatment, each Holder of an Allowed Administrative Claim shall receive Cash in an amount equal to such Allowed Administrative Claim on the Effective Date or seven (7) Business Days after the entry of a Final Order Allowing such Administrative Claim, or as soon thereafter as is practicable.  Such payments to Holders of Allowed Administrative Claims shall be paid by the Liquidating Trustee from the Liquidating Trust Funding Amount.

## C.    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim, if any, shall receive in full satisfaction of such Allowed Priority Tax Claim (a) payment in Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the Effective Date or within seven (7) Business Days after such Allowed Priority Tax Claim becomes an Allowed Claim, whichever is later, or as soon thereafter as is practicable; or (b) Cash in an amount agreed to by the Liquidating Trustee and such Holder.

## D.    Professional Claims

All requests for compensation or reimbursement of Professionals retained in this Chapter 11 Case for services performed and expenses incurred prior to the Effective Date shall be filed and served on (a) counsel to the Debtor, (i) Ciardi Ciardi & Astin, 1204 N. King Street, Wilmington, DE 19801, Attn: Daniel K. Astin; and (ii) Ciardi Ciardi & Astin, One Commerce Square, 2005 Market Street, Suite 3500, Philadelphia, PA 19103, Attn: Albert A. Ciardi III; and (b) the United States Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, DE 19801, Attn: Richard Schepacarter, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other Order of the Court, by no later than forty-five (45) days after the Effective Date, unless otherwise agreed by the Debtor.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Professionals may be employed and paid in the ordinary course of business without any further notice to, or action, Order, or approval of, the Court.

## E.    Intercompany Claims

All Intercompany Claims shall be disallowed pursuant to this Plan and shall be cancelled as of the Effective Date.

## F.    Payment of Statutory Fees

All fees due and payable pursuant to section 1930 of title 28 of the United States Code prior to the Effective Date shall be paid by the Debtor on the Effective Date.  After the Effective Date, the Liquidating Trustee shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee.  The Debtor shall remain obligated to pay quarterly fees to the United States Trustee until the earliest of the Debtor's case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE VII:
## CLASSIFICATION OF CLAIMS AND INTERESTS; ESTIMATED RECOVERIES

Equity Interests and Claims, other than Administrative Claims, Priority Tax Claims and Intercompany Claims, are classified for all purposes, including voting, confirmation and Distribution pursuant to the Plan, as follows:

| Class | Type | Status Under Plan | Voting Status |
|-------|------|-------------------|---------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Equity Interests and Intercompany Claims | Impaired | Deemed to Reject |

## ARTICLE VIII:
## TREATMENT OF CLAIMS AND INTERESTS

**A.    Treatment of Claims**

**1.    CLASS 1—SECURED CLAIMS**

(a)    Classification:  Class 1 consists of All Secured Claims.

(b)    Treatment:  Each Holder of an Allowed Class 1 Secured Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of its Allowed Class 1 Claim, at the option of the Liquidating Trustee, one of the four following forms of treatment:

(i)  an amount equal to the unpaid amount of such Allowed Secured Claim in Cash commencing on the later of (x) the Effective Date, (y) the date that is ten (10) Business Days after such Claim becomes an Allowed Class 1 Secured Claim by a Final Order; or

(ii)  the Liquidating Trustee shall abandon the Property that secures the Allowed Class 1 Claim to the Holder of such Claim on or as soon as practicable after the later of (i) the Effective Date and (ii) the date that is ten (10) Business Days after the date on which such Claim becomes an Allowed Class 1 Claim by a Final Order; or

(iii)  such other treatment as the Holder of the Allowed Class 1 Secured Claim and the Liquidating Trustee shall have agreed upon in writing; or

(iv)  such Holder shall retain its Lien securing its Allowed Class 1 Secured Claim to the extent of the Allowed Amount of its Secured Claim;

and on or as soon as practicable after the later of (x) the Effective Date and (y) the date that is ten (10) Business Days after such Claim becomes an Allowed Secured Claim by a Final Order:

> (A)  the Liquidating Trustee will cure any default other than a default of the kind specified in section 365(b)(2) of the Bankruptcy Code;

> (B)  the maturity of such Allowed Secured Claim shall be reinstated as the maturity existed before any default;

> (C)  the Holder of such Allowed Secured Claim shall be compensated for any damages which occurred as the result of any reasonable reliance by such Claimholder on any provision that entitled such Claimholder to accelerate the maturing of such Claim; and

> (D)  the other legal, equitable and contractual rights to which such Allowed Secured Claim entitles such Claimholder shall not otherwise be altered.

Any Deficiency Claim asserted by the holder of an Allowed Class 1 Claim shall be treated as a Class 7 General Unsecured Claim, to the extent Allowed.

(c)    Voting:  Class 1 is Unimpaired and Holder is conclusively deemed to have accepted the Plan.

**2.    CLASS 2—OTHER PRIORITY CLAIMS**

(a)    Classification: Class 2 consists of all other Priority Non-Tax Claims.

(b)    Treatment:  On the later of ten (10) days after the Effective Date or within seven (7) days of the Claim becoming Allowed, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, one of the following treatments, in the sole discretion of the Liquidating Trustee or the Distribution Agent, as the case may be:  (a) full payment in Cash of its Allowed Priority Non-Tax Claim or (b) treatment of its Allowed Priority Non-Tax Claim in a manner that leaves such Claim Unimpaired.

(c)    Voting:  Class 2 is Unimpaired and Holders of Other Priority Non-Tax Claims are conclusively deemed to have accepted the Plan.

**3.    CLASS 3—GENERAL UNSECURED CLAIMS**

(a)    Classification:  Class 3 consists of General Unsecured Claims.

(b)     Treatment:  Except to the extent that a Holder of an Allowed Class 3 Claim agrees to a less favorable treatment and in exchange for each Class 3 Claim, a Holder of an Allowed Class 3 Claim shall receive its Pro Rata Share of any remaining Liquidating Trust Assets after providing for the payment in full of all the Liquidating Trust expenses.

(c)     Voting:  Class 3 is impaired by the Combined Disclosure Statement and Plan.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

4.     **CLASS 4—EQUITY INTERESTS**

(a)     Classification:  Class 4 consists of the Equity Interests consist of all Equity Interests in the Debtor which after giving effect to substantive consolidation as provided in the Plan will include only the Equity Interests in ScripsAmerica, Inc.

(b)     Treatment:  Class 4 Equity Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.

(c)     Voting:  Class 4 is impaired by the Combined Disclosure Statement and Plan.  Class 4 shall be deemed to have voted to reject the Combined Disclosure Statement and Plan.

**B.     Modification of Treatment of Claims and Equity Interests**

The Liquidating Trustee reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the Holder of such Claim at any time after the Effective Date upon the consent of the Holder of the Claim whose Allowed Claim, as the case may be, is being adversely affected.

**C.     Cramdown and No Unfair Discrimination**

In the event that any impaired Class of Claims or Equity Interests rejects the Plan or is deemed to have rejected the Plan, the Plan Proponent hereby requests, without any delay in the occurrence of the Confirmation Hearing or Effective Date, that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief.

Confirming the Plan under such a circumstance is what is known as a "cramdown." Among other things, a "cramdown" is appropriate where the Bankruptcy Court finds that it does not unfairly discriminate against the objecting classes.  A plan unfairly discriminates against a class if another class of equal rank in priority will receive greater value under the plan than the nonaccepting class without reasonable justification.

**ARTICLE IX:**
**PROVISIONS REGARDING THE LIQUIDATING TRUSTEE**

**A.     Appointment of the Liquidating Trustee**

On the Effective Date, a Liquidating Trustee, who shall be selected by the Debtor no later than ten (10) business days prior to the Voting Deadline, shall be appointed and thereafter serve in accordance with this Combined Disclosure Statement and Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. No later than ten (10) business days prior to the Voting Deadline, the Debtor shall File and serve a notice identifying the person or entity selected as Liquidating Trustee on the parties entitled to vote on the Combined Disclosure Statement and Plan and parties that have requested notice pursuant to Bankruptcy Rule 2002 no later than seven (7) days prior to the Plan Voting Deadline. The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be effective on the Effective Date.

**B.**      **Sources of Consideration for Plan Distributions**

The Liquidating Trust Assets shall be used to fund the Distributions to Holders of Allowed Claims against the Debtor in accordance with the treatment of such Claims provided herein. The Liquidating Trust Funding Amount shall be indefeasibly paid to the Liquidating Trust on the Effective Date and shall be used to pay the fees of the Liquidating Trustee, the expenses of the Liquidating Trust and to fund distributions in accordance with the priority scheme under the Bankruptcy Code.

**C.**      **The Liquidating Trust**

On or prior to the Effective Date, the Debtor, on its own behalf and on its Estate's behalf and on behalf of the Holders of Claims and Equity Interests that are to be satisfied with post-Effective Date Distributions from the Liquidating Trust Assets, will execute the Liquidating Trust Agreement and will take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtor will transfer to the Liquidating Trust all of its rights, title, and interests in all of the Liquidating Trust Assets.

The ScripsAmerica Liquidating Trust shall be established solely for the purpose of holding and administering the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Accordingly, the Liquidating Trustee shall hold the Liquidating Trust Assets pursuant to the terms of this Plan and the Liquidating Trust Agreement by engaging in the following activities: (a) pursuing the Causes of Action retained by the Liquidating Trust; (b) making all required Distributions to the beneficiaries as provided for under the Liquidating Trust Agreement; and (c) taking other actions as may be necessary to effectuate any of the foregoing. The Liquidating Trust will not hold itself out as an investment company and will not conduct a trade or business. At no time shall the Liquidating Trust control or operate the business of the Debtor or any assets of the Debtor other than the Liquidating Trust Assets.

**D.**      **Termination of the Liquidating Trustee**

The Liquidating Trustee may not terminate the Liquidating Trust for any reason without approval by the Bankruptcy Court.

**E.      Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor-in-Interest**

The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a), with no objective to continue or engage in the conduct of a trade or business.  In the event the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the parties to the Liquidating Trust Agreement intend that the Liquidating Trustee take such action as it shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under Code Section 7704), including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company.

For all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (1) a transfer by the Debtor of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to the beneficiaries in full satisfaction of the beneficiaries' claims against the Debtor and, to the extent Liquidating Trust Assets are allocable to Disputed Claims, to the Distribution Reserve Account (as defined in the Liquidating Trust Agreement), followed by (2) the transfer by such beneficiaries to the Liquidating Trust of the Liquidating Trust Assets in exchange for such beneficiaries interest in the Liquidating Trust Assets.  Accordingly, the Liquidating Trust beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, provincial, territorial and local income tax purposes

The Liquidating Trustee shall file returns for the Liquidating Trust, except with respect to the Disputed Claims Reserve, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with the Plan.  The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to each holder in accordance with their relative beneficial interests in the Liquidating Trust.

As soon as possible after the Effective Date, the Liquidating Trustee shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes.  The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes.

The Liquidating Trustee shall file all income tax returns with respect to any income attributable to the Liquidating Trust Assets and shall pay any federal, state and local income taxes attributable to the Liquidating Trust Assets, based on the items of income, deduction, credit or loss allocable thereto.

The Liquidating Trustee may request an expedited determination of Taxes of the Debtor or of the Liquidating Trust, including the Distribution Reserve Account, under Bankruptcy Code

section 505(b) for all returns filed for, or on behalf of, the Debtor and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtor and the Liquidating Trust.  The Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trustee shall be subject to any such withholding and reporting requirements.

## F.    Responsibilities of Liquidating Trustee

The responsibilities of the Liquidating Trustee, which shall be discharged in accordance with the terms of the Plan and the Liquidating Trust Agreement, shall include, but shall not be limited to, the following:

(a)    Administering, liquidating, and monetizing the Liquidating Trust Assets;

(b)    Establishing a Bar Date and objecting to and resolving Disputed Claims;

(c)    Investigating, pursuing, litigating, settling, or abandoning any Causes of Action which constitute Liquidating Trust Assets;

(d)    Making Distributions in accordance with the terms of the Plan and the Liquidating Trust Agreement;

(e)    Preparing and filing post-Effective Date operating reports;

(f)    Filing appropriate tax returns in the exercise of its fiduciary obligations;

(g)    Retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations; and

(h)    Taking such actions as are necessary and reasonable to carry out the purposes of the Liquidating Trust.

To the extent necessary or appropriate, the Liquidating Trustee shall be deemed to be a judicial substitute for the Debtor as the party-in-interest in the Chapter 11 Case, under the Plan or in any judicial proceeding or appeal to which a Debtor is a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code and section 303 of Delaware General Corporation Law.

## G.    Cost and Expenses of the Liquidating Trust

To the extent the Liquidating Trust Funding Amount is insufficient to pay the expenses of the Liquidating Trust and the Liquidating Trustee, then such expenses shall be reimbursed from the first dollars out of any proceeds that come into the Liquidating Trust above the amount of the Liquidating Trust Funding Amount and before any Distribution to the beneficiaries of the Liquidating Trust; provided, however, the Liquidating Trust expenses shall be subject to the procedures and review set forth in the Liquidating Trust Agreement.

**H.      Bonding of Liquidating Trustee**

The Liquidating Trustee shall not be obligated to obtain a bond but may do so, in his, her, or its sole discretion, in which case the expense incurred by such bonding shall be paid by the Liquidating Trust.

**I.      Fiduciary Duties of the Liquidating Trustee**

Pursuant to the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall act in a fiduciary capacity on behalf of the interests of the beneficiaries of the Liquidating Trust.

**J.      Dissolution of the Liquidating Trust**

The Liquidating Trust shall continue for a term terminating on the earlier to occur of (a) all of the Liquidating Trust Assets have been distributed pursuant to this Plan and the Liquidating Trust Agreement, (b) the Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets or retained Causes of Action are not likely to yield sufficient additional proceeds to justify further pursuit, or (c) all distributions required to be made by the Liquidating Trustee under this Plan and the Liquidating Trust Agreement have been made; provided, however, in no event shall the Liquidating Trust be dissolved later than three (3) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.  If at any time the Liquidating Trustee determines, in reliance upon such Professionals as the Liquidating Trustee may retain and in consultation with the Liquidating Trustee, that the expense of administering the Liquidating Trust so as to make a final distribution to the beneficiaries is likely to exceed the value of the Liquidating Trust Assets remaining in the Liquidating Trust, the Liquidating Trustee may apply to the Bankruptcy Court for authority to (x) reserve any amount necessary to dissolve the Liquidating Trust, (y) donate any balance to a charitable organization described in section 501(c)(3) of the Code; provided that the Liquidating Trustee, members of the Liquidating Trustee and/or any Debtor may not have any ties or connections to such charitable organization, and (z) dissolve the Liquidating Trust.  Notwithstanding the foregoing, after the termination of the Liquidating Trust, the Liquidating Trustee shall have the power to exercise all the powers, authorities and discretions herein conferred solely for the purpose of winding up the affairs of the Liquidating Trust.  The Liquidating Trustee shall retain the books, records and files that shall have been delivered to or created by the Liquidating Trustee.  At the Liquidating Trustee's discretion, all of such records and documents may be destroyed at any time after two (2) years from the date of termination of the Liquidating Trust.

**K.      Liability, Indemnification of the Liquidating Trust Protected Parties**

The Liquidating Trust Protected Parties shall not be liable for any act or omission of any other Liquidating Trust Protected Parties or the member, designee, agent, or representative of such Liquidating Trust Protected Parties, nor shall such Liquidating Trust Protected Parties be liable for any act or omission taken or not taken in their capacity as Liquidating Trust Parties other than for

specific acts or omissions resulting from such Liquidating Trust Protected Parties' willful misconduct, gross negligence or fraud.  The Liquidating Trustee may, in connection with the performance of his, her, or its functions, and in his, her, or its sole and absolute discretion, consult with his, her, or its attorneys, accountants, financial advisors, and agents.  Notwithstanding such authority, the Liquidating Trustee shall not be under any obligation to consult with his, her, or its attorneys, accountants, financial advisors, and agents, and his, her, or its determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or the Liquidating Trust Protected Parties, unless such determination is based on willful misconduct, gross negligence or fraud.  The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Protected Parties from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses (including, without limitation, reasonable attorney's fees, disbursements, and related expenses), which such Liquidating Trust Protected Parties may incur or to which such Liquidating Trust Protected Parties may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Liquidating Trust Protected Parties arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties hereunder; provided, however, that such indemnification shall be limited to the Liquidating Trust Assets and provided further that no such indemnification will be made to such Liquidating Trust Protected Parties for actions or omissions as a result of their willful misconduct, gross negligence, or fraud.

**L.      Full and Final Satisfaction Against Liquidating Trust**

On and after the Effective Date, the Liquidating Trust shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Liquidating Trust Agreement.  All payments and all Distributions made by the Liquidating Trustee under the Plan shall be in exchange for all Claims or Equity Interests against the Liquidating Trust.

**ARTICLE X:**
**PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN**

**A.      Calculation of Amounts to be Distributed**

Each Holder of an Allowed Claim against the Debtor shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtor or the Liquidating Trustee, on behalf of the Debtor or the Liquidating Trust, as applicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due.  If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Article XI.  Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

**B.      Delivery of Distributions and Undeliverable or Unclaimed Distributions**

1. **Record Date for Distribution**

On the Distribution Record Date, the Claims Register shall be closed and the Debtor or the Liquidating Trustee or any other party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2. **Delivery of Distributions in General**

(a)    Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall, in the Liquidating Trustee's reasonable discretion, be deemed to have been made by the Liquidating Trustee on the Effective Date, unless the Liquidating Trustee and the applicable Holder of such Claim agree otherwise.

(b)    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtor or the Liquidating Trustee, as applicable, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

(c)    Distributions

On and after the Effective Date, the Liquidating Trustee shall make the Distributions required to be made on account of Allowed Claims under the Plan on such date. Any Distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the Liquidating Trustee in the Distribution Reserve Account and distributed on the next Distribution Date that occurs after such Claim Allowed in accordance with this Plan and the Liquidating Trust Agreement. In accordance with the Plan, no interest shall accrue or be paid on the unpaid amount of any Distribution paid pursuant to the Plan.

3. **Minimum; De Minimis Distributions**

Notwithstanding any other provision of the Plan to the contrary (including the treatment of any Claims or Classes), (a) the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down, and (b) the Liquidating Trustee shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $5,000, in which case such Distributions shall be deferred to the next Distribution date, (ii) if the amount to be distributed to that Holder on the particular Distribution date is less than $25.00,

unless such Distribution constitutes the final Distribution to such Holder, or (iii) the amount of the final Distribution to any such Holder is less than $25.00, in which case such Distribution shall revert to the Liquidating Trust for distribution on account of other Allowed Claims.

4.    **Undeliverable Distributions and Unclaimed Property**

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Debtor or the Liquidating Trustee, as applicable, has determined then current address of such Holder, at which time such Distribution shall be made to such Holder without interest; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of four (4) months from the date the initial Distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be settled, compromised, and forever barred.

5.    **Charitable Contributions**

After the final Distributions have been made in accordance with the terms of the Plan and the Liquidating Trust Agreement, if the amount of remaining Cash is less than $5,000, the Liquidating Trustee may donate such amount to one or more charities or philanthropic endeavors as chosen by the Liquidating Trustee; provided that such philanthropic endeavors shall be non-profit, and provided further that such charities or philanthropic endeavors shall not have any connection to the Liquidating Trustee or the Debtor.

6.    **Manner of Payment Pursuant to the Plan**

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtor or the Liquidating Trustee, as applicable, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Liquidating Trustee. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Debtor or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to this Plan in the form of checks issued by the Liquidating Trustee shall be null and void if not cashed within 120 days of the date of the issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee.

C.    **Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Debtor, or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by

any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtor and the Liquidating Trustee are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan and Liquidating Trust Agreement shall be subject to any such withholding and reporting requirements. Each Creditor is required to provide the Liquidating Trustee with an executed Form W-9 or similar tax form as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim does not provide the Liquidating Trustee with an executed Form W-9 or similar form within 90 days of written request, said Creditor shall be deemed to have forfeited their Distribution.

**D.    Claims Paid or Payable to Third Parties**

**1.    Claims Paid by Third Parties; Recourse to Collateral**

The Debtor or the Liquidating Trustee, as applicable, shall be authorized to reduce in whole or in part a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or, as applicable, the Liquidating Trust, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment, in whole or in part, from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

**2.    Claims Payable by Insurance, Third Parties; Recourse to Collateral**

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or  more of the Debtor's insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable

portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing, this Section 8.05(b) does not apply with regard to the Lender Secured Claim.

### 3. Applicability of Insurance Policies

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and consummation of the Plan shall not limit or affect the rights of any third-party beneficiary of the Debtor's insurance policies with respect to such policies, including the D&O Policy, and the rights of the Debtor under any such insurance policies shall vest in Liquidating Trustee as of the Effective Date.

## ARTICLE XI:
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS AND EQUITY INTERESTS

### A. Resolution of Disputed Claims

### 1. Allowance of Claims and Equity Interests

Prior to the Effective Date, the Debtor, and on and after the Effective Date, the Liquidating Trustee, shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

### 2. Prosecution of Objections to Claims or Equity Interests

Subject in all respects the provisions hereof, other than with respect to Professional Fee Claims, prior to the Effective Date, the Debtor, and on or after the Effective Date, the Liquidating Trustee shall have the authority to File objections to Claims or Equity Interests, and the exclusive authority to settle, compromise, withdraw, prosecute, defend or litigate to judgment objections on behalf of the Debtor's Estate to any and all Claims or Equity Interests, regardless of whether such Claims or Equity Interests are in a Class or otherwise. For the avoidance of doubt the U.S. Trustee's right to object to Claims, including Professional Fee Claims and Claims asserted under section 504(b)(3) and (b)(4) is reserved.

Subject to the foregoing sentence, from and after the Effective Date, the Liquidating Trustee (a) may settle or compromise any Disputed Claim in accordance with the Liquidating Trust Agreement and (b) shall succeed to the Debtor's rights with respect to any objections Filed by the Debtor that remain pending as of the Effective Date.  From and after the Effective Date, the Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

### 3.    Claims Estimation

On and after the Effective Date, the Liquidating Trustee, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.

In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of Distributions, and the Debtor or the Liquidating Trustee, as applicable, may elect to pursue additional objections to the ultimate Distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Liquidating Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one (21) days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 4.    Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by, as applicable, the Debtor or the Liquidating Trustee (or the Notice and Distribution Agent at, as applicable, the Debtor's or the Liquidating Trustee's direction), and any Claim that has been amended may be adjusted thereon by, as applicable, the Debtor or the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**B.**      **Distribution Reserve Account**

Distributions of Liquidating Trust Assets with respect to Disputed Claims shall be deposited into the Distribution Reserve Account in accordance with the terms of this Plan and the Liquidating Trust Agreement.  The amount deposited shall be determined by the Liquidating Trustee.  The Liquidating Trustee may invest any Cash that is withheld in the Distribution Reserve Account in accordance the Liquidating Trust Agreement.  Notwithstanding any such investment and the addition to Liquidating Trust Assets of any income earned in respect thereof, in the event such Claim ultimately becomes an Allowed Claim, nothing in this Plan or Liquidating Trust Agreement shall be deemed to entitle the holder of a Disputed Claim to postpetition or post-Effective Date interest on such Claim.

**C.**      **Distributions After Allowance**

On the next Distribution Date after the date when the order or judgment of the Bankruptcy Court allowing all or part of a Disputed Claim becomes a Final Order, the Liquidating Trustee, or such other disbursing agent, will (1) distribute to the holder of such Claim any property in the Distribution Reserve Account that would have been distributed to such beneficiary on the Distribution Dates on which distributions previously were made to beneficiaries if the Claim in issue had been an Allowed Claim (in whole or in part, as applicable) on such earlier Distribution Dates; and (2) distribute any remaining property held in the Distribution Reserve Account on account of any resolved Disputed Claim in accordance with this Plan and the Trust Agreement.

After a Final Order has been entered, or other final resolution has been reached with respect to all Disputed Claims, any remaining property held in the Distribution Reserve Account will be distributed in accordance with this Plan and the Trust Agreement.

**D.**      **Disallowance of Claims**

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by, as applicable, the Debtor or the Liquidating Trustee (or the Notice and Distribution Agent at, as applicable, the Debtor's or the Liquidating Trustee's direction), and any Claim that has been amended may be adjusted thereon by, as applicable, the Debtor or the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**E.**      **Amendments**

After the Administrative Claims Bar Date and the Bar Date, as applicable, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided that, even with such Bankruptcy Court authorization, a Claim may be amended by the Holder of such Claim solely to decrease, but

not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority.

## F.      No Interest

Unless otherwise specifically provided for in the Plan, by applicable law, or agreed-to by, as applicable, the Debtor or the Liquidating Trustee, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim. Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date to the extent the final Distribution paid on account of such Claim occurs after the Effective Date.  Notwithstanding the foregoing, if Holders of Allowed General Unsecured Claims receive a distribution of 100%, they shall be paid interest from the Petition Date until the date their Allowed General Unsecured Claims are paid in full at the federal judgment interest rate that was in effect on the Petition Date, which interest rate is 0.15 percent (0.15%).

**ARTICLE XII:**
**IMPLEMENTATION AND EFFECT OF CONFIRMATION**
**OF PLAN**

## A.      Vesting of Assets and Dissolution

On the Effective Date, without the need for any further Order of the Bankruptcy Court, Action or formality, the Debtor shall assign and the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Equity Interests, Liens, charges or other encumbrances, except as set forth in this Plan.  On or after the Effective Date, the Liquidating Trustee shall have the authority to file objections to any claims or equity interests not previously settled, and the exclusive authority to settle, compromise, withdraw, prosecute, defend or litigate all Remaining Actions.  The rights of the Debtor, if any, on the Effective Date under any insurance policies (including, but not limited to, all insurance policies for directors, members, trustees, and officers liability maintained or held by the Debtor at any time on or prior to the Effective Date) and the proceeds thereof (whether obtained or marshalled prior to the Effective Date) shall vest in Liquidating Trustee as of the Effective Date.  On and after the Effective Date, the Liquidating Trustee shall pursue any Remaining Actions in his or her sole discretion without consultation or interference from the Debtor.  The Liquidating Trustee shall be a successor-in-interest to the Debtor in respect of the foregoing remaining Actions, assignments and authority, and in connection therewith shall be the holder of the Debtor's attorney-client privilege.  The Liquidating Trustee shall neither have any authority or standing to seek to reverse, overturn or challenge any settlements on insurance policies, litigation and claims entered into by the Debtor and approved by the Bankruptcy Court prior to the Effective Date.  The Debtor shall transfer any and all documents, information and communications maintained by the Debtor in any way relating to all possible Remaining Actions, and no documents, information or communications shall be withheld based upon any attorney-client, work product, or common-interest privilege claim.

## B.      Directors/Officers/Equity Interests/Professionals of the Debtor on the Effective Date

On the Effective Date, the authority, power and incumbency of the Persons then acting as directors and officers of the Debtor shall be terminated and such directors and officers shall be deemed to have resigned.  On the Effective Date, all the Equity Interests in the Debtor (including all instruments evidencing such Equity Interests) shall be canceled and extinguished without further action under any applicable agreement, law, regulation or rule.

**C.      Operations of the Debtor Between the Confirmation Date and the Effective Date**

During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to remain in possession of its assets, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

**D.      Term of Injunctions or Stays**

Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Case and in existence on the Confirmation Date shall become permanent and shall remain in full force and effect from and after the Effective Date to the greatest extent allowed by the Bankruptcy Code or otherwise.

**E.      Corporate Action**

The entry of the Confirmation Order shall constitute the approval of the authorization for the Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and any documents contemplated to be executed therewith, prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order rule or regulation.

On and after the Effective Date, the Debtor:  (i) shall be deemed to have withdrawn its business operations from any state in which it was previously conducting, or is registered or licensed to conduct its business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such withdrawal, and (ii) shall not be liable in any manner to any taxing or other authority for franchise, business, license or similar taxes, and (iii) shall, without taking any further action or paying any sum, be de-listed from any stock exchange and shall no longer be required to file any S.E.C. or other regulatory agency reports, comply with any reporting or financial obligations, or take any other action required of a "public" company.

**F.      Cancellation of Existing Agreements and Existing Common Stock**

On the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates, and other documents evidencing any Claims or Equity Interests shall be canceled, shall be of no further force, whether surrendered for cancellation or otherwise.

**G.      Authorization of Plan-Related Documentation**

All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan, including, but not limited to, the Plan Supplement documents and any other agreement or document related to or entered into in connection with the Plan or Plan Supplement documents, shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).

A responsible officer or director of the Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

From and after the Effective Date, the Distribution Agent may, in the name of the Debtor and its Estate, take such actions as may be necessary or appropriate to accomplish the purposes of the Plan, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, except as provided in the Plan or the Confirmation Order.

From and after the Effective Date, the Liquidating Trustee may take such actions as may be necessary or appropriate to accomplish the purposes of the Liquidating Trust without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as provided otherwise in the Plan, the Confirmation Order or the Liquidating Trust Agreement.

## H.      Exemption from Certain Fees and Taxes

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

## I.      Closing of the Bankruptcy Case

Upon the conclusion of the administration of the Liquidating Trust, the Liquidating Trustee shall file a motion, after notice and an opportunity for hearing, seeking entry of an Order closing the Bankruptcy Case of the Debtor pursuant to Local Bankruptcy Rule 3022-1. The Liquidating Trustee shall file a final report no later than fourteen days prior to the hearing to consider the motion to close the Bankruptcy Case of the Debtor.

**J.      Termination of the Liquidating Trustee**

After the Chapter 11 Case is closed and the Liquidating Trustee has completed all of the tasks necessary in order to fully and completely wind down, dissolve and/or terminate the Debtor and to otherwise comply with its obligations under the terms of the Plan, the Liquidating Trustee shall have fully completed its duties under the Plan and thereby shall be fully released and discharged of its duties and obligations to carry out the terms of the Plan.

**K.      Compromise of Controversies**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan and in this Chapter 11 Case. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan and the Chapter 11 Case, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate and all Holders of Claims and Equity Interests against the Debtor.

**ARTICLE XIII:**
**EXCULPATION AND INJUNCTION**

**A.      Exculpation**

**The Debtor and any of the Debtor's current and/or post-Petition Date and pre-Effective Date Related Parties, shall not have or incur any liability to any Holder of any Claim or Equity Interest, or any other party-in-interest, or any of their respective Related Parties, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Case, the negotiation and Filing of this Plan, the Filing of the Chapter 11 Case, the settlement of Claims or renegotiation of Executory Contracts and leases, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be Distributed under this Plan, except for their willful misconduct or gross negligence or any obligations that they have under or in connection with this Plan or the transactions contemplated in this Plan, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.**

**B.      Injunctions to Protect Estate Assets**

**Except as expressly otherwise provided in the Combined Plan and Disclosure Statement, or to the extent necessary to enforce the terms and conditions of the Combined Plan and Disclosure Statement, the Confirmation Order or a separate Order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against or Equity Interests in the Debtor shall be permanently enjoined from taking any of the following actions against the Debtor, the Debtor's Estate, the Post-Effective Date Debtor and/or the Debtor's successors or any of their property on account of any such Claims or Equity Interests: (i) commencing or continuing, in any manner or in any place, any action, Cause of Action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner**

**any judgment, award, decree or Order; (iii) creating, perfecting, or enforcing any Lien; (iv) asserting a setoff (except to the extent such setoff was exercised prior to the Petition Date), right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (v) commencing or continuing, in any manner or in any place, any action, Cause of Action or other proceeding that does not comply with or is inconsistent with the provisions of the Combined Plan and Disclosure Statement.**

## ARTICLE XIV:
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.    Rejection of Executory Contracts and Unexpired Leases**

Except as otherwise provided in the Confirmation Order, the Plan, or any other Plan Document, the Confirmation Order shall constitute an order under section 365 of the Bankruptcy Code rejecting all prepetition executory contracts and unexpired leases to which the Debtor is a party, to the extent that such contracts or leases are executory contracts or unexpired leases, on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtor, (b) previously shall have expired or terminated pursuant to its own terms before the Petition Date or (c) is the subject of a pending motion to assume or reject on the Confirmation Date.

**B.    Rejection Damages Claims**

Proofs of all Claims arising out of the rejection of an executory contract or an unexpired lease pursuant to the Plan shall be filed with the Distribution Agent and served upon the Liquidating Trustee in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules by no later than twenty-one (21) days after notice of the entry of the Confirmation Order.  Any Proofs of Claim not Filed and served within such time periods will be forever barred from assertion against the Debtor and its Estate.  Unless otherwise Ordered by the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be treated as General Unsecured Claims under the Plan.

**C.    Restructuring Transaction; Designated Contracts**

The Debtor's rejection of any Executory Contract or Unexpired Lease pursuant to the Plan shall be subject in all respects to the Purchaser's rights and obligations, including any Cure obligations assumed by the Purchaser in accordance with the Restructuring Transaction, with respect to any such Executory Contracts or Unexpired Leases.

**D.    Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected**

If the rejection by the Debtor of an Executory Contract or unexpired lease pursuant to the Plan gives rise to a Claim, a proof claim must be filed with the Bankruptcy Court by no later than twenty (21) days after notice of entry of the Confirmation Order.  Any proofs of Claim not filed and served within such time periods will be forever barred from assertion against the Debtor and its Estate.  Unless otherwise Ordered by the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts and unexpired leases shall be treated as General Unsecured Claims under

the Plan.  For the avoidance of doubt, any Claims arising from the rejection of an Executory Contract or unexpired lease pursuant to a separate motion are subject to the Rejection Bar Date.

**ARTICLE XV:**
**<u>CONDITIONS TO THE EFFECTIVE DATE</u>**

**A.      Conditions Precedent to the Effective Date**

The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived:

> a.      The Confirmation Order shall have become a Final Order, and shall be acceptable to the Debtor.

> b.      The Liquidating Trustee shall be duly appointed, qualified and acting in that capacity.

**B.      Establishing the Effective Date**

The calendar date to serve as the Effective Date shall be a Business Day of, on or promptly following the satisfaction or waiver of all conditions to the Effective Date, which date will be selected by the Debtor. On or within two (2) Business Days of the Effective Date, the Debtor shall file and serve a notice of occurrence of the Effective Date. Such notice shall contain, among other things, the Administrative Claims Bar Date, the deadline by which Professionals must file and serve any Professional Claims and the deadline to file a proof claim relating to damages from the rejection of any Executory Contract or unexpired lease pursuant to the terms of the Plan.

**C.      Effect of Failure of Conditions**

If each condition to the Effective Date has not been satisfied or duly waived within forty-five (45) days after the Confirmation Date, then upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court; <u>provided, however,</u> that notwithstanding the filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Plan Proponent before any Order granting such relief becomes a Final Order.  If the Confirmation Order is vacated pursuant to this section, the Plan shall be deemed null and void in all respects and nothing contained herein shall (A) constitute a waiver or release of any Claims by or against the Debtor, or (B) prejudice in any manner the rights of the Debtor.

**D.      Waiver of Conditions to Confirmation and Effective Date**

Each of the conditions to the Effective Date may be waived, in whole or in part, in writing by the Plan Proponent, without notice or an Order of the Bankruptcy Court.

**ARTICLE XVI:**
**<u>RETENTION OF JURISDICTION</u>**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, following the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the interests and purposes of the Plan are carried out.  The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

        a.        To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

        b.        To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

        c.        To issue such Orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

        d.        To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

        e.        To hear and determine all requests for compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code;

        f.        To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Combined Disclosure Statement and Plan or the Liquidating Trust or Liquidating Trust Agreement;

        g.        To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Liquidating Trustee for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

        h.        To hear any other matter not inconsistent with the Bankruptcy Code;

        i.        To enter a final decree closing the Chapter 11 Case;

        j.        To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and the Liquidating Trust;

        k.        To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or the Liquidating Trust on or after the Effective Date;

        l.        To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity

with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

m.       To determine any other matters that may arise in connection with or related to the Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Plan;

n.       To hear any disputes and determine any other matters that may arise in connection with or related to the Sale Order or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Sale Order;

o.       To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Case (whether or not the Chapter 11 Case has been closed);

p.       To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

q.       To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the General Bar Date, the Governmental Unit Bar Date, the Rejection Bar Date, the Administrative Claims Bar Date, and/or the conditional or final hearing on the approval of the Plan for the purpose of determining whether a Claim, or Equity Interest is discharged and/or enjoined hereunder or for any other purpose; and

r.       To resolve any other matter or for any purpose specified in the Plan, the Confirmation Order, or any other document entered into in connection with any of the foregoing.

## ARTICLE XVII: MISCELLANEOUS PROVISIONS

### A.       Books and Records

On the Effective Date, the Debtor's books and records (the "**Books and Records**") shall be transferred to the Liquidating Trustee.  The Liquidating Trustee shall be free, in its discretion to abandon, destroy, or otherwise dispose of the Books and Records in compliance with applicable non-bankruptcy law at any time on and after the Effective Date, without the need for any other or further Order.

### B.       Termination of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect.

### C.       Amendment or Modification of the Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Plan Proponent, at any time before the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.

## D.    Severability

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Equity Interest as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidability or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

## E.    Revocation or Withdrawal of the Plan

The Plan Proponent reserves the right to revoke or withdraw the Plan before the Confirmation Date.  If the Plan Proponent revokes or withdraws the Plan before the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or Liquidating Trustee or to prejudice in any manner the rights of either of the Debtor or Liquidating Trustee in any further proceedings involving the Debtor.

## F.    Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtor, the Holders of Claims, and the Holders of Equity Interests, and their respective successors and assigns.

## G.    Notices

Any notice, request, or demand required or permitted to be made or provided under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

in the case of the Debtor, to:

Daniel K. Astin
John D. McLaughlin, Jr.
Joseph J. McMahon, Jr.
Ciardi Ciardi & Astin
1204 N. King Street
Wilmington, DE  19801

-and-

Albert A. Ciardi III
Nicole M. Nigrelli
Daniel Siedman
Ciardi Ciardi & Astin
One Commerce Square
2005 Market Street, Suite 3500
Philadelphia, PA  19103

## H.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

## I.    Governing Law

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

## J.    Exhibits

All exhibits are incorporated into and are a part of this Plan as if set forth in full herein. Holders of Claims or Equity Interests may also obtain a copy of any exhibit upon written request to the Debtor in accordance with the Plan.  To the extent any exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit portion of the Plan shall control.

## K.    Conflicts

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or any exhibits, schedules, appendices, supplements or amendments to the foregoing conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.  To the extent of any inconsistency between the Plan and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

## L.    Exemption

Under section 1145 of the Bankruptcy Code, the issuance of the beneficial interests in Liquidating Trust under the Combined Disclosure Statement and Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.  If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply

with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

## M.    Withholding and Reporting Requirements

In connection with the consummation of the Plan, the Debtor and Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.  Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution. The Debtor and the Liquidating Trustee have the right, but not the obligation, to not make a Distribution until such Holder has made arrangements satisfactory to any disbursing party for payment of any such tax obligations.  The Debtor or Liquidating Trustee may require, as a condition to receipt of a Distribution, that the Holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable to each such Holder.  If the Debtor or Liquidating Trustee make such a request and the Holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the Debtor and any Claim in respect of such Distribution shall be disallowed and forever barred from assertion against the Debtor or its property.

## N.    Headings

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

## O.    Exhibits/Schedules

All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

## P.    Filing of Additional Documents

On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## Q.    No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any Entity with respect to any matter set forth herein.

## R.    Successors and Assigns

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

**S.      Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor, Holders of Claims or Equity Interest before the Effective Date.

**T.      Implementation**

The Debtor shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Plan.

**U.      Inconsistency**

In the event of any inconsistency among the Plan and any other instrument or document created or executed pursuant to the Plan, the provisions of the Combined Disclosure Statement and Plan shall govern.

**[Remainder of Page Intentionally Left Blank]**

NOTE:  DOCUMENT HAS NOT BEEN APPROVED BY BANKRUPTCY COURT;
DOCUMENT SUBJECT TO BANKRUPTCY COURT APPROVAL

## ARTICLE XVIII:
## <u>RECOMMENDATION</u>

For all of the reasons set forth in this Plan, the Debtor believes that Confirmation and consummation of the Plan are preferable to all other alternative restructuring options. Consequently, the Debtor urges all Holders of Claims in voting classes to vote to ACCEPT the Plan, and to complete and return their ballots so that they will be RECEIVED by the Voting Agent on or before 5:00 p.m. (prevailing Eastern Time) on the Voting Deadline.

Dated: January 16, 2017

**SCRIPSAMERICA, INC.**

By:      <u>*/s/ Brian Ettinger*</u>

Name:   Brian Ettinger

Title:    Chief Executive Officer