# **<u>EXHIBIT A</u>**

*Execution Copy*

# STOCK PURCHASE AGREEMENT

### by and between

### CHARLES A. STANZIALE, JR., in his capacity as Chapter 7 Trustee of SCRIPSAMERICA, INC.

### and

### AEM MEDICAL GROUP, LLC,
### A Texas Limited Liability Corporation

### March 8, 2017



TABLE OF CONTENTS

Background ................................................................................................................. 1

Agreement ................................................................................................................. 1

1.    Defined Terms.................................................................................................. 1

2.    The Transaction................................................................................................ 3

      2.1.    Sale and Purchase of Acquired Assets and Obligations ......................... 3

      2.2.    Consent of Third Parties ........................................................................ 4

3.    Purchase Price................................................................................................... 4

4.    Disclaimer of Representations and Warranties................................................. 4

5.    Representations and Warranties of Buyer........................................................ 4

      5.1.    Organization............................................................................................ 4

      5.2.    Authorization; Compliance with Other Instruments and Laws;
              and Effect of Agreement and Other Transaction Documents ................... 5

      5.3.    Brokers and Finders ................................................................................ 5

6.    Covenants and Agreements.............................................................................. 5

      6.1.    Transition and Cooperation..................................................................... 5

      6.2.    Further Assurances.................................................................................. 5

      6.3.    Taxes ....................................................................................................... 6

7.    Bankruptcy Process for Obtaining Approval of the Sale ................................. 6

      7.1.    Bankruptcy Court Order Approving Sale ................................................ 6

      7.2.    Bid Procedures ........................................................................................ 6

8.    Closing .............................................................................................................. 6

      8.1.    Closing .................................................................................................... 6

      8.2.    Closing Deliverables of Seller ................................................................ 6

      8.3.    Closing Deliverables of Buyer ................................................................ 7

9.      Termination ........................................................................................................ 7

    9.1.    On/Prior to Closing .............................................................................. 7

    9.2.    Effect of Termination; Remedies ......................................................... 8

10.    Miscellaneous .................................................................................................. 8

    10.1.   Fees and Expenses ............................................................................... 8

    10.2.   Notices ................................................................................................. 8

    10.3.   Entire Understanding ........................................................................... 9

    10.4.   Assignment .......................................................................................... 9

    10.5.   Waivers ................................................................................................ 9

    10.6.   Severability ......................................................................................... 9

    10.7.   Counterparts ...................................................................................... 10

    10.8.   Section Headings ............................................................................... 10

    10.9.   References .......................................................................................... 10

    10.10. Controlling Law ................................................................................ 10

    10.11. Jurisdiction and Process .................................................................... 10

    10.12. Waiver of Jury Trial .......................................................................... 10

    10.13. Third-Party Beneficiaries .................................................................. 10

    10.14. Delivery by Facsimile or Electronic Means ...................................... 10

    10.15. Interpretation of Agreement .............................................................. 11



## STOCK PURCHASE AGREEMENT

This STOCK PURCHASE AGREEMENT (the "Agreement"), dated as of this 8th day of March, 2017 ("Effective Date"), is made by and between Charles A. Stanziale, Jr., in his capacity as Chapter 7 Trustee of ScripsAmerica, Inc., a Delaware corporation, (the "Seller"), and AEM Medical Group, LLC, a Texas Limited Liability Corporation (the "Buyer"). Each of Buyer and Seller is referred to herein individually as a "Party" and collectively as the "Parties."

### Background

Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, the Acquired Assets (as defined below) and Obligations (as defined below) of Seller, on the terms and subject to the conditions set forth in this Agreement on an "as is, where is" basis. Seller makes no representations or warranties whatsoever with respect to the Acquired Assets and Obligations.

### Agreement

Intending to be legally bound, incorporating the foregoing, in consideration of the mutual covenants and agreements contained herein and subject to the satisfaction of the terms and conditions set forth herein, the Parties hereby agree as follows:

1.    Defined Terms.

Certain defined terms used in this Agreement and not specifically defined in context are defined in this Section 1 as follows:

1.1.    "Acquired Assets" means all of the Trustee's right, title and interest in his ninety percent (90%) equity interest(s)/membership interest(s) in P.I.M.D. International, LLC, a Florida limited liability company.

1.2.    "Agreement" has the meaning specified in the Preamble.

1.3.    "Bankruptcy Code" means 11 U.S.C. sections 101 et seq.

1.4.    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware where the Chapter 7 case of Seller is pending, Case No. 13-12399 (BLS).

1.5.    "Business Day" means any day, excluding Saturday, Sunday and any other day on which commercial banks in Wilmington, Delaware, are authorized or required by Law to close.

1.6.    "Buyer" has the meaning specified in the Preamble.

1.7.    "Closing" has the meaning specified in Section 8.1.

1.8.    "Consent" means any consent, approval, order or authorization of, or any declaration, filing or registration with, or any application, notice or report to, or any waiver by, or any other action (whether similar or dissimilar to any of the foregoing) of, by or with, any Person which is necessary in order to take a specified action or actions in a specified manner and/or to achieve a specified result.

1



1.9.    "Contract" means any contract, agreement, instrument, order, arrangement, commitment or understanding of any nature including sales orders, purchase orders, real property, leases, subleases, data processing agreements, maintenance agreements, license agreements, sublicense agreements, loan agreements, promissory notes, security agreements, pledge agreements, deeds, mortgages, guaranties, indemnities, warranties, employment agreements, consulting agreements, sales representative agreements, joint venture agreements, buy-sell agreements, options or warrants.

1.10.    "Default" means (a) a breach, default or violation, (b) the occurrence of an event that with or without the passage of time or the giving of notice, or both, would constitute a breach, default or violation or cause an Encumbrance to arise, or (c) with respect to any Contract, the occurrence of an event that with or without the passage of time or the giving of notice, or both, would give rise to a right of termination, cancellation, amendment, modification, renegotiation or acceleration or a right to receive damages or a payment of penalties or the loss of any benefit or right of indemnification.

1.11.    "Effective Date" has the meaning specified in the first paragraph of the Agreement.

1.12.    "Encumbrance" means any interest, consensual or otherwise, in property securing a monetary obligation owed to, or a claim by, a Person other than the owners of the subject property, whether such interest is based on the common law, statute or Contract, or any lien, security interest, pledge, right of first refusal, mortgage, easement, covenant, restriction, reservation, conditional sale, prior assignment, or other encumbrance, claim, burden or charge of any nature.

1.13.    "Entity" means any corporation (including any non-profit corporation), general partnership, limited partnership, limited liability partnership, joint venture, estate, trust, company (including any company limited by shares, limited liability company or joint stock company), firm, society or other enterprise, association, organization or entity.

1.14.    "Excluded Assets" has the meaning specified in Section 2.1(c).

1.15.    "Governmental Body" means any: (a) nation, principality, republic, state, commonwealth, province, territory, county, municipality, district or other jurisdiction of any nature; (b) federal, state, local, municipal, foreign or other government; (c) governmental or quasi-governmental authority of any nature (including any governmental division, subdivision, department, agency, bureau, branch, office, commission, council, board, instrumentality, officer, official, representative, organization, unit, body or Entity and any court or other tribunal); (d) multi-national organization or body; or (e) individual, Entity or body exercising, or entitled to exercise, any executive, legislative, judicial, administrative, regulatory, police, military or taxing authority or power of any nature.

1.16.    "Judgment" means any order, writ, injunction, citation, award, decree or other judgment of any nature of any Governmental Body or other individual Person and/or Entity.

1.17.    "Law" means any provision of any foreign, federal, state or local law, statute, ordinance, charter, constitution, treaty, code, rule, regulation or guideline.

2



1.18.  "Obligation" means any debt, liability, account payable, Judgment, tax or obligation of any nature, whether secured, unsecured, recourse, nonrecourse, liquidated, unliquidated, accrued, absolute, fixed, contingent, ascertained, unascertained, known, unknown or otherwise, including but not limited to any obligations or responsibilities of P.I.M.D. International, LLC pursuant to the Commercial Lease Agreement by and between Jack L. and Nancy S. Forehand, as Landord, and P.I.M.D. International, LLC, as Tenant.

1.19.  "Party(ies)" has the meaning specified in first paragraph of the Agreement.

1.20.  "Person" means any individual, Entity or Governmental Body.

1.21.  "Proceeding" means any demand, claim, suit, action, litigation, audit, investigation, arbitration, administrative hearing or other proceeding of any nature.

1.22.  "Sale Order" means a final and non-appealable order by the Bankruptcy Court that (a) approves the sale of all of all or substantially all the Acquired Assets and Obligations to Buyer.

1.23.  "Seller" has the meaning specified in the Preamble.

1.24.  "Transaction Documents" means this Agreement and all other documents executed in connection herewith or therewith, including all Exhibits and Schedules hereto and thereto.

2.    The Transaction.

2.1.  Sale and Purchase of Acquired Assets and Obligations.

(a)    Pursuant to a Sale Order, and subject to the terms and conditions of this Agreement, upon execution of this Agreement, Seller shall sell, transfer, assign and convey to Buyer, and Buyer shall assume and purchase, the Acquired Assets and Obligations.

(b)    Transfer and Preparation Costs.  In accordance with Section 6.1, Buyer shall be responsible for costs associated with the preparation and transfer of the Acquired Assets and Obligations.  Seller and Buyer shall cooperate with each other to the extent reasonably requested and legally permitted so as to minimize any sales taxes.  Unless otherwise agreed between the Parties, subject to the Sale Order, Buyer shall take possession of the Acquired Assets and Obligations no later than March 31, 2017.

(c)    Excluded Assets.  The Buyer acknowledges that none of the following items are part of the transactions contemplated hereunder, are excluded from the Acquired Assets and shall remain the property of Seller after the Closing (the "Excluded Assets"):

(i)    Any and all claims and/or causes of action, whether known or unknown, against any representative, agent, sales Person or other individual, Person or Entity who received a commission payment or who received any other distribution from or on behalf of its dealings with the Company, prior to the Closing which were distributed and assigned to Charles A. Stanziale, Jr., the Chapter 7 Bankruptcy Trustee of ScripsAmerica, Inc. and the estate

3



of ScripsAmerica, Inc. pursuant to an Assignment and Distribution Agreement dated March 7, 2017.

        (ii)     Any and all claims and/or causes of action, whether known or unknown, against the former officers, managers and/or directors of the Company and (c) any insurance policies of the Company and the rights to recover thereunder for claims and causes of action referenced in the immediately preceding clauses (i) and (ii) (collectively, the "Claims");

        (d)     Indemnification. In the event any Entity or Person obtains a Judgment against the Seller related to an Obligation, the Buyer agrees to indemnify and make whole any entered Judgment. In the event any Entity or Person threatens or commences litigation against the Seller relating to an Obligation, Buyer agrees to reimburse Seller for any legal costs incurred as a result of defending such claim. Seller shall be entitled to retain any law firm it so chooses to defend any threatened or filed litigation against it.

    2.2.    Consent of Third Parties. Nothing in this Agreement shall be construed as an attempt by Seller to assign to Buyer pursuant to this Agreement any Contract unless such Consent or approval shall have been given and the Bankruptcy Court shall have authorized the assignment of such Contract.

3.    Purchase Price. In consideration of the Acquired Assets and Obligations, the purchase price is Thirty Thousand Dollars ($30,000), of which $29,980 has been paid by Buyer to Seller (the "Purchase Price"), and which shall be held in an account maintained by the Seller and to be applied to the Purchase Price at the Closing. In the event an alternate purchaser is deemed the successful bidder, the Seller shall return the Purchase Price to the Buyer within three (3) business days of entry of the Sale Order.[1]

4.    Disclaimer of Representations and Warranties.    SELLER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AT LAW OR IN EQUITY, IN RESPECT OF ANY OF ITS ASSETS (INCLUDING, WITHOUT LIMITATION, THE ACQUIRED ASSETS), OBLIGATIONS, LIABILITIES OR OPERATIONS, INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND ANY SUCH REPRESENTATIONS OR WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED.

5.    Representations and Warranties of Buyer.

    Knowing that Seller is relying thereon, Buyer represents and warrants to Seller, as follows:

    5.1.    Organization. Buyer is a Texas limited liability corporation, duly organized, validly existing and in good standing under the laws of the State of Texas. Buyer possesses the corporate power and authority to own, lease and operate its assets, conduct its business as and

---

[1] The Buyer initially attempted to purchase the Acquired Assets and Obligations during the Chapter 11 bankruptcy Proceeding of ScripsAmerica, Inc. and forwarded the Purchase Price to the Debtor's retained investment banker Equity Partners HG LLC. Equity Partners HG LLC transferred the sum of $29,980 (the Purchase Price minus a $20 withholding fee) to the Seller. Therefore, at the Closing, the Buyer shall pay to the Seller $20.00.

4



where such business is presently conducted, and enter into this Agreement and the other Transaction Documents to which it is a Party and to perform its Obligations hereunder and thereunder.

5.2.    Authorization; Compliance with Other Instruments and Laws; and Effect of Agreement and Other Transaction Documents. Buyer's execution, delivery and performance of this Agreement, and its consummation of the transactions contemplated by this Agreement, (a) have been duly authorized by all necessary actions by its board of directors; (b) do not constitute a violation of or Default under its certificate of incorporation, bylaws or other governing documents; (c) do not constitute a Default under any Contract to which Buyer is a party or by which Buyer is bound; and (d) do not constitute a violation of any Law or Judgment that is applicable to it or to its businesses or assets, or to the transactions contemplated by this Agreement. Assuming the due authorization, execution and delivery hereof by Seller, this Agreement constitutes the valid and legally binding agreement of Buyer, enforceable against Buyer in accordance with its terms, except (a) as limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws of general application affecting enforcement of creditors' rights generally, and (b) as limited by Laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

5.3.    Brokers and Finders. Buyer and its officers and agents have incurred no Obligation for brokerage or finders' fees or agents' commissions or other similar payments in connection with this Agreement.

6.    Covenants and Agreements.

6.1.    Transition and Cooperation. From and after the Effective Date, except to the extent necessary to act in the genuine best interest of Seller's estate and consistent with its fiduciary duties (a) Seller shall not take any action, alone or together with others, which obstructs or impairs the smooth transition and transfer to Buyer of the Acquired Assets and Obligations; and (b) Seller shall promptly provide access to Buyer to all correspondence, papers, documents and other items and materials received by Seller found to be in its possession which pertain to the Acquired Assets and Obligations. In accordance with Section 2.1(b), Buyer shall be responsible for the transfer of all the Acquired Assets and Obligations and shall pay all costs associated with the transfer of the Acquired Assets and Obligations. Seller shall be entitled to copies of any documents and records in the possession of P.I.M.D. International, LLC, whether in hard copy or electronic form including but not limited to the insurance policies referenced in Section 2.1 herein. Without limiting the foregoing, Seller may engage independent contractors, at Buyer's expense, to provide services related to the preparation and transfer of the Acquired Assets and Obligations to Buyer. For thirty (30) days after the Closing, or such longer period as mutually agreed by the Parties, Seller shall provide reasonable cooperation to effect all transfers of Acquired Assets and Obligations that require special handling or packaging.

6.2.    Further Assurances. After entry of the Sale Order, Seller shall promptly execute and deliver all such necessary agreements, certificates, instruments and documents, and perform such further actions, as Buyer may reasonably request in order to fully consummate the transactions contemplated hereby and carry out the purposes and intent of this Agreement.



6.3.    Transfer Taxes.  To the extent any taxes are incurred as a result of the sale of the Acquired Assets and Obligations, Buyer shall pay all sales, use, stamp, recording, transfer or any other taxes required to be paid in connection with the transfer of the Acquired Assets and Obligations pursuant to this Agreement or which may be assessed as part of this transaction.

7.    Bankruptcy Process for Obtaining Approval of the Sale.

7.1.    Bankruptcy Court Order Approving Sale.  Seller shall seek prompt entry of the Sale Order from the Bankruptcy Court of the Bankruptcy Code, in form and substance reasonably acceptable to Seller and Buyer, authorizing the Seller to transfer the Acquired Assets and Obligations to Buyer or the prevailing bidder.

7.2.    Bid Procedures.  The Seller has the right to request a private sale of the Acquired Assets and Obligations. In the event Seller seeks higher and better offers to terms contained in this Agreement, the he following bid procedures shall apply:

(a)    Any bidder shall be eligible to participate in an auction for the Acquired Assets and Obligations at the Sale Hearing if the following requirements are met: (i) the bidder must deliver to the Seller a marked up copy of the Agreement, substantially on the same terms as the Buyer; (ii) the bidder's written proposal must include an all-cash offer to purchase the Acquired Assets and Obligations or any portion thereof for an amount equal to at least $40,000; and (iii) a cashier's or bank check in the amount of $40,000. Any bidder meeting these requirements may, in Seller's discretion, be considered a "Qualified Bidder." The Buyer is automatically deemed a Qualified Bidder.

(b)    All Qualified Bidders or their designated agents shall appear at the Sale Hearing, and an Auction shall be conducted orally and openly in the Bankruptcy Court, with all Qualified Bidders hearing the bidding of other Qualified Bidders participating in the Auction. The Auction shall be closed with the Seller selecting the bona fide highest or best offer and the next highest or best offer at the Sale Hearing.

8.    Closing.

8.1.    Closing.  The closing of the sale of the Acquired Assets and Obligations (the "Closing") shall take place no later than March 31, 2017, subject to entry of the Sale Order, in form and substance acceptable to the Parties, approving Seller's transfer of the Acquired Assets and Obligations pursuant to the terms of this Agreement, or such other date mutually agreeable to Seller and Buyer. Buyer is aware that upon Closing the State of Florida must be advised of a change of control of P.I.M.D. International LLC and that Buyer shall be responsible for such notification and any other notification required to be given to any local, state or federal government or government agency. In the event the Buyer fails to close through no fault of the Seller, the Seller may choose to close the transaction with the next highest bidder and retain $3,000 or ten percent (10%) of the Purchase Price.

8.2.    Closing Deliverables of Seller.  The obligations of Buyer under this Agreement are subject to the delivery, or satisfactory completion by Seller, at the Closing of each of the following (any one or more of which may be waived in whole or in part by Buyer at its sole option and which conditions are set out herein for the exclusive benefit of Buyer):

6



(a)    Bankruptcy Court Order.  Entry of the Sale Order by the Bankruptcy Court in form and substance reasonably acceptable to Seller and Buyer, approving this Agreement and authorizing Seller to transfer the Acquired Assets and Obligations to Buyer;

(b)    Other Documents.  Such other agreements, certificates, instruments and documents reasonably requested by Buyer in order to fully consummate the transactions contemplated by this Agreement and carry out the purposes and intent of this Agreement;

8.3.    Closing Deliverables of Buyer.  The obligations of Seller to proceed with the Closing hereunder are subject to the delivery by Buyer at the Closing of each of the following (any one or more or which may be waived in whole or in part by Seller at their sole option and which conditions are set out herein for the exclusive benefit of Seller):

(a)    Purchase Price.  The Purchase Price shall be paid by wire transfer to Seller at the Closing;

(b)    Other Documents.  Such other agreements, certificates, instruments and documents reasonably requested by Seller in order to fully consummate the transactions contemplated by this Agreement and carry out the purposes and intent of this Agreement.

9.    Termination.

9.1.    On/Prior to Closing.  This Agreement may be terminated at any time on or prior to Closing:

(a)    with the written mutual Consent of the Seller and Buyer;

(b)    by Seller, on or before March 31, 2017, if any condition contained in Section 5 of the Agreement has not been satisfied or waived (to the extent waivable).

(c)    by Buyer or Seller, if any court, including the Bankruptcy Court, or Governmental Authority has issued an order, decree or ruling or taken any other action restraining, enjoining or otherwise prohibiting the transactions contemplate by the Agreement, and such order, decree, ruling or other action has become final and non-appealable, provided that this Agreement shall not be terminated unless the Party terminating this Agreement has utilized its reasonable best efforts to oppose the issuance of such order, decree or ruling or the taking of such action;

(d)    by either Buyer or Seller, if the other Party is in material breach of any representation, warranty, covenant or agreement contained in this Agreement and fails to cure such breach within fifteen (15) days of notice of such breach by the non-breaching Party (provided, that no Party may terminate the Agreement under this clause if such Party is in material breach of its obligations under this Agreement);

(e)    by Buyer, if the Bankruptcy Court has not issued on or before March 31, 2017, the Sale Order, reasonably acceptable to Buyer, approving the transactions contemplated hereby;

7



(f)    by either Buyer or Seller, if the Closing has not occurred on or prior to March 31, 2017, for any reason other than the breach of any provision of this Agreement by the Party terminating this Agreement.

Anything to the contrary notwithstanding, any date or deadline set forth in this Agreement may be extended by the mutual agreement of Buyer and Seller through the filing of a Certification of Counsel with the Bankruptcy Court.

In the event of any termination pursuant to this Section 9.1, written notice setting forth the reasons thereof shall forthwith be given by Buyer, if Buyer is the terminating Party, to Seller, or by Seller, if Seller is the terminating Party, to Buyer.

    9.2.    Effect of Termination: Remedies.

        (a)    In the event of termination pursuant to Section 9.1, other than with respect to any obligations of Seller under this Agreement shall become null and void and have no effect with no liability on the part of Seller or Buyer, or their respective directors, officers, employees, agents, or stockholders, with respect to this Agreement.

        (b)    This Section 9 shall terminate upon Closing.

10.    Miscellaneous.

    10.1.    Fees and Expenses.    Each of Buyer, on the one hand, and Seller, on the other hand, shall bear its own fees and expenses incurred in connection with the transactions contemplated hereby.

    10.2.    Notices.    All notices, Consents or other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given (A) when delivered personally; (B) one (1) Business Day after being sent by a nationally recognized overnight delivery service, postage or delivery charges prepaid; or (C) four (4) Business Days after being sent by registered or certified mail, return receipt requested, postage charges prepaid.    Notices also may be given by facsimile and shall be effective on the date transmitted if confirmed within forty-eight (48) hours thereafter by a signed original sent by one of the methods provided in the preceding sentence.    A Party may change its address for notice and the address to which copies must be sent by giving notice of the new addresses to the other Parties in accordance with this Section 10.2; *provided* that any such change of address notice shall not be effective unless and until received.    Notices shall be sent to the addresses set forth below:

    If to Seller, to:

        Charles A. Stanziale, Jr., Esq.
        c/o McCarter & English, LLP
        Four Gateway Center
        100 Mulberry Street
        Newark, NJ 07102

8

ME1 24209815v.3



With a copy (which shall not constitute notice) to:

> McCarter & English, LLP
> Attn: Jeffrey T. Testa, Esq.
> Four Gateway Center
> 100 Mulberry Street
> Newark, NJ 07102

If to Buyer, to:

> AEM Medical Group, LLC
> Attn: R.J. Christopher
> 203 Birkdale Court
> Yorktown, VA 23693

10.3.  <u>Entire Understanding</u>.  This Agreement, together with the Exhibits and Schedules hereto and the other Transaction Documents, states the entire understanding between the Parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous oral and written communications and agreements with respect to the subject matter hereof, including all confidentiality letter agreements and letters of intent previously entered into by the Parties. No amendment or modification of this Agreement shall be effective unless in writing and signed by the Party against whom enforcement is sought.

10.4.  <u>Assignment</u>.  This Agreement shall bind, benefit, and be enforceable by and against Buyer and Seller and their respective successors and permitted assigns. Neither Party, shall in any manner assign any of its rights or obligations under this Agreement without the express prior written Consent of the other Party.

10.5.  <u>Waivers</u>.  Except as otherwise expressly provided herein, no waiver with respect to this Agreement shall be enforceable unless in writing and signed by the Party against whom enforcement is sought. Except as otherwise expressly provided herein, no failure to exercise, delay in exercising, or single or partial exercise of any right, power or remedy by any Party, and no course of dealing between or among any of the Parties, shall constitute a waiver of, or shall preclude any other or further exercise of, any right, power or remedy.

10.6.  <u>Severability</u>.  If any provision of this Agreement is construed to be invalid, illegal or unenforceable, then the remaining provisions hereof shall not be affected thereby and shall be enforceable without regard thereto. If any term or other provision of this Agreement is held by a court of competent jurisdiction to be invalid, illegal or incapable of being enforced under any applicable Law in any particular respect or under any particular circumstances, then, so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party, (a) such term or provision shall nevertheless remain in full force and effect in all other respects and under all other circumstances, and (b) all other terms, conditions and provisions of this Agreement shall remain in full force and effect. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner so that the transactions contemplated hereby are fulfilled to the fullest extent possible.

MEI 24209815v.3



10.7.    Counterparts.  This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be an original hereof, and it shall not be necessary in making proof of this Agreement to produce or account for more than one counterpart hereof.

10.8.    Section Headings.  Section and subsection headings in this Agreement are for convenience of reference only, do not constitute a part of this Agreement, and shall not affect its construction or interpretation.

10.9.    References.  All words used in this Agreement shall be construed to be of such number and gender as the context requires or permits.  The word "including" when used herein shall be deemed followed by the words "without limitation."

10.10.    Controlling Law.  THIS AGREEMENT IS MADE UNDER, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF DELAWARE WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES, WHICH IN ALL CASES SHALL BE CAUSED TO BE SELECTED THE LAWS OF THE STATE OF DELAWARE.

10.11.    Jurisdiction and Process.  The Bankruptcy Court in Delaware has exclusive jurisdiction to hear and decide any Proceeding, and to settle any Disputes, which may arise out of or in connection with this Agreement ("Disputes"), and, for these purposes, each Party irrevocably submits to the jurisdiction of the Bankruptcy Court and  irrevocably waives any objection which it might at any time have to the Bankruptcy Court being nominated as the forum to hear and decide any Proceedings and to settle any Disputes and agrees not to claim that such Court is not a convenient or appropriate forum.  Process by which any Proceedings are begun in the Bankruptcy Court may be served on any of the Parties by being delivered to such Party's address set forth in Section 10.2.  Nothing contained in this Section 10.11 shall affect the right to serve process in another manner permitted by law.

10.12.    Waiver of Jury Trial.  EACH PARTY HERETO IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY PROCEEDING (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO OR CONTEMPLATED UNDER THIS AGREEMENT, OR THE ACTS IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT HEREOF.

10.13.    Third-Party Beneficiaries.  No provision of this Agreement is intended to or shall be construed to grant or confer any right, express or implied, to enforce this Agreement, or any remedy for Default under this Agreement, to or upon any Person other than the Parties hereto and their respective successors and permitted assigns.

10.14.    Delivery by Facsimile or Electronic Means.  This Agreement and each other Transaction Document, and each other agreement or instrument entered into in connection herewith or therewith or contemplated hereby or thereby, and any amendments hereto or thereto, to the extent signed and delivered by means of a facsimile machine or other mutually agreed upon electronic means of delivery, shall be treated in all manner and respect as an original agreement or instrument and shall be considered to have the same binding legal effect as if it

10



were the original signed version thereof delivered in person.  No Party hereto or to any such agreement or instrument contemplated hereby shall raise the use of a facsimile machine or other mutually agreed upon electronic means to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or other mutually agreed upon means of electronic transmittal as a defense to the formation or enforceability of a Contract and each such Party forever waives any such defense.

10.15.  Interpretation of Agreement.  The Parties hereto acknowledge and agree that this Agreement has been negotiated at arm's-length and among Parties equally sophisticated and knowledgeable in the matters dealt with in this Agreement.  Accordingly, any rule of law or legal decision that would require interpretation of any ambiguities in this Agreement against the Party that has drafted it is not applicable and is waived.  The provisions of this Agreement shall be interpreted in a reasonable manner to effect the intent of the Parties as set forth in this Agreement.

*[Signature Page Follows]*

11



The Parties have executed this Asset Purchase Agreement, intending to be legally bound hereby, as of the date first above written.

**SELLER:**

By: _____

Name:  Charles A. Stanziale, Jr.

Title:  Ch. 7 Trustee of ScripsAmerica, Inc.

**BUYER:**

AEM Medical Group, LLC

By: _____

Name: R.J. Christopher

Title:   President

12