# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> SCRIPSAMERICA, INC., <br><br> Debtor. | Chapter 7 <br><br> Case No. 16-11991 (LSS) |
| CHARLES A. STANZIALE, JR., Chapter 7 Trustee of SCRIPSAMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT SCHNEIDERMAN, JEFFREY ANDREWS, DR. JOSEPH CAMARDO, ANDRIUS PRANKSEVICIUS, BRIAN ETTINGER, MICHAEL IMPERIALE, ESTATE OF BRIAN ANDERSON, ADAM BROSIUS, ANDERSON TRIGGS, WILLIAM AUSTIN LEWIS, IV, <br><br> Defendants. | Adv. Proc. No. |

## ADVERSARY COMPLAINT

CHARLES A. STANZIALE, JR, as Chapter 7 Trustee (the "Trustee") of ScripsAmerica, Inc. ("SCRC" or the "Debtor"), by and through his attorneys, McCarter & English, LLP, by way of Complaint against Defendants Robert Schneiderman, Jeffrey Andrews, Dr. Joseph Camardo, Andrius Pranksevicius, Brian Ettinger, Michael Imperiale, Brian Anderson. Adam Brosius, Anderson Triggs, William Austin Lewis, IV says:

## SUMMARY OF COMPLAINT

This is an action for breach of fiduciary duty and waste against former directors and officers of SCRC arising from their conduct in connection with SCRC and its subsidiaries, PIMD International, LLC ("PIMD") and DispenseDoc, Inc. The claims relating to PIMD are asserted derivatively pursuant to FRBP 7023.1.

ME1 24923744v.3

**IRONRIDGE**

In 2013 SCRC entered into a transaction pursuant to Section 3(a)(10) of the Securities Act of 1933 with IronRidge Global IV, Ltd. ("IronRidge") by which IronRidge acquired and extinguished debt of SCRC in exchange for the right to receive and sell shares of SCRC on terms including a formula related to the market price of SCRC shares that IronRidge asserted gave IronRidge the right to receive and sell enormous amounts of shares of SCRC ultimately amounting to over 50% of the outstanding shares of SCRC.  Defendants Robert Schneiderman, the Chairman and CEO of SCRC and Jeffrey Andrews, the CFO of SCRC signed the Stipulation containing those terms.  They either failed to exercise prudence or deliberately agreed to those terms, which were contrary to the interests of SCRC and its shareholders.  The extent of IronRidge's rights and its conduct were later unsuccessfully disputed by SCRC in several litigations in California State and Federal courts as well as actions in New York and New Jersey in which SCRC incurred substantial costs and fees that amounted to waste of SCRC funds that deprived SCRC of resources needed for other purposes.  Schneiderman, who held a substantial amount of SCRC shares caused SCRC to expend the funds in a hopeless attempt to protect his own personal interests.  Schneiderman later disavowed SCRC's meritless claims of manipulation of the share price to further his personal interests.

**PIMD**

SCRC acquired a 90% interest in PIMD.  Entities owned by Defendant Brosius received commissions on PIMD sales. PIMD bought non-FDA approved products that were quarantined resulting in a substantial loss. PIMD also entered into contract to purchase that resulted in additional losses when expected rebates were not received.  These losses resulted from negligence of officer Defendants entering into those arrangements. Defendants Brosius caused

PIMD to pay excessive commissions and enter into side deals with an agent or employee named Ryan resulting in additional excessive payments.

## DISPENSE DOCS

At the instance of Brosius, SCRC incurred substantial expenses developing a concept called DispenseDocs and incorporated as DispenseDocs, Inc., a wholly owned subsidiary of the Debtor designed to permit physicians to fill prescriptions for certain products. Dispense Docs was sold for an amount far lower than SCRC's investment. Brosius concealed his interest in the purchaser and later emerged as an owner of DispenseDocs.

## JURISDICTION AND VENUE

1. This court has jurisdiction over this adversary complaint pursuant to 28 U.S.C. §§ 157 and 1334.

2. This court has jurisdiction over all claims in this adversary proceeding because they are related to a case under title 11 pursuant to 28 U.S.C. § 157(c).

## PROCEDURAL BACKGROUND

3. On September 7, 2016, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

4. On February 9, 2017 the Office of the United States Trustee for the District of Delaware appointed Charles A. Stanziale, Jr. as Chapter 7 Trustee.

5. On March 21, 2017 the Bankruptcy Court entered an Order Authorizing the Employment of McCarter & English as counsel to the Chapter 7 Trustee, *nunc pro tunc* to the date of appointment of the Trustee.

## DERIVATIVE ALLEGATIONS

6. Plaintiff brings this action derivatively in connection with claims relating to damage to its former subsidiary PIMD arising from the acts and omissions of Defendants pursuant to FRBP 7023.1.

7. Plaintiff has standing to assert claims relating to damage to PIMD by operation of law as a result of his appointment of Chapter 7 Trustee of SCRC and the Court's order dated March 30, 2017 [ECF 242] approving the terms of sale of the Debtor's interest in PIMD set forth in the March 8, 2017 Stock Purchase Agreement, section 2.1 [ECF 233-1] excluding from sale, *inter alia*, all claims, known or unknown against directors, officers or managers of PIMD.

8. The action is not a collusive action to confer jurisdiction that the Court would not otherwise have.

9. Plaintiff has not made the effort to obtain the desired action from the directors of SCRC, or PIMD, if any, because the Directors of ScripsAmerica resigned prior to Plaintiff's appointment as Chapter 7 Trustee and because each of the former Directors is the subject of claims asserted herein and attempting to obtain the desired action from them would have been futile.

10. SCRC is a Delaware corporation that was formed May 12, 2008.

11. SCRC filed an S-1 registration with the SEC on June 10, 2011, which was subsequently amended. Registration of SCRC securities was declared effective on November 14, 2011.

12. Defendant Robert Schneiderman ("Schneiderman") was a founder of SCRC and its Chief Executive Officer and a Director from 2008 until May 30, 2015. Schneiderman was also an officer of Main.

13. Defendant Jeffrey Andrews ("Andrews") was the Chief Financial Officer of SCRC from October, 2010 until the conversion of the Case to a Chapter 7.

14. Defendant Dr. Joseph Camardo ("Camardo")was a Director of SCRC from April 1, 2011 until the conversion of the Case.

15. Defendant Andrius Pranksevicius ("Pranksevicius") was a Director of SCRC from April 1, 2011 until the conversion of the Case.

16. Defendant Brian Ettinger ("Ettinger") was a Director of SCRC from April 1, 2011 until the conversion of the Case. Ettinger is an attorney at law. Ettinger became Chief Executive Officer of SCRC on June 30, 2015.

17. Defendant Michael Imperiale ("Imperiale") was a Director of SCRC from April 25, 2011 until the conversion of the Case.

18. Brian Anderson ("Anderson") was a Director of SCRC from May 24, 2011 until his demise on April 24, 2015. Julie W. Anderson was issued Letters Testamentary on October 24, 2016 as Executrix of the Estate of Brian Anderson.

19. Defendant Adam Brosius ("Brosius") became a Director of SCRC on November 13, 2015. Brosius became interim President of SCRC on June 30, 2015 and President of SCRC on November 13, 2015. Brosius was also an officer of PIMD. Brosius resigned from all positions effective September 1, 2016.

20. Defendant Anderson Triggs ("Triggs") became a Director of SCRC on May 12, 2015 and resigned on June 14, 2016.

21. Defendant William Austin Lewis, IV ("Lewis") became a director of SCRC on March 26, 2015 and remained a Director until the conversion of the Case.

22. As of 2011 when SCRC became a reporting company its business was the sale and distribution of pharmaceutical products to "end users" that dispensed pharmaceuticals to patients through national distributors. SCRC was in the process of developing oral rapidly dissolving pain relief products and vitamins, but the rapidly dissolving products never achieved commercial viability or success. SCRC reported gross revenue for 2011 of $5,956,000 and a net loss of $340,000. SCRC reported that it engaged in financing including issuance of preferred stock and promissory notes totaling $1,452,000 in 2011.

23. For 2012, SCRC reported net sales of $3,915,000 and a loss of $1,862,000. SCRC reported that it engaged in financing activities including loans, promissory notes and issuance of stock totaling $2,200,000 during 2012.

24. For 2013, SCRC reported gross revenue of $7,335,000, net revenues of $556,000 and a loss of $11,218,000. SCRC reported proceeds of financing activities of $2,549,000, including sales of convertible notes and shares and other borrowing.

25. SCRC's financial performance through the end of 2013 was poor. Its revenues were limited and it financed operations largely through borrowing and sales of stock.

26. SCRC admitted in its 2013 10-K that as of the end of 2013 it had inadequate internal controls.

27. During 2013 SCRC entered into an agreement to acquire a 90% interest in PIMD, a Florida based distributor of medical products that had no sales but had certain licenses for the right to sell pharmaceuticals. That transaction was converted to indirect ownership through Implex Corporation ("Implex"), a company owned or controlled by SCRC's general counsel Rick Fox. SCRC thereafter acquired direct ownership of 90% of PIMD.

ME1 24923744v.3

**IRONRIDGE**

28.     SCRC as Defendant and IronRidge Global IV, Ltd. a Virgin Islands entity as Plaintiff entered into a Stipulation for Settlement of Claims dated November 8, 2013 (the "Stipulation") in the Superior Court of California, County of Los Angeles, Dept. 58 with Case No. BC524230 (the "California State Court Action") to effectuate an arrangement under Section 3(a)(10) of the Securities Act of 1933 by which in exchange for extinguishment of claims of creditors of SCRC that IronRidge had acquired, IronRidge would receive shares of SCRC stock that it would be permitted to sell. The initial issuance was 8,690,000 shares and further issuance of shares was governed by a formula that allowed IronRidge to demand additional shares if the price of SCRC shares declined.

29.     The Stipulation provided in relevant part:

*2.     Plaintiff owns bona fide claims ("Claims") against Defendant in the aggregate amount of $686,962.08 ("Claim Amount"), plus interest and attorneys' fees. Defendant has not paid the amount due on the Claims. Plaintiff filed the above-captioned collection action, which the parties now seek to settle by this Stipulation and the proposed Order.*

*3.     Defendant is a public company, and desires to settle the Claims in exchange for the issuance to Plaintiff of unrestricted and freely tradable exempted shares of Defendant's common stock ("Common Stock"). Plaintiff desires to accept such shares in accordance with the terms of this Stipulation, subject to court approval following a hearing as envisioned by Section 25017(f)(3) of the California Corporations Code, and Section*

3(a)(10) of the federal Securities Act of 1933, as amended ("<u>Securities Act</u>").

* * *

6.  In full and final settlement of the Claims, Defendant will issue and deliver to Plaintiff the sum of 8,690,000 shares of Common Stock ("<u>Initial Issuance</u>"), subject to the subsequent adjustments, issuances, returns, and ownership limitations set forth in this Stipulation. * * * The trading day after the Initial Issuance is complete and all shares have been received into Plaintiff's account in electronic form and fully cleared for trading shall be referred to as the "<u>Issuance Date</u>."

7.  The period from the date of this Stipulation until that number of consecutive trading days following the Issuance Date required for the aggregate trading volume of the Common Stock between 9:30:00 a.m. and 4:00:00 p.m. Eastern, i.e. excluding after hours trades, to exceed $7 million shall be referred to as the "<u>Calculation Period</u>". The final number of shares of Common Stock to which Plaintiff will be entitled under the Order ("<u>Final Amount</u>") will be that number of shares with an aggregate value equal to (a) the sum of the Claim Amount, 10% third party agent fees, plus reasonable attorney fees and expenses, (b) divided by 80% of the following: the closing price of the Common Stock on the trading day immediately preceding the date of entry of the Order, not to exceed the arithmetic average of the individual volume weighted average prices of any five trading days during the Calculation Period, less $0.01 per share;

8

*all as reported by the Bloomberg Professional service of Bloomberg LP ("Bloomberg").*

*8.     If at any time during the Calculation Period the shares issued to Plaintiff are less than any reasonably possible Final Amount or a closing price is below 80% of the closing price on the trading day before entry of the Order, Plaintiff may request that Defendant reserve and/or issue additional shares of Common Stock (each, an "Additional Issuance") within one trading day, time being of the essence, and Defendant's transfer agents, attorneys, officers and directors, including without limitation Robert Schneiderman and Jeffrey I. Andrews, shall immediately take all actions necessary to do so. For each day after Plaintiff requests issuance that shares are not, for any reason, received into Plaintiff's account in electronic form and fully cleared for trading, the trading volume during such time shall not count toward aggregate trading volume and the Calculation Period shall be extended by one trading day.*

*9.     Under no circumstances shall Defendant issue to Plaintiff at any one time a number of shares which, when aggregated with all shares of Common Stock then beneficially owned or controlled by Plaintiff or its affiliates, at such time exceed 9.99% of the total number of shares of Common Stock outstanding after such issuance.*

*10.    At the end of the Calculation Period, (a) if the sum of the Initial Issuance and any Additional Issuances is less than the Final Amount, Defendant shall issue additional shares of Common Stock to Plaintiff as*

9

*soon as possible, up to the Final Amount, and (b) if the sum of the Initial Issuance and any Additional Issuance is greater than the Final Amount, Plaintiff shall promptly return any remaining shares to Defendant or its transfer agent for cancellation, ("Final Adjustment").*

30. The terms of the Stipulation disclosed and Schneiderman and Andrews knew or should have known that IronRidge would be entitled to a large amount of additional shares if the price of SCRC shares declined.

31. Schneiderman and Andrews were aware of the financial condition of SCRC and that additional shares would be issued to IronRidge and others and traded, creating the likelihood of declines in the share price.

32. Schneiderman and Andrews caused harm to SCRC and its shareholders by agreeing to terms that allowed IronRidge to ultimately claim a majority of the outstanding shares of SCRC in exchange for eliminating less than $700,000 of SCRC debt. The actions of Schneiderman and Andrews harmed SCRC and its shareholders.

33. The Stipulation was signed for SCRC by Schneiderman, the CEO and Director and Andrews, the CFO of SCRC. Management of SCRC subsequently stated in a filing with the SEC dated June 3, 2016 that Schneiderman had entered into the Stipulation without Board knowledge or approval despite Schneiderman having stated in the Stipulation that such approval had been obtained.

34. Schneiderman was a major shareholder of SCRC. A Schedule 14C filed with the SEC stated that as of April 24, 2014 Schneiderman held or controlled 21,392,663 shares or 16.5% of issued and outstanding shares of SCRC.

ME1 24923744v.3

35. IronRidge demanded issuance of an additional 1,615,550 shares and Schneiderman directed SCRC's transfer agent to issue the shares to IronRidge in February, 2014.

36. In April, 2014, IronRidge demanded an additional 1,646,008 shares. According to the June 3, 2016 filing Schneiderman determined that IronRidge was not entitled to further shares. IronRidge obtained a court order for issuance of the additional shares. SCRC expended legal fees at the direction of Schneiderman to oppose entry of the order and incurred more fees to file an appeal that was dismissed.

37. Schneiderman caused SCRC to file a federal securities action against IronRidge in the Central District of California alleging that IronRidge manipulated the price of SCRC shares (the "<u>Federal Court Action</u>"). SCRC incurred fees attempting unsuccessfully to assert a claim and the federal complaint was ultimately dismissed with prejudice.

38. In the course of the California State Court Action Schneiderman and other shareholders were enjoined from transferring shares of SCRC until IronRidge received an additional 87,031,631 shares pursuant to the Stipulation. Schneiderman sought relief from that order to permit him to transfer his shares.

39. Despite instigating the Federal Court Action, Schneiderman signed and filed an Affidavit in the California State Court Action in June of 2016 stating that he had no knowledge that anyone at IronRidge had ever engaged in improper or manipulative conduct with regard to SCRC or its stock or sold SCRC stock in a manner that hurt SCRC's stock price. In addition to its own legal fees, SCRC was ordered to pay $269,365 of IronRidge's legal fees in the Federal Court Action.

40. SCRC incurred additional legal fees arising from the Stipulation and subsequent disputes in litigation in New Jersey commenced by IronRidge against SCRC's stock transfer

agent, Olde Monmouth and in litigation in New York State Court relating to whether IronRidge or SCRC were entitled to certain funds owed to SCRC by a company known as LNK.

## PIMD

41. PIMD, a subsidiary of SCRC, purchased products from Alexso, Inc. which were not FDA approved.

42. In or about June, 2015, the Florida Department of Business & Professional Regulation determined that the unapproved products could not be sold.

43. PIMD voluntarily quarantined the products.

44. Schneiderman, as President and Chief Executive Officer of SCRC and Andrews as CFO was responsible for and involved in the supervision of the business of PIMD and failed to act prudently in connection with the transaction.

45. As a result, SCRC was damaged.

46. PIMD entered into transactions to purchase products from Global Pharma, Inc. and others based on promises of rebates.

47. The arrangements for the rebates were insufficient and the rebates were not received or were not timely received, which harmed the business of SCRC and PIMD.

48. Brosius, as President of SCRC and PIMD was responsible for the failure to obtain or timely obtain the rebates.

49. Brosius also caused PIMD to pay excessive commissions on sales and to enter into what was described as a side agreement with an employee or agent of PIMD named Ryan.

50. The Trustee sold SCRC's interest in PIMD pursuant to an agreement of sale dated March 8, 2017 approved by Order of this Court on March 30, 2017. Under the terms of the

agreement, the Trustee retained the right to assert and recover on the claims related to PIMD asserted herein.

## DISPENSE DOC

51.     SCRC invested funds and effort in the development of a line of business known as Dispense Doc and incorporated as Dispense Doc, Inc., which was wholly owned by SCRC.

52.     SCRC's investment in Dispense Doc had been advocated and promoted by Brosius and Chad Beene, an employee of SCRC and affiliates with responsibilities for marketing.

53.     At the suggestion of Brosius, SCRC entered into an agreement to sell its ownership interest in DispenseDoc, Inc. to Bread and Circuses Media, Inc. ("Bread") in February, 2016 for $26,500, which was far less than SCRC had invested in DispenseDocs, and certain royalties to be paid to SCRC.

54.     The royalties were not paid.

55.     Brosius represented to other members of SCRC management that he was not affiliated with Bread and would not have an ownership interest in DispenseDocs.

56.     Contrary to his representations, it appears based on LinkedIn references to DispenseDocs that Brosius and Chad Beene own and control DispenseDocs.

57.     Brosius thereby surreptitiously obtained the benefit of SCRC's investment in DispenseDocs.

## FIRST COUNT
## (IRONRIDGE BREACH OF FIDUCIARY DUTY BY OFFICERS)

58.     Plaintiff repeats and realleges the allegations of Paragraphs 1-57 as if set forth in full herein.

59.     Schneiderman and Andrews were the President and Chief Financial Officer of SCRC respectively.

60. On the basis of the terms of the Stipulation, IronRidge claimed and the California State Court ordered SCRC to issue to Ironridge 88,677,639 shares in addition to the initial issuance of 8,690,000 and the second issuance of 1,615,550 shares.

61. Schneiderman and Andrews either failed to understand the terms of the Stipulation and the potential volume of shares that IronRidge could potentially claim, which was contrary to the interests of SCRC and its other shareholders or intended to grant IronRidge such extensive rights.

62. The extent of the share rights granted to IronRidge was detrimental to SCRC and its shareholders and disproportionate to the benefit of the Stipulation to SCRC.

63. Schneiderman had such a substantial amount of SCRC shares that he was conflicted in determining whether and how to oppose IronRidge's claims for additional shares.

64. Schneiderman caused SCRC to incur legal fees in the Federal Court Action based on alleged manipulation by IronRidge of the share price of SCRC and later disavowed the claims of manipulation when it became in his interest to do so in 2016 and swore that IronRidge had not manipulated the SCRC shares.

65. The acts of Andrews and Schneiderman breached their fiduciary duties as officers of SCRC and caused damage to SCRC.

## SECOND COUNT
## (IRONRIDGE WASTE)

66. Plaintiff repeats and realleges the allegations of Paragraphs 1-65 as if set forth in full herein.

67. Schneiderman, Andrews and the Director Defendants who approved and continued the various litigations and incurred additional fees after Schneiderman's removal, incurred attorneys' fees of both SCRC and IronRidge in the Federal Court Action and the various

state court actions that had no prospect of success and provided no benefit to SCRC and were a waste of SCRC's limited resources.

68. The total fees incurred were in excess of $2,000,000 according to the records of SCRC.

69. SCRC was damaged by the waste of funds incurred in the litigations.

### THIRD COUNT
### (PIMD)

70. Plaintiff repeats and realleges the allegations of Paragraphs 1-69 as if set forth in full herein.

71. In connection with the purchase of goods from Alexso the Defendants were grossly negligent in failing to ascertain that the goods were not FDA approved.

72. The failure to ascertain that the goods were not FDA approved caused damage to PIMD .

73. In connection with the purchase of goods on which PIMD expected to receive rebates, Defendants were grossly negligent in failing to provide for adequate mechanisms to obtain rebates and in permitting the payment of excessive commissions.

### FOURTH COUNT
### (DISPENSE DOC)

74. Plaintiff repeats and realleges the allegations of Paragraphs 1-73 as if set forth in full herein.

75. SCRC incurred expenses in developing DispenseDocs, including direct expenses and the salary and benefits paid to Chad Beene, who was primarily engaged in developing DispenseDocs.

76. Brosius was involved in the decision to sell DispenseDocs for a low price.

15

77. Brosius represented to other directors and officers that he had no relationship to the acquirer of DispenseDocs.

78. Brosius later admitted that he was involved with the entity that acquired DispenseDocs.

79. Brosius and Chad Beene both describe themselves on Linked In as owners of DispenseDocs.

80. Brosius' actions in acquiring DispenseDocs without disclosure of his interest are a breach of his fiduciary duty to SCRC.

WHEREFORE, Plaintiff directly and derivatively demands that judgment be entered for Plaintiff and against Defendants jointly and severally for all damages incurred by SCRC, and PIMD together with interest, costs, reasonable attorneys' fees and such other and further relief as the Court deems just.

Dated: July 21, 2017
Wilmington, Delaware

**McCARTER & ENGLISH, LLP**

By: */s/ Kate Roggio Buck*
Kate Roggio Buck (DE# 5140)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone: (302) 984-6300
Facsimile: (302) 984-6399
kbuck@mccarter.com

 *- and -*

Charles A. Stanziale, Jr., Esq.
Jeffrey T. Testa, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444
Facsimile: (973) 624-7070
cstanziale@mccarter.com
jtesta@mccarter.com

*Attorneys for the Chapter 7 Trustee*