**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| SCRIPSAMERICA, INC., *et al.* | Case No., 16-11991 (LSS) |
| Debtors.[1] | (Jointly Administered with Case No. 17-11586 (LSS)) |
| | **Hearing Date: May 9, 2019 @ 11:00 a.m.** |
| | **Objection Deadline: May 2, 2019 @ 4:00 p.m.** |
| CHARLES A. STANZIALE, JR., Chapter 7 Trustee of SCRIPSAMERICA, INC., | Adv. Proc. No. 17-50935 (LSS) |
| Plaintiff, | |
| v. | |
| ROBERT SCHNEIDERMAN, JEFFREY ANDREWS, DR. JOSEPH CAMARDO, ANDRIUS PRANKSEVICIUS, BRIAN ETTINGER, MICHAEL IMPERIALE, ESTATE OF BRIAN ANDERSON, ADAM BROSIUS, ANDERSON TRIGGS, WILLIAM AUSTIN LEWIS, IV, DEVELOPMENT 72, LLC, POWELL STRATEGIC ADVISORS, INC., HARRY JAMES PRODUCTIONS, INC., ANDREA SCHNEIDERMAN, PHARMA SALES GROUP, INC., BLACK CAT CONSULTING, INC. and LAW OFFICES OF BRIAN ETTINGER, PLLC, | |
| Defendants. | |
| CHARLES A. STANZIALE, JR., Chapter 7 Trustee of MAIN AVENUE PHARMACY, INC., | Adv. Proc. No. 17-50936 (LSS) |
| Plaintiff, | |
| v. | |
| ROBERT SCHNEIDERMAN, JEFFREY ANDREWS, DR. JOSEPH CAMARDO, ANDRIUS PRANKSEVICIUS, BRIAN ETTINGER, MICHAEL IMPERIALE, ESTATE OF BRIAN ANDERSON, ADAM BROSIUS, ANDERSON TRIGGS, WILLIAM AUSTIN LEWIS, IV, PHARMA SALES GROUP, INC., TRIGGS GLOBAL MANAGEMENT, INC., POWELL STRATEGIC ADVISORS, INC., ANDREA SCHNEIDERMAN and BLACK CAT CONSULTING, INC., | |
| Defendants. | |

---

[1] The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are: ScripsAmerica, Inc. (8594) and Main Avenue Pharmacy, Inc. (6335).

**MOTION FOR APPROVAL OF A COMPROMISE AND SETTLEMENT BY AND BETWEEN CHARLES A. STANZIALE, JR., AS CHAPTER 7 TRUSTEE OF SCRIPSAMERICA, INC. AND MAIN AVENUE PHARMACY, INC., AND ROBERT SCHEIDERMAN ET AL. PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Charles A. Stanziale, Jr. (the "Chapter 7 Trustee"), in his capacity as the Chapter 7 Trustee of ScripsAmerica, Inc. and Main Avenue Pharmacy, Inc. (collectively, the "Debtors"), by and through his undersigned counsel, submits this motion for an Order, pursuant to Section 105(a) of the Bankruptcy Code, 11 U.S.C. §101 *et seq.* (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the Chapter 7 Trustee's proposed compromise and settlement with the defendants Robert Schneiderman, Andrea Schneiderman, Jeffrey Andrews, Dr. Joseph Camardo, Andrius Pranksevicius, Brian Ettinger, Michael Imperiale, Estate of Brian Anderson, Adam Brosius, Anderson Triggs, William Austin Lewis, IV, Pharma Sales Group, Inc., Triggs Global Management, Inc., Powell Strategic Advisors, Inc., Black Cat Consulting, Inc., Harry James Productions, Inc. and Law Offices of Brian Ettinger, PLLC (the "Adversary Defendants") subject to the terms set forth herein. The Adversary Defendants, together with the Chapter 7 Trustee and the Debtors shall collectively be referred to as the "Parties" and each individually a "Party". In support of the motion, the Chapter 7 Trustee respectfully represents that:

## JURISDICTION, VENUE, PREDICATES FOR RELIEF

1.      The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334(b).

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The predicate for the relief requested herein is Bankruptcy Rule 9019.

ME1 28869447v.3

## INTRODUCTION

After months of conducting an intensive review and investigation of the Debtors books, records and course of conduct, participation in an extensive mediation process, and the receipt and review of various sworn financial disclosures, the Chapter 7 Trustee has reached a global settlement with the Adversary Defendants which marks a  significant achievement for the ScripsAmerica, Inc. and Main Avenue Pharmacy bankruptcy estates and for which the Chapter 7 Trustee respectfully requests this Court's approval.

## BACKGROUND

### A.      General Bankruptcy Background

5.      On September 7, 2016, ScripsAmerica, Inc. ("SCRC") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

6.      On February 8, 2017, the SCRC case was converted to a case under Chapter 7 and the Office of the United States Trustee appointed Charles A. Stanziale, Jr. as the Chapter 7 Trustee of the SCRC estate.

7.      On July 21, 2017, Main Avenue Pharmacy, Inc., ("Main") a wholly owned subsidiary of SCRC, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code and the Office of the United States Trustee appointed Charles A. Stanziale, Jr. as Chapter 7 Trustee of the Main estate.

8.      On September 14, 2017, the Court entered an Order approving the joint administration of the Debtors' cases.

9.      In accordance with his duties under the Bankruptcy Code, the Chapter 7 Trustee and his retained professionals commenced an extensive investigation into the assets and liabilities of the Debtors' estates, including potential causes of action related to alleged breaches of fiduciary duties committed by the Debtors' officers and/or directors and alleged fraudulent

ME1 28869447v.3

and preferential transfers to certain of the Adversary Defendants.

10.    On July 7, 2017, the Chapter 7 Trustee commenced an adversary proceeding in the SCRC case against Robert Schneiderman, Jeffrey Andrews, Dr. Joseph Camardo, Andrius Pranksevicius, Brian Ettinger, Michael Imperiale, Estate of Brian Anderson, Adam Brosius, Anderson Triggs, and William Austin Lewis, IV (the "SCRC Adversary Proceeding") and is evidenced by a complaint [Adv. Pro 17-50935 Docket No. 1 ] (the "SCRC Complaint"), the averments of which speak for themselves and the particulars of which are further described in the SCRC Complaint.

11.    On July 24, 2017, the Chapter 7 Trustee commenced an adversary proceeding in the Main case against Robert Schneiderman, Jeffrey Andrews, Dr. Joseph Camardo, Andrius Pranksevicius, Brian Ettinger, Michael Imperiale, Estate of Brian Anderson, Adam Brosius, Anderson Triggs, and William Austin Lewis, IV (the "Main Avenue Adversary Proceeding")[2] and is evidenced by a complaint [Adv. Pro 17-50936 Docket No. 1] (the "Main Avenue Complaint"), the averments of which speak for themselves and the particulars of which are further described in the Main Avenue Complaint.

12.    The Adversary Defendants strenuously denied the allegations and filed motions to dismiss in the respective Adversary Proceedings. In response to the motions to dismiss filed by the Adversary Defendants, the Chapter 7 Trustee filed an amended complaint in the SCRC Adversary Proceeding [Adv. Pro 17-50935 Docket No. 41] and an amended complaint in the Main Avenue Adversary Proceeding [Adv. Pro 17-50936 Docket No. 46] (collectively, the "Amended Complaints") naming the original defendants and related persons and entities that were alleged to have received preferential or fraudulent transfers and asserting Chapter 5 causes

---

[2] Collectively, the SCRC Adversary Proceeding and the Main Avenue Adversary Proceeding shall be referred to herein as the "Adversary Proceedings".

ME1 28869447v.3

of action, the averments of which speak for themselves and the particulars of which are further described in the Amended Complaints.

13.     The Adversary Defendants filed motions to dismiss the Amended Complaints in the respective Adversary Proceedings.

14.     The Chapter 7 Trustee filed oppositions to the motions to dismiss the Amended Complaints and motions to further amend the Amended Complaints.

15.     The Parties thereafter agreed, prior to the filing of Adversary Defendants' reply papers in support of their motions to dismiss, to participate in mediation conducted by Jed Melnick, Esq. of JAMS.

16.     After an intensive mediation session and several follow up conferences with the mediator, the Parties reached an agreement providing for the global settlement of the claims asserted by the Chapter 7 Trustee.

17.     The Adversary Defendants dispute and have denied and continue to deny the allegations and other assertions made in the Amended Complaints, or any liability associated therewith, including but not limited to, that they have committed, attempted to commit, or aided and abetted, conspired, or acted in concert in the commission of: (i) any breach of fiduciary duty, (ii) any unjust enrichment, (iii) any corporate waste, (iv) any violation of 11 U.S.C. § 547, 548(a)(1)(A) or (B), (v) any violation of 11 U.S.C. § 544 and/or 6 Del. C. § 1304(a), (vi) any violation of 11 U.S.C. § 544(b) and/or 6 Del. C. § 1305(a),(vii) any violation of New Jersey Uniform Fraudulent Transfer Act N.J.S.A. 25:2-20 *et. seq.*, (viii) any violation of 11 U.S.C. § 550, (ix) any violation of 11 U.S.C. § 502(d) and/or (j), or (x) that they have engaged in any of the wrongful acts alleged in the Adversary Proceedings.

18.     In the voluntary JAMS mediation, the Parties have agreed to resolve all disputes between them, including any claims that were made or could have been made in the Debtors'

cases or the respective Adversary Proceedings, without any Party admitting liability to any other Party.

19.     To avoid the expense and uncertainty of further litigation and to settle and resolve their dispute, the Parties have agreed to compromise any and all claims that the Chapter 7 Trustee may assert on behalf of the Debtors against the Adversary Defendants, on the terms set forth herein.

## PROPOSED SETTLEMENT

20.     The Chapter 7 Trustee and the Adversary Defendants have negotiated a settlement in the amount of One Million Five Hundred Seventy Five Thousand Dollars ($1,575,000.00) subject to the terms set forth in the Settlement Agreement, a copy of which is attached as **Exhibit A** to the proposed form of Order being filed simultaneously herewith. A summary of the relevant terms of the Settlement Agreement is set forth below[3]:

    a.    the Effective Date of the Settlement Agreement shall occur upon the latest of (i) execution of the Settlement Agreement by each of the parties, (ii) the order approving the settlement becoming final and non-appealable (the "Settlement Approval Order"); (iii) confirmation by the Chapter 7 Trustee that the Settlement Payment[4] has cleared the Chapter 7 Trustee's bank account.[5]

    b.    Within thirty (30) days of the entry of the Settlement Approval Order Adversary Defendants Brosius, the Ettinger Parties, Andrea Schneiderman and their insurer shall pay the Insured Settlement Portion and the Individual Settlement Portions of

---

[3] The Settlement Agreement and specific terms therein shall be deemed controlling over the summary of the terms set forth in this Motion.

[4] Any defined term not otherwise defined herein shall have the meaning attributed to it as set forth as in the Settlement Agreement.

[5] If the conditions set forth in sub-sections (i) and (ii) have occurred and the insurance carrier has paid the Insured Settlement Portion, the Effective Date shall be deemed to occur for all Non-Defaulting Parties, including any Defendant who has paid his or her respective Individual Settlement Portion, except, and solely to the extent the Trustee in his sole discretion, wishes to pursue any Defaulting Defendant. The Trustee's decision to pursue a Defaulting Defendant shall not impact the Effective Date as to the Non-Defaulting Parties.

the Settlement Payment which shall be held in escrow by the Chapter 7 Trustee in his

Trustee accounts until dismissal of the Adversary Proceedings with prejudice.[6] The total

amount of $1,338,750.00 of the Settlement Payment shall be paid to the Main Avenue

bankruptcy estate c/o the Chapter 7 Trustee and the total sum of $236,250.00 shall be

paid to the SCRC bankruptcy estate c/o the Chapter 7 Trustee.

c.       Within three (3) business days after the Effective Date the Chapter 7

Trustee shall file stipulations of dismissal with prejudice of the Adversary Proceedings (if

applicable, only with respect to the Non-Defaulting Parties) with each party to bear his,

her or its own fees and costs, except to the extent that Adversary Defendants' fees and

costs are paid by their insurer.

d.       On the Effective Date, other than for the obligations expressly set forth in

the Settlement Agreement, the Parties shall be deemed to have exchanged mutual general

releases as outlined in the Settlement Agreement.

e.       On the Effective Date any and all Proofs of Claim filed by the Adversary

Defendants (or, if applicable) by the non-defaulting parties will be deemed withdrawn

with prejudice, null and void and of no effect and the Adversary Defendants (or Non-

Defaulting parties) agree not to file any other Proof of Claim in the Debtors' cases and

any scheduled claim of any of the Adversary Defendants shall be deemed expunged

without further court order.

---

[6] So long as the D&O insurance carrier pays the Insured Settlement Portion, any failure by one or more of the Defendants to satisfy his or her respective Individual Settlement Portion (a "**Defaulting Defendant**") shall: (i) result only in the breach of the Settlement Agreement by such Defaulting Defendant and the failure of the Effective Date of the Settlement Agreement to occur with respect only to such Defendant; (ii) not have any adverse effect on the enforceability of this Agreement by the D&O insurance carrier, by any other Defendant who has timely paid his or her Individual Settlement Portion, or by any other party insured under the D&O insurance policy (collectively, the "**Non-Defaulting Parties**"); and (iii) upon the satisfaction of all other conditions necessary for the Effective Date of the Settlement Agreement to occur (except for the failure by any Defendant to pay his or her Individual Settlement Portion), the Effective Date of the Settlement Agreement shall be deemed to occur for all Non-Defaulting Parties and such Non-Defaulting Parties shall be entitled to all of the releases, dismissals and all other consideration and benefits set forth in the Settlement Agreement.

ME1 28869447v.3

f.      If the Effective Date does not occur, then the Settlement Agreement and the releases set forth therein shall be null, void and of no effect, and the Settlement Payment shall be returned to the D&O Carrier and the contributing Adversary Defendants and the Chapter 7 Trustee shall have the right to continue to prosecute the Adversary Proceedings against the Adversary Defendants, provided, however, that if the Effective Date occurs only with respect to the Non-Defaulting Parties, the Settlement Agreement and the releases in favor of such Non-Defaulting Parties shall be valid and enforceable by, and with respect to, such Non-Defaulting Parties and the Chapter 7 Trustee shall retain the Insured Settlement Portion and any Individual Settlement Portion paid by or on behalf of any such Non-Defaulting Party.

g.      The Settlement Agreement shall not be construed as an admission by the Parties or by any of their respective present or former directors, officers, employees or agents, of a violation of any federal, state, or local statute, regulation, judicial doctrine, or other law, or a violation of any right, or breach of any duty, obligation or contract.

## RELIEF REQUESTED

21.     By this Motion, the Chapter 7 Trustee seeks the entry of an order, substantially in the form of the Proposed Form of Order attached hereto approving the settlement.

22.     Bankruptcy Rule 9019 governs the approval of compromises and settlements, and provides as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019.

ME1 28869447v.3

23.    The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also Matter of Penn Central Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) ("In administrating reorganization proceedings in an economical and practical matter it will often be wise to arrange the settlement of claims . . .") (internal citation marks and quotation marks omitted).

24.    In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] [it]self of all facts necessary [to form] an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated, [and] estimate . . . the complexity, expense and likely duration of such litigation . . . all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Matter of Penn Central Transp. Co.*, 596 F.2d at 1114; *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (describing the "ultimate inquiry to be whether the compromise is fair, reasonable, and in interest of the estate") (internal citations and quotation marks omitted).

25.    The United States Court of Appeals for the Third Circuit has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Myers v. Martin* (*In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)); *accord In re Nutraquest, Inc.,* 434 F.3d 639, 644 (3d Cir. 2006).

26.    Furthermore, the decision to approve a compromise is "within the [sound] discretion of the bankruptcy court." *In re World Health Alternatives, Inc.*, 344 B.R. at 296.  In making its decisions, the bankruptcy court should not substitute its judgment for that of the debtor.  The court is not to decide the numerous questions of law or fact raised by the litigation, but rather should canvas the issues to determine "whether the settlement fall[s] below the lowest point in the range of reasonableness."  *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983) (internal citations and quotations omitted); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is within the range of litigation possibilities") (internal quotation marks and citations omitted).

27.    In passing on the reasonableness of a proposed compromise, the Court "may give weight to the opinions of the Chapter 7 Trustee, the parties and their counsel in determining the reasonableness of the proposed settlement." *In re Bell & Beckwith*, 77 B.R. 606, 612 (Bankr. N.D. Ohio), *aff'd*, 87 B.R. 412 (N.D. Ohio 1987); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness . . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other") (internal citations omitted).

28.    The Chapter 7 Trustee believes that the settlement rises well above the "lowest point in the range of reasonableness."  Additionally, as discussed more fully below, each of the applicable *Martin* factors set forth above weighs in favor of approving the settlement.  The Court should therefore approve the Settlement Agreement pursuant to Bankruptcy Rule 9019 and applicable law.

ME1 28869447v.3

**Probability of Success in Litigation & Likely Difficulties in Collection**

29.     Absent the Settlement Agreement, the Adversary Proceedings would need to be litigated with no assurances of a favorable outcome for the Debtors' estates.  The claims raised by the Chapter 7 Trustee and the defenses raised by the Adversary Defendants would be complex, highly fact-specific, and likely require a trial on the merits.  The resolution of those claims would be time-consuming for the Court and of uncertain outcome or benefit to the estates.  Based on the foregoing, and as explained below, the Chapter 7 Trustee submits that the global settlement reached with the Adversary Defendants is justified and a proper exercise of his business judgment and falls well above the lowest point in the range of reasonableness and is in the best interests of the estates and their creditors.

30.     The resolution of the claims under the terms and conditions of the Settlement Agreement is a favorable outcome for the Debtors' estates and their creditors because the resolution will result in a significant cash infusion into the Debtors' estates, provide for the waiver of claims and protects the Debtors from the risk of an unfavorable outcome.  Indeed, the Chapter 7 Trustee evaluated and considered the merits of the affirmative defenses asserted by the Adversary Defendants when entering into the Settlement Agreement.

31.     Were the matter to proceed to trial and judgment, the Chapter 7 Trustee may also have difficulty in collection should he need to pursue the individual Adversary Defendants, an issue which this settlement negates.

**Complexity of Litigation Involved, and Expense, Inconvenience, and Delay Necessarily Attending the Litigation**

32.     As stated above, the claims involve sufficiently complex legal and factual issues regarding the alleged transfers that may be avoidable under Chapter 5 of the Bankruptcy Code, and breach of fiduciary duty claims, which would likely require protracted litigation.  The

settlement avoids these obstacles and their attendant expenses in favor of a prompt and efficient resolution without the need to expend further estate resources.

33.    The breach of fiduciary claims asserted in the SCRC Adversary Action involve consequences arising from a financing arrangement between SCRC and an entity known as IronRidge Global IV, Ltd. ("IronRidge") by which IronRidge acquired and extinguished debt of SCRC to third parties in exchange for issuance to IronRidge of shares of stock of SCRC pursuant to a formula. The Chapter 7 Trustee alleged that the terms of the arrangement were so detrimental to SCRC as to constitute breach of fiduciary duty on the part of Robert Schneiderman and Jeffrey Andrews the CEO and CFO of SCRC respectively and waste in connection with resulting securities litigation instituted by SCRC. The Adversary Defendants assert that the actions of Schneiderman, Andrews and the other Director Adversary Defendants were insulated by applicable Delaware corporate law, including Delaware statutory provisions exonerating directors and the business judgment rule. The resolution of those issues would necessarily be complex. The Adversary Defendants further asserted that the Amended Complaint failed to meet the stringent standards for assertion of a claim of waste. The Chapter 7 Trustee also asserted that certain actions of Adversary Defendants Robert Schneiderman, Jeffrey Andrews and Adam Brosius in connection with a subsidiary of SCRC known as PIMD International, LLC, a distributor of pharmaceutical products involving the purchase of a large quantity of products that lacked FDA approval and other regulatory issues and could not be distributed constituted breach of fiduciary duty and waste. The Adversary Defendants asserted defenses based on exoneration and the business judgment rule. Resolution of those issues would also necessarily be complex.

34.    The breach of fiduciary duty claims asserted in the Main Amended Complaint relate primarily to Main's arrangements by which Pharma Sales Group, Inc. and independent

ME1 28869447v.3

marketers were paid commissions in connection with obtaining prescriptions to be filled by Main for pain creams and patches. The Chapter 7 Trustee alleged that such payments were excessive and to the extent they related to prescriptions covered by federal programs including Medicare, Medicaid and Tricare or by state laws prohibiting such commissions, illegal. The Adversary Defendants disputed the illegality of the payments as well as the effect and asserted defenses of director exoneration and business judgment. Resolution of those issues would necessarily be complex legally and factually.

35.     The Chapter 7 Trustee's avoidance claims included compensation and consulting payments to certain Adversary Defendants. The Adversary Defendants asserted defenses including ordinary course and reasonably equivalent value. Resolution of those issues would also necessarily be complex legally and factually.

**Paramount Interest of Creditors**

36.     Finally, entry into the settlement also serves the paramount interest of the creditors of the Debtors' estates.  Resolution of the claims through the Settlement Agreement represents a successful outcome for the Debtors' creditors by obviating the need for potentially protracted litigation and the expenses necessarily attendant to such litigation.  The fourth *Martin* factor is therefore satisfied and weighs heavily in favor of the Court approving the settlement.

37.     Based on the foregoing, the Chapter 7 Trustee submits that approval of the Settlement Agreement is in the best interests of the Debtors' estates and their creditors because it eliminates the possibility of any protracted litigation with the Adversary Defendants, eases the administrative burden on these estates, and provides for a meaningful recovery in the amount of $1,575,000.00 for the benefit of the Debtors' estates and their creditors. The settlement therefore represents a compromise between the parties that is fair and equitable and in the best interests of the Debtors' estates and their creditors.

ME1 28869447v.3

## WAIVER OF BANKRUPTCY RULE 7062 STAY

38.     For all of the foregoing reasons, the Trustee submits that cause exists for granting the relief requested herein.  To successfully implement the foregoing, the Trustee respectfully seeks a waiver of the fourteen-day stay under Bankruptcy Rule 7062 to the extent applicable.

## NOTICE

39.     The Chapter 7 Trustee has served the Motion on all known creditors of both the SCRC and Main Avenue bankruptcy estates, the United States Trustee, counsel to the Adversary Defendants, and those parties who requested notice under Bankruptcy Rule 2002.

40.     No prior request for the relief sought herein has been made to any court.

## CONCLUSION

WHEREFORE, the Chapter 7 Trustee respectfully requests that this Court enter the attached proposed form of Order granting Chapter 7 Trustee's motion approving the settlement and granting such other and further relief as the Court deems just and equitable.

Dated: April 18, 2019
       Wilmington, Delaware

**McCarter & English, LLP**

By: */s/ Kate R. Buck*
Kate R. Buck (DE #5140)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone 302.984.6300
Facsimile 302.984.6399
kbuck@mccarter.com

- and -

Jeffrey T. Testa
Steven A. Beckelman
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 622-4444

*Counsel to Charles A. Stanziale, Jr., the Chapter 7 Trustee/Plaintiff*

14

ME1 28869447v.3